**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 07 B 592 |
| RESTAURANT DEVELOPMENT GROUP, | ) | |
| INC., | ) | Hon. Susan Pierson Sonderby |
| | ) | |
| Debtor, | ) | Chapter 7 Proceeding |
| ─────────────────────── | ) | |
| | ) | |
| THE CHAPTER 7 BANKRUPTCY ESTATE OF | ) | |
| RESTAURANT DEVELOPMENT GROUP, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. _____ |
| | ) | |
| v. | ) | |
| | ) | Hon. Susan Pierson Sonderby |
| ROGER D. GREENFIELD, THEODORE | ) | |
| KASEMIR, HAROLD DEMBO, GARY | ) | |
| AUERBACH, KATZ, RANDALL, WEINBERG | ) | |
| & RICHMOND, WEINBERG & RICHMOND, | ) | |
| LLP., LEE ZABEN, RDG CHICAGO, INC., | ) | |
| RESTAURANTS-AMERICA, RESTAURANTS- | ) | |
| AMERICA CONSULTING GROUP, INC., | ) | |
| RESTAURANT MARKETING, INC., | ) | |
| RESTAURANT CONSTRUCTION, INC., BAR | ) | |
| LOUIE AMERICA INC., RED STAR | ) | |
| AMERICA, INC., CONCEPTS AMERICA, INC., | ) | |
| NICK AND TONY'S AMERICA, INC., RDG | ) | |
| CHICAGO TRADEMARK CO., | ) | |
| RESTAURANT-AMERICA TRADEMARK, | ) | |
| INC., CASH MANAGEMENT, INC., BAR | ) | |
| LOUIE TAMPA, INC., BAR LOUIE, INC., | ) | |
| CAFÉ LOUIE, INC., BAR LOUIE EVANSTON, | ) | |
| INC., BAR LOUIE HYDE PARK, INC., SANTA | ) | |
| FE CHICKEN OF CHICAGO, INC., BAR | ) | |
| LOUIE WATERFRONT, INC., BAR LOUIE | ) | |
| TAYLOR, INC., BAR LOUIE NAPERVILLE, | ) | |
| INC., BAR LOUIE ORLAND PARK, INC., BAR | ) | |
| LOUIE CHAMPAIGN, INC., BAR LOUIE | ) | |
| PEORIA, INC., BAR LOUIE DEARBORN, | ) | |
| INC., BAR LOUIE GRAND RAPIDS, INC., | ) | |
| BAR LOUIE FLINT, INC., BAR LOUIE | ) | |
| EASTON, INC., BAR LOUIE CLEVELAND, | ) | |
| INC., BAR LOUIE NEWPORT, INC., BAR | ) | |
| LOUIE DENVER, INC., BAR LOUIE ST. | ) | |
| LOUIS, INC., BAR LOUIE PITTSBURGH, | ) | |
| INC., BAR LOUIE MILWAUKEE, INC., BAR | ) | |
| LOUIE OAK PARK, INC., BAR LOUIE | ) | |

WATER STREET, INC., BAR LOUIE                )
DAYTON, INC., BAR LOUIE TEMPE, INC.,         )
BAR LOUIE KIRKWOOD, INC., BAR LOUIE          )
WHEELING, INC., BL WHEELING, LLC f/k/a       )
BAR LOUIE WHEELING, L.L.C., BAR LOUIE        )
BOLINGBROOK, INC., 33 RESTAURANT             )
INC., THE GRILL ROOM WESTMONT, INC.,         )
GRILL ROOM BONITA, INC., 737                 )
RANDOLPH, INC., CENTRO METROPOLIS,           )
INC., ONE NORTH, INC., RED STAR              )
MONTGOMERY, INC., RED STAR                   )
ALGONQUIN, INC., RED STAR AURORA,            )
INC. f/k/a/ CHELSEA TAVERN, INC.,            )
DEERFIELD RESTAURANT, INC., RED STAR         )
GENEVA, INC., RED STAR GLENVIEW, INC.,       )
RED STAR INDIANAPOLIS, INC. f/k/a/ RED       )
STAR CARMEL, INC., RED STAR                  )
LOUISVILLE, INC., BAR LOUIE                  )
PITTSBURGH, INC., RED STAR VIRGINIA          )
BEACH, INC., RED STAR NEWPORT NEWS,          )
INC., STONEFISH GRILL RICHMOND, INC.,        )
BLUEPOINT TOLEDO, INC., RED STAR             )
COLUMBIA, INC., BLUEPOINT                    )
HOLLYWOOD, INC., BLUEPOINT DESTIN,           )
INC. f/k/a NICK & TONY'S OF CINCINNATI       )
II, INC., BLUEPOINT TUCSON, INC.,            )
MIDTOWN KITCHEN & BAR, INC., 111             )
WACKER RESTAURANT, INC., 1500                )
RESTAURANT, INC., 1530 STATE STREET          )
RESTAURANT, INC., 1816 NORTH CLARK,          )
INC., MEXICAN CANTINA INC., NICK &           )
LOUIE'S, INC., NICK & TONY'S OF              )
CINCINNATI, INC. NICK & TONY'S OF            )
GENEVA, INC., NICK & TONY'S OF               )
MINNEAPOLIS, INC., NICK & TONY'S             )
NORTHBROOK, INC., NICK & TONY'S OF           )
OMAHA INC., NICK & TONY'S                    )
PITTSBURGH, INC., PACIFIC KITCHEN &          )
BAR, INC., PIER 4 SEAFOOD KITCHEN, INC.,     )
RED STAR BOCA RATON INC., RED STAR           )
CINCINNATI, INC., RED STAR COLUMBUS,         )
INC., RED STAR CHARLOTTE INC., RED           )
STAR FT. LAUDERDALE, INC., RED STAR          )
FT. WAYNE, INC., RED STAR NORTH              )
KANSAS CITY, INC., RED STAR SOUTH            )
POINTE, INC., RED STAR SPANISH FORT,         )
INC. and JOHN DOES 1 THROUGH 20,             )
                                             )
                    Defendants.              )

2

**COMPLAINT**

THE CHAPTER 7 BANKRUPTCY ESTATE OF RESTAURANT DEVELOPMENT GROUP, INC. (the "Plaintiff" or the"Estate" ) complains against ROGER D. GREENFIELD, THEODORE KASEMIR, HAROLD DEMBO, GARY AUERBACH, KATZ, RANDALL, WEINBERG & RICHMOND, WEINBERG & RICHMOND, LLP., LEE ZABEN, RDG CHICAGO, INC., RESTAURANTS-AMERICA, RESTAURANTS-AMERICA CONSULTING GROUP, INC., RESTAURANT MARKETING, INC., RESTAURANT CONSTRUCTION, INC., BAR LOUIE AMERICA INC., RED STAR AMERICA, INC., CONCEPTS AMERICA, INC., NICK AND TONY'S AMERICA, INC., RDG CHICAGO TRADEMARK CO., RESTAURANT-AMERICA TRADEMARK, INC., CASH MANAGEMENT, INC., BAR LOUIE TAMPA, INC., BAR LOUIE, INC., CAFÉ LOUIE, INC., BAR LOUIE EVANSTON, INC., BAR LOUIE HYDE PARK, INC., SANTA FE CHICKEN OF CHICAGO, INC., BAR LOUIE WATERFRONT, INC., BAR LOUIE TAYLOR, INC., BAR LOUIE NAPERVILLE, INC., BAR LOUIE ORLAND PARK, INC., BAR LOUIE CHAMPAIGN, INC., BAR LOUIE PEORIA, INC., BAR LOUIE DEARBORN, INC., BAR LOUIE GRAND RAPIDS, INC., BAR LOUIE FLINT, INC., BAR LOUIE EASTON, INC., BAR LOUIE CLEVELAND, INC., BAR LOUIE NEWPORT, INC., BAR LOUIE DENVER, INC., BAR LOUIE ST. LOUIS, INC., BAR LOUIE PITTSBURGH, INC., BAR LOUIE MILWAUKEE, INC., BAR LOUIE OAK PARK, INC., BAR LOUIE WATER STREET, INC., BAR LOUIE DAYTON, INC., BAR LOUIE TEMPE, INC., BAR LOUIE KIRKWOOD, INC., BAR LOUIE WHEELING, INC., BL WHEELING, LLC f/k/a BAR LOUIE WHEELING, L.L.C., BAR LOUIE BOLINGBROOK, INC., 33 RESTAURANT INC., THE GRILL ROOM WESTMONT, INC., GRILL ROOM BONITA, INC., 737 RANDOLPH, INC., CENTRO METROPOLIS, INC., ONE NORTH, INC., RED STAR MONTGOMERY, INC., RED STAR ALGONQUIN, INC., RED STAR AURORA, INC. f/k/a/ CHELSEA TAVERN, INC., DEERFIELD RESTAURANT, INC., RED STAR GENEVA, INC., RED STAR GLENVIEW, INC., RED STAR INDIANAPOLIS, INC. f/k/a/

3

RED STAR CARMEL, INC., RED STAR LOUISVILLE, INC., RED STAR VIRGINIA BEACH, INC., RED STAR NEWPORT NEWS, INC., STONEFISH GRILL RICHMOND, INC., BLUEPOINT TOLEDO, INC., RED STAR COLUMBIA, INC., BLUEPOINT HOLLYWOOD, INC., BLUEPOINT DESTIN, INC. f/k/a NICK & TONY'S OF CINCINNATI II, INC., BLUEPOINT TUCSON, INC., MIDTOWN KITCHEN & BAR, INC., 111 WACKER RESTAURANT, INC., 1500 RESTAURANT, INC., 1530 STATE STREET RESTAURANT, INC., 1816 NORTH CLARK, INC., MEXICAN CANTINA INC., NICK & LOUIE'S, INC., NICK & TONY'S OF CINCINNATI, INC. NICK & TONY'S OF GENEVA, INC., NICK & TONY'S OF MINNEAPOLIS, INC., NICK & TONY'S NORTHBROOK, INC., NICK & TONY'S OF OMAHA INC., NICK & TONY'S PITTSBURGH, INC., PACIFIC KITCHEN & BAR, INC., PIER 4 SEAFOOD KITCHEN, INC., RED STAR BOCA RATON INC., RED STAR CINCINNATI, INC., RED STAR COLUMBUS, INC., RED STAR CHARLOTTE INC., RED STAR FT. LAUDERDALE, INC., RED STAR FT. WAYNE, INC., RED STAR NORTH KANSAS CITY, INC., RED STAR SOUTH POINTE, INC,  RED STAR SPANISH FORT, INC. and JOHN DOES 1 THROUGH 20 (collectively, the "Defendants"), and alleges as follows:

## INTRODUCTION

1.      Debtor Restaurant Development Group, Inc. ("RDG") was a company owned and controlled by Defendants Roger Greenfield ("Greenfield") and Ted Kasemir ("Kasemir").  RDG operated from the premises commonly known as 1840 Pickwick Avenue, Glenview, Illinois.  In addition to RDG, Greenfield and Kasemir owned and controlled and continue to own and control certain restaurants from 1990 to the present.  Collectively, the restaurants owned and controlled by Greenfield and Kasemir, including those restaurants identified in paragraph 21 below, are referred to herein as the "Greenfield and Kasemir Restaurants."

2.      Pursuant to agreements (the "RDG Management Agreements") with each of the then existing Greenfield and Kasemir Restaurants, RDG, among other things, provided services

more fully-described below (the "RDG Management and Marketing Services") to each of the Greenfield and Kasemir Restaurants, and in exchange for the RDG Management and Marketing Services, RDG charged each of the Greenfield and Kasemir Restaurants a fee equal to a percentage of the gross revenues of each restaurant (the "RDG Management and Marketing Fees"). The collective RDG Management and Marketing Fees received from the Greenfield and Kasemir Restaurants are referred to herein as the "RDG Revenue Stream." The RDG Revenue Stream was significant. RDG's books and records show that for 2002, the RDG Revenue Stream was in excess of $4 million, and for the first six months of 2003, the RDG Revenue Stream was more than $6 million.

3.      In addition to providing the RDG Management and Marketing Services, RDG also provided financial support to certain of the Greenfield and Kasemir Restaurants by guaranteeing certain financial obligations that were entered into by certain of the Greenfield and Kasemir Restaurants.

4.      Although as a collective enterprise the Greenfield and Kasemir Restaurants were profitable, certain of the Greenfield and Kasemir Restaurants were unprofitable. Because RDG had guaranteed obligations of several unprofitable entities, Greenfield and Kasemir were faced with two costly alternatives – either: (1) fund the losing operations indefinitely, or (2) fold the unprofitable restaurants and honor the guarantee obligations of RDG.

5.      In a series of transactions that began in 2003, and continue to the present, Greenfield and Kasemir, with the assistance of their outside attorneys and accountants, as well as the other officers of RDG, devised a third alternative: a scheme to defraud RDG's creditors by causing RDG to divest itself of millions of dollars of assets (the "RDG Asset Concealment Scheme"), leaving RDG a "worthless" shell without any assets or income through which it could pay its liabilities, which liabilities exceeded $10 million.

6.      Defendants' actions in devising, implementing and continuing the RDG Asset Concealment Scheme give rise to multiple claims for relief. By this Complaint, the Estate seeks,

5

among other things, to:  (i) recover RDG's assets from the initial and subsequent transferees; (ii)

impose liability against RDG's insiders who knowingly participated in the RDG Asset

Concealment Scheme in breach of their fiduciary duties to RDG's creditors and to RDG; (iii)

impose liability on the outside professionals for aiding and abetting the fraudulent transfers and

breaching their duties to RDG by allowing the insiders to loot RDG's assets and appropriate

those assets for the insiders' benefit and to the detriment of RDG and its creditors; (iv) impose

liability for the debts owed by RDG on certain successor entities that are carrying on the same

business as RDG and are legally responsible for the existing debts of RDG; and (v) impose

liabilities to those entities that are alter egos of RDG and each other.

## SUMMARY OF THE COMPLAINT

7.      Defendants Greenfield and Kasemir have owned and operated various restaurants

with each other since 1990.  By May 1993, Greenfield and Kasemir had formed and began

operating RDG.

8.      RDG provided the RDG Management and Marketing Services to the Greenfield

and Kasemir Restaurants, and charged the RDG Management and Marketing Fees for its services

in the form of a percentage of the gross receipts of each restaurant entity.  The RDG

Management and Marketing Services, included, but were not limited to, each of the following

services, and for purposes of this Complaint are defined herein as:

      A.      <u>Cash Management Services.</u>  RDG acted as the central repository for the
revenues generated by the Greenfield and Kasemir Restaurants by pooling
funds in common cash accounts.  RDG's employees monitored the cash
needs of the restaurants.  If an individual Greenfield and Kasemir
Restaurant needed money to pay its debts, RDG either paid those debts
directly or transferred money to the individual restaurant to pay the debts.
In situations where RDG transferred money to a restaurant (such as when
a restaurant had cash needs that were not met by the restaurant's operating

6

revenues), a receivable was generated in favor of RDG from that particular Greenfield and Kasemir Restaurant;

B.      Financial and Accounting Services.  RDG's employees monitored the accounts payable for the Greenfield and Kasemir Restaurants and determined which vendors to pay and the time at which the vendors would be paid.  RDG also hired accountants to prepare the Greenfield and Kasemir Restaurants' general ledgers, profit and loss statements and tax returns;

C.      Payroll Services.  RDG provided the payroll services to the Greenfield and Kasemir Restaurants, including interfacing with the outside payroll company;

D.      Hiring Services.  RDG determined which persons to hire as the managers and regional managers of the Greenfield and Kasemir Restaurants;

E.      Design and Concept Services.  RDG's employees designed new restaurants, including the interior of the restaurant and the concept behind each restaurants.  RDG hired outside architects and consultants to assist in designing new restaurants;

F.      Food and Beverage Consulting Services.  RDG assisted the Greenfield and Kasemir Restaurants in designing a menu and determining what dishes would be served at the Greenfield and Kasemir Restaurants;

G.      Marketing Services.  RDG assisted the Greenfield and Kasemir Restaurants in their advertising, including the design and placement of print and radio advertisements;

H.      Website.  RDG operated a website on which RDG advertised and marketed each of the Greenfield and Kasemir Restaurants as well as the collective restaurant enterprise (which enterprise was referred to as RDG);

7

I.    <u>Frequent Diner Program.</u>  RDG maintained and operated a frequent dining program known as the "Restaurant Development Frequent Diner Club" whereby patrons of the Greenfield and Kasemir Restaurants could earn points by purchasing food and beverages at the Greenfield and Kasemir Restaurants.  Patrons could redeem their earned points at any of the Greenfield and Kasemir Restaurants; and

J.    <u>Legal Services.</u>  RDG hired attorneys to: (i) incorporate the Greenfield and Kasemir Restaurants; (ii) prepare corporate records and annual filings for the Greenfield and Kasemir Restaurants; (iii) defend and prosecute lawsuits involving the Greenfield and Kasemir Restaurants; and (iv) provide advice and other legal work as necessary to the Greenfield and Kasemir Restaurants.

K.    <u>Restaurant Opening Services.</u>  RDG also performed a variety of services at and before the opening of any restaurant entity, including: (i) identifying new locations for restaurants; (ii) negotiating with landlords for lease terms; (iii) identifying and negotiating with fixture and equipment vendors for the lease or purchase of restauant fixtures and equipment; and (iv) hiring and supervising tradesmen hired to complete the construction of improvements to the space leased to house the restaurant.

9.    The Greenfield and Kasemir Restaurants entered into real estate leases with third-party landlords for the premises in which the restaurants operated.  RDG guaranteed the performance of certain of those leases.

10.    By Summer 2003, several of the Greenfield and Kasemir Restaurants were faltering and some of the restaurants had closed and breached their leases.  The landlords of at least two restaurant entities – including the landlord of Chicago's historic Rookery Building –

8

had initiated legal action to collect on RDG's guarantees and several other creditors were threatening legal action against RDG.

11.     RDG's total potential exposure on the guarantees exceeded $10 million.

12.     Even though RDG was profitable and had assets that were sufficient to pay all or at least some of the guarantee claims, Greenfield, Kasemir, RDG's Chief Financial Officer, Defendant Lee Zaben, and its outside attorneys, Defendants Harold Dembo and Gary Auerbach designed and implemented the RDG Asset Concealment Scheme.  Specifically, Defendants Greenfield, Kasemir, Zaben, Dembo and Auerbach devised a scheme to strip RDG of its assets and transfer those assets to several other newly-created entities owned by Greenfield and Kasemir, thus attempting to place RDG's assets out of reach of its creditors.

13.     The genesis of the RDG Asset Concealment Scheme appears to be a memo sent to Greenfield and Kasemir by RDG's attorney, Defendant Harold Dembo, on July 22, 2003.  A true and correct copy of Dembo's memo of July 22, 2003 is attached hereto as Exhibit 1.  In Dembo's memo, he suggests to Greenfield and Kasemir that the "profitable companies" terminate their management contracts with RDG.  Dembo further proposed:

> We should review the financial statements for RDG and determine what other assets and liabilities are inside the company [*i.e.,* RDG].  It may only have oral management contracts.  Upon completion of the restructuring process, RDG would only be left with oral management contracts with the unprofitable companies and its guaranty liabilities.

Ex. 1, at p. 2.  Dembo also recommended transferring "the trademarks . . . to a separate holding company."  *See* Ex. 1, p. 1.

14.     Defendant Zaben also broadly outlined the RDG Asset Concealment Scheme in a memo he prepared, labeled as "confidential" attorney/client communication, and sent to RDG's outside attorney, Defendant Dembo, as well as to RDG's owners and directors, Defendants

Greenfield and Kasemir.  A true and correct copy of the August 1, 2003-memo is attached hereto

as Exhibit 2.  Specifically, the memo states:

> As a result of the Rookery litigation and other lease/litigation
> issues facing RDG, I believe this is the perfect time to restructure
> the Company in an attempt to make the Company as attractive as
> possible to equity sources and as bullet proof as possible from
> potential creditors**.**

Exhibit 2, p. 1.  To accomplish these goals, the memo stated:

> Take Restaurant Development Group, Inc. and satisfy all existing
> payables and distribute the assets to Roger [Greenfield] and Ted
> [Kasemir] for them to contribute to RDG Management, Inc.
> Ideally, nothing would be left in the Restaurant Development
> Group [*i.e.*, RDG] and it would exist as a shell corporation.

*Id.*  By doing so, the memo professed that the Debtor's guarantees "will essentially become

worthless, as they will leave this company [RDG] as a shell."  *Id.* at 2.

15.     At a cost of tens of thousands of dollars in professional fees to RDG's lawyers

and accountants, Defendants Greenfield and Kasemir implemented the RDG Asset Concealment

Scheme.

16.     The RDG Asset Concealment Scheme continues to this date and, upon

information and belief, Defendants have taken actions, and continue to take further steps to

conceal RDG's assets and thereby frustrate, hinder and delay RDG's creditors.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§§ 157 and 1334(a).  This proceeding consists of core and non-core "related to" matters under

28 U.S.C. § 157.  Venue is proper in this district under the provisions of 28 U.S.C. § 1409(a).

## PARTIES

18.     Plaintiff, the Chapter 7 Estate of Restaurant Development Group, Inc., brings this

action pursuant to 11 U.S.C.  § 323 and prior Orders of the Bankruptcy Court, is authorized and

has legal capacity through its Trustee to bring this suit.

19.     Defendant Roger Greenfield is a citizen of Illinois.  Through a trust, Greenfield

10

owns 50% of the shares of RDG. Either directly or indirectly through certain holding companies, Greenfield (through a trust) owns 50% of the shares of RDG Chicago, Inc., Restaurants-America Consulting Group, Inc., RDG Chicago Trademark Co., Restaurant-America Trademark Co., Cash Management, Inc., Restaurant Construction, Inc. Bar Louie America, Inc., Red Star America, Inc., Concepts America, Inc. Nick and Tony's America, Inc., and on information and belief is an officer and/or director of each of these entities. In addition, Greenfield (through a trust) – through one or more of the foregoing corporate parties – owns or controls a 50% interest in each of the Defendant Greenfield and Kasemir Restaurants identified in paragraph 21 below. On information and belief, Greenfield is an officer and director of each of the Defendant Greenfield and Kasemir Restaurants identified in paragraph 21 below.

20.     Defendant Theodore Kasemir is a citizen of Illinois. Kasemir owns 50% of the shares of RDG. Either directly or indirectly through certain holding companies, Kasemir owns 50% of the shares of Defendants RDG Chicago, Inc., Restaurants-America Consulting Group, Inc., RDG Chicago Trademark Co., Restaurant-America Trademark Co., Cash Management, Inc., Restaurant Construction, Inc., Bar Louie America, Inc., Red Star America, Inc., Concepts America, Inc. Nick and Tony's America, Inc., and on information and belief is an officer and/or director of each of these entities. Kasemir – through one or more of the foregoing corporate parties – owns or controls a 50% interest in each of the Defendant Greenfield and Kasemir Restaurants identified in paragraph 21 below. On information and belief, Kasemir is an officer and director of each of the Defendant Greenfield and Kasemir Restaurants identified in paragraph 21 below.

21.     Set forth in the following table is an identification of certain of the Greenfield and Kasemir Restaurants that are owned (either directly, or indirectly through corporate affiliates) by Greenfield and Kasemir. Each of the entities identified below as numbers 1-79 in the table below are named as defendants herein, was formed for the purposes of operating a single restaurant location and has or had the RDG Management and Marketing Services provided to it

11

by various persons and entities, including RDG and Defendants Greenfield, Kasemir, RDG
Chicago, Inc., Restaurants-America, Restaurants-America Consulting Group, Inc. and Restaurant
Marketing, Inc.  Each of the below listed entities has or has had the RDG Management and
Marketing Services provided to it from offices located at 1840 Pickwick Avenue, Glenview,
Illinois.

| No. | Operating Name | Corporate Name |
| --- | --- | --- |
| 1 | Bar Louie | Bar Louie Tampa, Inc. |
| 2 | Bar Louie | Bar Louie, Inc. |
| 3 | Bar Louie | Café Louie, Inc. |
| 4 | Bar Louie | Bar Louie Evanston, Inc. |
| 5 | Bar Louie | Bar Louie Hyde Park, Inc. |
| 6 | Bar Louie | Santa Fe Chicken of Chicago, Inc. |
| 7 | Bar Louie | Bar Louie Waterfront, Inc. |
| 8 | Bar Louie | Bar Louie Taylor, Inc. |
| 9 | Bar Louie | Bar Louie Naperville, Inc. |
| 10 | Bar Louie | Bar Louie Orland Park, Inc. |
| 11 | Bar Louie | Bar Louie Champaign, Inc. |
| 12 | Bar Louie | Bar Louie Peoria, Inc. |
| 13 | Bar Louie | Bar Louie Dearborn, Inc. |
| 14 | Bar Louie | Bar Louie Grand Rapids, Inc. |
| 15 | Bar Louie | Bar Louie Flint, Inc. |
| 16 | Bar Louie | Bar Louie Easton, Inc. |
| 17 | Bar Louie | Bar Louie Cleveland, Inc. |
| 18 | Bar Louie | Bar Louie Newport, Inc. |
| 19 | Bar Louie | Bar Louie Denver, Inc. |
| 20 | Bar Louie | Bar Louie St. Louis, Inc. |
| 21 | Bar Louie | Bar Louie Pittsburgh, Inc. |
| 22 | Bar Louie | Bar Louie Milwaukee, Inc. |
| 23 | Bar Louie | Bar Louie Oak Park, Inc. |
| 24 | Bar Louie | Bar Louie Water Street, Inc. |
| 25 | Bar Louie | Bar Louie Dayton, Inc. |
| 26 | Bar Louie | Bar Louie Tempe, Inc. |
| 27 | Bar Louie | Bar Louie Kirkwood, Inc. |
| 28 | Bar Louie | Bar Louie Wheeling LLC. |
| 29 | Bar Louie | Bar Louie Bolingbrook, Inc. |
| 30 | Virgin Lounge | 737 Randolph Street, Inc. |
| 31 | The Grillroom | 33 Restaurant Inc. |
| 32 | The Grillroom | The Grill Room Westmont, Inc. |
| 33 | The  Grillroom |  Grillroom Bonita, Inc. |
| 34 | Extra Virgin | 737 Randolph Street, Inc. |
| 35 | Centro | Centro Metropolis, Inc. |
| 36 | One North | One North, Inc. |
| 37 | Red Star | Red Star Montgomery, Inc. |
| 38 | Red Star | Red Star Algonquin, Inc. |
| 39 | Red Star | Red Star Aurora, Inc. f/k/a Chelsea Tavern, Inc. |

| No. | Operating Name | Corporate Name |
|---|---|---|
| 40 | Red Star | Deerfield Restaurant, Inc. |
| 42 | Red Star | Red Star Geneva, Inc. |
| 43 | Red Star | Red Star Glenview, Inc. |
| 44 | Red Star | Red Star Carmel, Inc. |
| 45 | Red Star | Red Star Louisville, Inc. |
| 46 | Red Star | Bar Louie Pittsburgh, Inc. |
| 47 | Red Star | Red Star Virginia Beach, Inc. |
| 48 | Red Star | Red Star Newport News, Inc. |
| 49 | Blue Point | Stonefish Grill Richmond, Inc. |
| 50 | Blue Point | Bluepoint Toledo, Inc. |
| 51 | Blue Point | Red Star Columbia, Inc. |
| 52 | Blue Point | Blue Point Hollywood, Inc. |
| 53 | Blue Point | Blue Point Destin, Inc. f/k/a Nick & Tony's of Cincinnati, II, Inc. |
| 54 | Blue Point | Blue Point Tucson, Inc. |
| 55 | Midtown | Mid Town Kitchen & Bar, Inc. |
| 56 | TownHouse | 111 Wacker Restaurant, Inc. |
| 57 | Twisted Fork | 1500 Restaurant, Inc. |
| 58 | South City Tavern | 1530 State Street Restaurant, Inc. |
| 59 | Louie on the Park | 1816 North Clark, Inc. |
| 60 | | Mexican Cantina, Inc. |
| 61 | | Nick & Louie's, Inc. |
| 62 | Nick & Tony's | Nick & Tony's of Cincinnati, Inc. |
| 63 | Nick & Tony's | Nick & Tony's of Geneva, Inc. |
| 64 | Nick & Tony's | Nick & Tony's of Minneapolis, Inc. |
| 65 | Nick & Tony's | Nick & Tony's Northbrook, Inc |
| 66 | Nick & Tony's | Nick & Tony's of Omaha Inc. |
| 67 | Nick & Tony's | Nick & Tony's Pittsburgh, Inc |
| 68 | Nick & Tony's | Pacific Kitchen & Bar, Inc. |
| 69 | Pier 4 | Pier 4 Seafood Kitchen, Inc. |
| 70 | Red Star | Red Star Boca Raton Inc. |
| 71 | Red Star | Red Star Cincinnati, Inc. |
| 72 | Red Star | Red Star Columbus, Inc. |
| 73 | Red Star | Red Star Charlotte Inc. |
| 74 | Red Star | Red Star Ft. Lauderdale, Inc. |
| 75 | Red Star | Red Star Ft. Wayne, Inc. |
| 76 | Red Star | Red Star North Kansas City, Inc. |
| 77 | Red Star | Red Star South Pointe, Inc. |
| 78 | Red Star | Red Star Spanish Fort, Inc. |

22.     Defendant RDG Chicago, Inc. ("RDG Chicago") is an Illinois corporation with its

principal place of business at 1840 Pickwick Avenue, Glenview, Illinois.  During 2004, RDG

Chicago was in the business of providing the RDG Management and Marketing Services to the

Greenfield and Kasemir Restaurants.

23.     Defendant Bar Louie America, Inc. is an Illinois Corporation with its principal

place of business at 1840 Pickwick Avenue, Glenview, Illinois.  On information and belief, Bar Louie America, Inc. owns the entities numbered 1-29 and 59 in the table set forth in paragraph 21 of this Complaint.

24.     Defendant Nick & Tony's America, Inc., is an Illinois Corporation with its principal place of business at 1840 Pickwick Avenue, Glenview, Illinois.  On information and belief, Nick & Tony's America, Inc. owns the entities numbered 62-68 in the table set forth in paragraph 21 of this Complaint.

25.     Defendant Red Star America, Inc. is an Illinois Corporation with its principal place of business at 1840 Pickwick Avenue, Glenview, Illinois.  On information and belief, Bar Louie America, Inc. owns the entities numbered 37-48 and 70-78 in the table set forth in paragraph 21 of this Complaint.

26.     Defendant Concepts America, Inc., is an Illinois Corporation with its principal place of business at 1840 Pickwick Avenue, Glenview, Illinois.  On information and belief, Concepts America, Inc. owns the entities numbered 30-36, 49-58 and 69 in the table set forth in paragraph 21 of this Complaint.

27.     Defendant Restaurants-America Consulting Group, Inc.("RACGI") is an Illinois Corporation with its principal place at 1840 Pickwick Avenue, Glenview, Illinois.  On information and belief, employees of Restaurants-America Consulting Group, Inc. have provided some management and consulting services to the Greenfield and Kasemir Restaurants and to Bar Louie America, Inc., Nick & Tony's America Inc., Red Star America, Inc., Concepts America, Inc., Cash Management, Inc., and RDG Chicago Trademark Co.

28.     Defendant Restaurant Marketing, Inc. is an Illinois Corporation with its principal place at 1840 Pickwick Avenue, Glenview, Illinois.  Defendant Restaurant Marketing, Inc. is owned by Jennifer Greenfield and Lisa Kasemir, but is controlled and operated by defendants Greenfield and Kasemir.  On information and belief, employees of Restaurant Marketing, Inc. have provided and currently provide management and consulting services to the operating

14

restaurant entities identified in paragraph 21 of this Complaint, and to Bar Louie America, Inc.,

Nick & Tony's America Inc., Red Star America, Inc., Concepts America, Inc., Restaurants

America Consulting Group, Inc., Cash Management, Inc., RDG Chicago Trademark Co., and

Restaurant-America Trademark, Inc.

29.     Defendant Cash Management, Inc. is an Illinois corporation with its principal

place of business at 1840 Pickwick Avenue, Glenview, Illinois.

30.     Defendant RDG Chicago Trademark Co. is an Illinois Corporation with its

principal place of business at 1840 Pickwick Avenue, Glenview, Illinois.  On information and

belief, RDG Chicago Trademark Co. is the owner of the trademarks for each of the restaurant

concepts identified in paragraph 21 of this Complaint, including without limitation  "Bar Louie,"

"Red Star Tavern," "Bluepoint," "Nick & Tony's Italian Chophouse," "Grillroom" and "One

North."

31.     Defendant Restaurant-America Trademark Co. is an Illinois Corporation with its

principal place of business at 1840 Pickwick Avenue, Glenview, Illinois.

32.     Defendant Restaurant Construction, Inc. is an Illinois Corporation with its

principal place at 1840 Pickwick Avenue, Glenview, Illinois.

33.     Defendant Restaurants-America is an association of at least defendants

Greenfield, Kasemir, Bar Louie America, Inc., Red Star America, Inc., Concepts America, Inc.,

Restaurants-America Consulting Group, Inc., Cash Management Inc., Restaurant Construction,

Inc., RDG Chicago Trademark, Inc., Restaurants America Trademark, Inc., Restaurant

Marketing, Inc. and the Greenfield and Kasemir Restaurants and is more fully described in

paragraph 94 below.

34.     Defendant Harold Dembo is a citizen of Illinois, and is licensed to practice law in

the State of Illinois.  Dembo provided legal services to Greenfield and Kasemir and each of their

affiliated entities, including RDG, beginning in the 1990s and continuing through the present.

At the time the RDG Asset Concealment Scheme was conceived and initially implemented,

15

Dembo was a partner in the law firm of Katz, Randall, Weinberg & Richmond.

35.     Defendant Gary Auerbach is a citizen of Illinois and is licensed to practice law in the State of Illinois.  Auerbach provided legal services to RDG.  At the time the RDG Asset Concealment Scheme was conceived and initially implemented, Auerbach was a partner in the law firm of Katz, Randall, Weinberg & Richmond.

36.     Defendant Katz, Randall, Weinberg & Richmond ("KRWR") is an Illinois General Partnership and at the time the RDG Asset Concealment Scheme was conceived and initially implemented was engaged in the practice of law.  KRWR represented RDG at the time the RDG Asset Concealment Scheme was conceived and initially implemented.

37.     On information and belief, defendant Weinberg & Richmond, LLP ("W&R") was an Illinois limited liability partnership.  Defendants Dembo and Auerbach were partners in W&R and took actions to further the RDG Asset Concealment Scheme while acting as partners of W&R.

38.     Defendant Lee Zaben was the Chief Financial Officer of RDG at the time the RDG Asset Concealment Scheme was conceived and initially implemented.

39.     Defendants John Does 1 through 20 are persons and entities not yet known to the Plaintiff that either participated in the RDG Asset Concealment Scheme, are alter egos of one or more of the Defendants, or are part of the association of entities comprising Restaurants-America.

## BACKGROUND FACTS

I.    RDG'S BUSINESS OPERATIONS

    A.    RDG is Formed and Begins Operations.

40.     From at least 1990, Greenfield and Kasemir opened dozens of restaurants in locations all across the country, using a number of restaurant trade names, including "Bar Louie," "Red Star," "Nick & Tony's," and "Bluepoint," among others.  In addition, Greenfield and Kasemir have opened a number of restaurants under different names, serving a variety of

16

different cuisines.

41.     RDG  was incorporated in or about April 1993.

42.     Pursuant to the RDG Management Agreements with each of the Greenfield and Kasemir Restaurants, RDG provided the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants in exchange for the RDG Management and Marketing Fees charged to each of the Greenfield and Kasemir Restaurants.  The stream of income generated by the RDG Management and Marketing Fees gave rise to the RDG Revenue Stream.  The RDG Revenue Stream totaled millions of dollars in annual fees and would have yielded millions of more dollars in fees had RDG continued to provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants.

43.     RDG  advertised itself and the restaurants owned and controlled by Greenfield and Kasemir with a distinct logo, a true and correct example of which is provided below:



44.     Once RDG was established, Greenfield and Kasemir's typical pattern for opening new Greenfield and Kasemir Restaurants was as follows:

      A.      Greenfield and Kasemir, acting through their attorneys, including Defendants Harold Dembo and Gary Auerbach established a new legal entity, typically a corporation with ownership split 50-50 between Greenfield and Kasemir.

      B.      The newly-formed corporation would purport to be the operating entity of the individual Greenfield and Kasemir Restaurant, such as "Bar Louie Tempe, Inc." or "Nick and Tony's of Omaha, Inc.";

      C.      The "operating entity" would enter into a lease with a third-party landlord

for the premises in which the Greenfield and Kasemir Restaurant would operate;

D.     Since the newly-created Greenfield and Kasemir Restaurant entity did not have a track record that would ensure payment of lease obligations, the prospective landlord would commonly require a guarantee of the lease from an entity with a track record, cash flow, and assets sufficient to support the guarantee;

E.     Greenfield and Kasemir, often acting through their attorney, Defendant Dembo, would represent to the prospective landlord that RDG was a creditworthy guarantor, typically providing financial information indicating that RDG was the owner or holding company of all of the restaurants operated by Greenfield and Kasemir;

F.     After the new Greenfield and Kasemir Restaurant entity began operations, the restaurant entity's revenue would be swept into an account or accounts owned by RDG and would be commingled with the revenues of all of the other Greenfield and Kasemir Restaurants;

G.     Thereafter, the newly created Greenfield and Kasemir Restaurant entity would either be profitable (in which case the guarantee would not be called) or it would be unprofitable;

H.     If the Greenfield and Kasemir Restaurant entity was unprofitable, Greenfield and Kasemir would then be faced with one of two costly options, either: (1) take money from the commonly pooled cash derived from the profitable restaurants in the RDG accounts and advance it to the non-profitable entity so that it could meet its lease and other obligations, or (2) close the restaurant, in which case the landlord would require RDG to honor its guarantee.

**B.      RDG Had Substantial Assets and Income.**

45.      During its entire existence, RDG's principal assets were: (i) the RDG Management Agreements and the right to receive the RDG Revenue Stream from those agreements; (ii) certain trademarks and trade names: (iii) office furniture and computer equipment used by RDG's employees to provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants; (iv) restaurant equipment used by the Greenfield and Kasemir Restaurants; and (v) receivables from certain of the Greenfield and Kasemir Restaurants to which RDG had advanced money (the "RDG Receivables").

46.      The RDG Receivables were created when RDG provided money to a Greenfield and Kasemir Restaurant over and above the amount of a restaurants' revenue.  The RDG Receivables were created in the ordinary course of its cash management functions.  As of December 28, 2003, the RDG Receivables had a face value of more than $6 million.

47.      The RDG Management Agreements and the right to the RDG Revenue Stream were valuable assets, providing that RDG would receive – in exchange for the RDG Management and Marketing Services – the RDG Revenue Stream.  During 2002 and 2003, Greenfield and Kasemir set the management and marketing fee at 10.5% of the gross revenue for each of the Greenfield and Kasemir Restaurants.

48.      For year end 2002, the RDG Revenue Stream generated by the RDG Management Agreements was in excess of $4,000,000.  Even after paying substantial salaries to Greenfield and Kasemir and other management personnel, RDG's profits grew as the number of restaurants in the Greenfield and Kasemir portfolio grew, generating profits of approximately $202,000 in 2000, $473,000 in 2001, and $2,063,000 in 2002.

**II.      CERTAIN CREDITORS MAKE CLAIMS AGAINST RDG.**

49.      By the end of 2003, RDG had guaranteed more than forty obligations of the Greenfield and Kasemir Restaurants.  During the pendency of the RDG Asset Concealment Scheme, at least the following creditors were owed money as a result of RDG's guarantees:

| Creditor | Greenfield and Kasemir Restaurant | Filed Amount of Claim |
|---|---|---|
| 600 Grant Street Associated Limited Partnership | Nick & Tony's of Pittsburgh, Inc. | $2,723,145.00 |
| City Center Retail Limited | Bar Louie Schaumburg, Inc. | $607,789.52 |
| Clive D.Kamins | 1530 State Restaurant, Inc. | $108,377.35 |
| Crescent HC Investors | Red Star Houston, Inc. | $711,353.43 |
| Deerfield Towne Center Holding Company | Nick & Tony's of Cincinnati, Inc. | $3,520,245.89 |
| Dick Clark Restaurants, Inc. | Bar Louie Schaumburg, Inc. | $571,105.52 |
| DP8 L.L.C. | Nick & Tony's of Cincinnati, Inc. | $2,702,588.00 |
| FGR Dilworth, LLC | Red Star Charlotte, Inc. | $1,147,199.61 |
| VV2/Geneva Commons, L.P. | Red Star Geneva, Inc. | $1,193,509.85 |
| NWD Arena District II | Red Star Columbus, Inc. | $3,191,493.45 |
| The Robert Colman Trust | Bar Louie Tempe, Inc. | $488,604.20 |
| The Rookery, Inc. | Red Star Chicago, Inc. | $732,277.86 |
| Scottsdale Fashion Square Partnership | Nick & Louie's, Inc. | $3,987,843.22 |
| Sixth and Nicollet, LLC | Nick & Tony's of Minneapolis, Inc. | $165,122.34 |

50.     By Spring 2003, several of the Greenfield and Kasemir Restaurants were experiencing financial difficulties and defaulted on their obligations that were guaranteed by RDG.  As a result, creditors were threatening litigation against RDG.

51.     By Spring 2003, at least two creditors had filed suit against RDG to collect on the guarantees.  One lawsuit was captioned:  *City Center Retail Limited Partnership I v. Bar Louie Schaumburg, Inc., et al.*, No 02 L 13536 (Cir. Ct. Cook Cty.) and the other was captioned: *LaSalle Bank National Association as Trustee Under Trust No. 113979 v. Red Star Chicago, Inc. and Restaurant Development Group, Inc.*, No. 03 L 6411 (Cir. Ct. Cook Cty.)

52.     The existence of the RDG lease guarantees and the lawsuits created substantial claims against the monies that RDG could distribute to Greenfield and Kasemir personally.

Greenfield and Kasemir were forced to continue to operate the unprofitable restaurants or face substantial liability on the RDG guarantees for the lease obligations in the event any of the restaurant entities defaulted on their leases.

III.    THE SCHEME TO DEFRAUD RDG'S CREDITORS

A.    Defendants Implement the RDG Asset Concealment Scheme.

53.    Rather than cause RDG to pay any portion of the guarantees, however, Greenfield and Kasemir with the assistance of other officers of RDG and RDG's outside lawyers and accountants embarked and implemented the RDG Asset Concealment Scheme, seeking to make RDG "bulletproof" from its creditors.  The basic premise of the RDG Asset Concealment Scheme was to strip RDG of its assets and transfer them to new companies, who would then provide the same RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants.  RDG only would be left with substantial debts to creditors, but bereft of any assets to satisfy those claims.

54.    Defendants Greenfield, Kasemir, Dembo and Auerbach with the assistance of other third-parties including, accountants Jack Gages and Restaurants Reporting Plus ("RRP"), implemented the RDG Asset Concealment Scheme.  The RDG Asset Concealment Scheme was accomplished by taking the particular actions described in paragraphs 55-107 below.

55.    Defendants Zaben, Greenfield and Kasemir, with the assistance of Defendants Dembo, Auerbach and third-parties Jack Gages and RRP, took steps to reduce the amount of assets within RDG available to satisfy RDG's creditors.  Specifically, Defendants Zaben and, upon information and belief, Defendants Dembo, Auerbach, Greenfield and Kasemir caused RDG to stop charging and collecting the RDG Management and Marketing Fee from the Greenfield and Kasemir Entities effective July 1, 2003.  Upon information and belief, the aforementioned Defendants did so to reduce the RDG Revenue Stream that could be seized by creditors and to reduce the amount of assets that ultimately would be transferred for less than reasonably equivalent value to Defendant RDG Chicago as part of the RDG Asset Concealment

Scheme.

56.     Despite failing to charge and collect the RDG Management and Marketing Fees from the Greenfield and Kasemir Restaurants from July 1, 2003 through December 28, 2003, RDG continued to provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants from July 1, 2003 to at least December 28, 2003.

**B.     RDG Fraudulently Transfers Its Assets to RDG Chicago.**

**(1)     Transfers of the RDG Management Agreements and the Right to Receive the RDG Management and Marketing Fees and the RDG Revenue Stream.**

57.     RDG transferred the RDG Management Agreements and the right to the RDG Revenue Stream to Defendant RDG Chicago.

58.     The aforementioned transfer was accomplished in the following manner. Defendants Dembo and Auerbach created back-dated termination agreements whereby each Greenfield and Kasemir Restaurant terminated its RDG Management Agreement with RDG. The termination agreements were prepared in the Fall 2003 and executed in December 2003, but falsely indicate that the individual restaurants had terminated the RDG Management Agreements with RDG on June 30, 2003, when in fact, RDG had continued to provide the RDG Management and Marketing Services after June 30, 2003, but chose not to charge or collect the RDG Management and Marketing Fees in furtherance of the RDG Asset Concealment Scheme.

59.     Defendants Dembo, Auerbach and other attorneys and professionals at Defendant KRWR caused Defendant RDG Chicago to be incorporated and drafted new management contracts between Defendant RDG Chicago and the then existing Greenfield and Kasemir Restaurants.  Pursuant to those "new" management contracts, RDG Chicago would provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants. Defendants Greenfield and Kasemir executed the agreements on behalf of the Greenfield and Kasemir Restaurants and Defendant RDG Chicago.  Defendant RDG Chicago did not provide reasonably equivalent value to RDG for the RDG Management Agreements and the rights to

receive the RDG Management and Marketing Fees and the RDG Revenue Stream.

60.     There is no bill of sale or other written agreement showing that RDG sold the RDG Management Agreements and the rights to the RDG Management and Marketing Fees and RDG Revenue stream to RDG Chicago.

### (2)    Transfers of the RDG Receivables.

61.     Defendants Greenfield, Kasemir, Zaben, Dembo and Auerbach made the determination to transfer the more than $6 million of RDG Receivables due from the various Greenfield and Kasemir Restaurants from RDG to Defendant RDG Chicago.  Defendant Zaben, with the assistance of third-parties Jack Gages, Schneider Cupero & Associates and RRP, prepared the accounting records to effectuate the transfers of the RDG Receivables from RDG to RDG Chicago.  RDG Chicago did not provide reasonably equivalent value to RDG for the RDG Receivables.

62.     There is no bill of sale or other written agreement showing that RDG sold the RDG Receivables to RDG Chicago.

### (3)    Transfers of RDG's Physical Assets.

63.     Defendants Greenfield and Kasemir caused RDG to transfer its tangible property (including furniture, computer equipment, telephone equipment, software licenses, supplies, etc.) to Defendant RDG Chicago.  Defendants Greenfield and Kasemir caused third-parties Jack Gages, Schneider Cuporo & Associates and RRP to perform the accounting functions that documented the transfer of RDG's fixed assets to Defendant RDG Chicago.  RDG Chicago did not provide RDG with reasonably equivalent value for its physical assets.

64.     There is no bill of sale or other written agreement showing that RDG sold its physical assets, including cash, to RDG Chicago.

23

**(4)     Transfers of RDG's Trademark Assets.**

65.     Defendants Dembo, Auerbach and other attorneys and professionals at KRWR incorporated Defendant RDG Chicago Trademark Co.

66.     Defendants Greenfield, Kasemir, Dembo and Auerbach caused attorney Max Shaftal and other attorneys and professionals at the law firm of Patzik, Frank & Samotny to create documents transferring the "Red Star" and "Blue Point" trademarks that were owned by RDG to Defendant RDG Chicago Trademark Co.  Defendants Greenfield and Kasemir executed the documents effectuating the transfer.  RDG Chicago Trademark Co. did not provide reasonably equivalent value to RDG for its trademark assets.

**C.     The RDG Asset Concealment Scheme Deprives RDG's Creditors of Assets to Pay Their Claims**.

67.     As a result of the foregoing transfers, RDG was left bereft of assets and was unable to meet its guarantee obligations and, other than defending litigation brought against it by creditors seeking payment, RDG ceased business operations.

68.     As of September 28, 2007, excluding insider and duplicate claims, creditors have filed claims against the Estate of more than $22 million.

69.     Defendants Greenfield and Kasemir benefitted from the RDG Asset Concealment Scheme because they continued to enjoy the RDG Revenue Stream from the RDG Management Agreements that previously was paid to RDG without having to share any of those monies with creditors of RDG, including the creditors holding guarantees executed by RDG.

**IV     DEFENDANT RDG CHICAGO WAS THE SUCCESSOR TO RDG**.

**A.     RDG Chicago Provided the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants.**

70.     After RDG transferred its assets (other than its trademark assets) to RDG Chicago, RDG Chicago provided the same RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants.  Substantially the same management personnel that previously were employed by RDG were now employed by RDG Chicago, operated from the

24

same location at 1840 Pickwick Avenue, Glenview, Illinois as did RDG and used substantially the same physical assets transferred from RDG to RDG Chicago to provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants.

**B.  RDG Chicago Maintained the Same Website and Frequent Dining Program.**

71.  RDG Chicago maintained the website on which the Greenfield and Kasemir Restaurants were advertised and marketed.  Other than reflecting the name RDG Chicago (instead of RDG), the content of the website was substantially the same as the website formerly operated by RDG.

72.  RDG Chicago also maintained and operated the same frequent dining program that formerly was operated by RDG.  The name of the frequent diner program was changed to the "RDG Chicago Frequent Diner Club."  On information and belief, the credits accrued to customers in the RDG Frequent Diner Club were transferred into the RDG Chicago Frequent Diner Club, and other than the change of name, the operations of the program continued without disruption.

**C.  RDG Chicago Used the Same Distinctive Logo.**

73.  The same distinctive logo that was previously used by RDG to advertise itself and the Greenfield and Kasemir Restaurants was now used by RDG Chicago to advertise itself and the Greenfield and Kasemir Restaurants.   A true and correct example of RDG Chicago's logo is provided below:



**D.  RDG Chicago Provided the Same Cash Management Function.**

74.  RDG Chicago, like RDG, acted as the central repository for revenue generated by the Greenfield and Kasemir Restaurants.  The Greenfield and Kasemir Restaurants' revenue would be swept into an account owned by RDG Chicago and would be commingled with the

revenues of all of the other Greenfield and Kasemir Restaurants.  As had RDG in the past, if the individual Greenfield and Kasemir Restaurants needed money to pay their debts, RDG Chicago either paid those debts directly or transferred money to the individual restaurants to pay the debts.  Like RDG, if a Greenfield and Kasemir Restaurant's operating income was insufficient to pay its debts, the cash transfer from RDG Chicago over and above the amount of its operating revenue generated a receivable in favor of RDG Chicago from the individual Greenfield and Kasemir Restaurant entity.

## IV.   THE SCHEME TO DEFRAUD RDG'S CREDITORS CONTINUES THROUGH THE PRESENT.

### A.   Creditors Seek to Hold RDG Liable for RDG's Debts.

75.   After RDG fraudulently transferred its assets at the end of 2003, more lawsuits were filed against RDG.  At least the following lawsuits were filed against RDG:

| Case Caption | Court | Nature of Proceeding |
|---|---|---|
| *City Center Retail Ltd. v. RDG, et al.* | Cook County, IL | Suit on guarantee |
| *LaSalle Bank & Trust v. RDG et al.* | Cook County, IL | Suit on guarantee |
| *FGR Dilworth v. RDG, et al.* | Mecklenburg County, NC | Suit on guarantee |
| *IKON Printing v. RDG, Inc.* | Cook County, IL | Vendor dispute |
| *Sixth & Nicolet v. RDG, et al.* | Hennepin County, MN | Suit on guarantee |
| *Service Check Inc. v. RDG, Inc.* | Cook County, IL | Vendor dispute |
| *1530 State Street, LLC v. RDG* | Cook County, IL | Suit on guarantee |
| *City Center Retail Ltd v. RDG, et al.* 02 L 13536 | Cook County, IL | Post-judgment citation proceedings |
| *Scottsdale Fashion Square v. RDG, et al.* | Maricopa County, AZ | Suit on guarantee |
| *600 Grant Street v. RDG, et al.,* | Allegheny County, PA | Suit on guarantee |
| *Colman v. RDG, et al.* | Maricopa County, AZ | Suit on guarantee |
| *FGR Dilworth v. RDG, et al.* | Cook County, IL | Post-judgment citation proceedings |
| *IKON Printing v. RDG, Inc.* | Cook County, IL | Post-judgment citation proceedings |
| *Sixth & Nicolet v. RDG, et al.* | Cook County, IL | Post-judgment citation proceedings |

| Case Caption | Court | Nature of Proceeding |
| --- | --- | --- |
| *Crescent HC Investors v. RDG, et al.,* | Houston County, TX | Suit on guarantee |
| *600 Grant Street v. RDG, et al.* | Cook County, IL | Post-judgment citation proceedings |
| *Casale v. RDG et al.* | Cook County, IL | Suit on guarantee |
| *Hospitality Solutions v. RDG, et al.* | Cook County, IL | Vendor dispute |
| *Guest Informant v. RDG, et al.* | Cook County, IL | Vendor dispute |
| *Colman v. RDG, et al.* | Cook County, IL | Post-judgment citation proceedings |
| *Colman v. RDG, et al.* | N.D. Ill. (Judge Manning) | Fraudulent transfer litigation |
| *Eanet v. RDG, et al.* | Cook County, IL | Vendor dispute |
| *The Dispatch Printing Co. v. RDG, et al.* | Cook County, IL | Vendor dispute |
| *F&F Office Supplies v. RDG, et al.* | Cook County, IL | Vendor dispute |
| *Scottsdale Fashion Square v. RDG, et al.* | Cook County, IL | Post-judgment citation proceedings |

76.    Believing that they had successfully frustrated RDG's creditors, Defendants

Greenfield and Kasemir determined not to defend certain claims brought by certain claimants

and either consented to judgments or allowed default judgments to be entered against RDG.

77.    After obtaining judgments against RDG, certain creditors began post-judgment

collection proceedings against RDG.  In connection with those proceedings, those creditors

discovered evidence of the RDG Asset Concealment Scheme and sought to hold RDG Chicago

and other entities liable for RDG's debts.

78.    On August 19, 2004, LaSalle Bank National Association, as Trustee under Trust

No. 113979 (the "Rookery"), sued RDG Chicago in the Circuit Court of Cook County in Case

No. 04 L 9388.  The Rookery alleged that RDG Chicago should be held liable as a successor to

RDG:

>    The "restructuring" pursuant to which RDG Chicago, Inc.
>    succeeded to all of the assets of Restaurant Development Group,
>    Inc. resulted in RDG Chicago, Inc. being a mere continuation of
>    Restaurant Development Group, Inc.  In addition, the
>    "restructuring" was designed for the fraudulent purpose of
>    allowing Restaurant Development Group, Inc. to escape liability

> for its debts, including the debt Restaurant Development Group
> owes [the Rookery] on the Guaranty.  Accordingly, RDG Chicago,
> Inc. has succeeded to Restaurant Development Group, Inc.'s
> liability to the Rookery on the Guaranty.

79.      On September 3, 2004, another of RDG's creditors, City Center Retail Limited

Partnership I ("City Center"), filed a Second Amended Complaint adding RDG Chicago to its

lawsuit against RDG.  City Center specifically alleged that RDG fraudulently transferred its

assets to RDG Chicago and that RDG Chicago should be held liable as a successor to RDG

because RDG Chicago carried on the same business as did RDG using RDG's fraudulently

transferred assets.

80.      Greenfield, Kasemir, and upon information and belief, Defendants Dembo,

Auerbach and KRWR recognized that RDG Chicago would be held liable for RDG's debts and

took additional actions in furtherance of the RDG Asset Concealment Scheme in an attempt to

frustrate, hinder and delay RDG's creditors.

**B.      The RDG Asset Concealment Scheme Continues With The Transfers of
Assets From RDG Chicago To Restaurants-America**.

81.      As part of the RDG Asset Concealment Scheme, Defendants Greenfield, Kasemir

and, upon information and belief, Defendants Dembo and Auerbach decided to strip RDG

Chicago of its assets as they previously had done with RDG's assets to further hinder and delay

RDG's creditors.

82.      As of September 30, 2004, RDG Chicago's principal assets were: (i) the RDG

Management Agreements and the rights to the RDG Management and Marketing Fees and the

RDG Revenue Stream that RDG Chicago obtained from RDG; (ii) office furniture and computer

equipment, some or all of which once had belonged to RDG and had been transferred to RDG

Chicago from RDG; (iv) restaurant equipment, some or all of which once had belonged to RDG

and had been transferred by RDG to RDG Chicago; (v) the RDG Receivables that had been

transferred to RDG Chicago from RDG; and (vi) new receivables from the individual restaurants

that were generated in the same manner as the RDG Receivables after December 28, 2003.

83.     To further the RDG Asset Concealment Scheme, Defendants Greenfield and
Kasemir and, upon information and belief, Defendants Dembo and Auerbach caused RDG
Chicago to cease operations like they had done with RDG.  By no later than January 1, 2005,
RDG Chicago ceased operating as a formal entity.

### (1)     Transfers of the RDG Management Agreements and RDG Revenue Stream.

84.     Greenfield and Kasemir transferred or caused to be transferred RDG Chicago's
principal assets – the RDG Management Agreements, the RDG Management and Marketing
Fees and the RDG Revenue Stream – from the original transferee (RDG Chicago) to the
Greenfield and Kasemir Restaurants.  The Greenfield and Kasemir Entities did not provide RDG
Chicago with reasonably equivalent value in exchange for the RDG Management Agreements
and rights to the RDG Management and Marketing Fees and the RDG Revenue Stream that
would have been paid to RDG and then RDG Chicago in exchange for RDG Management and
Marketing Services.

85.     At present, the RDG Revenue Stream attributable to the RDG Management and
Marketing Fees (originally paid to RDG and then to RDG Chicago) now simply are retained by
the Greenfield and Kasemir Restaurants, even though the RDG Management and Marketing
Services that were given in exchange for the management fee have continued without
interruption.

86.     As explained in detail below, the Greenfield and Kasemir Restaurants continue to
receive the RDG Management and Marketing Services from substantially the same persons, but
instead of incorporating a new entity to provide such services, Greenfield and Kasemir caused
the persons providing such services to be paid by other entities owned and/or controlled by
Greenfield and Kasemir.  While no formal entity was incorporated, the new entity that provided
the RDG Management and Marketing Services is an unincorporated association operating under
the banner of "Restaurants-America."

### (2)     Transfers of RDG Chicago's Receivables.

87.     RDG Chicago transferred its receivables due from the Greenfield and Kasemir Restaurants, some of which it had obtained from RDG, to Defendants Bar Louie America, Inc., Red Star America, Inc., Nick & Tony's America, Inc. and Concepts America, Inc.

88.     Defendants Bar Louie America, Inc., Red Star America, Inc., Nick & Tony's America, Inc. and Concepts America, Inc. did not provide reasonably equivalent value to the RDG Chicago for RDG Chicago's receivables.

89.     There is no bill of sale or other written agreement showing that RDG Chicago sold its receivables to Defendants Bar Louie America, Inc., Red Star America, Inc., Nick & Tony's America, Inc. and Concepts America, Inc.

### (3)     Transfers of the RDG Chicago's Remaining Assets.

90.     The remaining assets of RDG Chicago, including its cash, RDG Chicago's office furniture, computer equipment and restaurant equipment, some, if not all, of which RDG Chicago obtained from RDG, disappeared from the books of records of RDG Chicago on or about December 26, 2004.

91.     Upon information and belief, the remaining assets of RDG Chicago, including its cash, RDG Chicago's office furniture, computer equipment and restaurant equipment do not appear on the books and records or any other entity.

92.     Upon information and belief, the remaining assets of RDG Chicago, including its cash, RDG Chicago's office furniture, computer equipment and restaurant equipment are used or were used after December 26, 2004 by the persons who provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants and some, if not all, of RDG Chicago's former assets are currently located at 1840 Pickwick Avenue, Glenview, Illinois.

**V.     RESTAURANTS-AMERICA AND OTHER ENTITIES ARE THE SUCCESSORS TO RDG AND RDG CHICAGO.**

93.     Greenfield and Kasemir, upon information and belief, acting in concert with Defendant Dembo and other professionals of KRWR (or W&R), determined that they should not form a corporate entity to provide the RDG Management and Marketing Services and to otherwise act as the corporate face of the Greenfield and Kasemir Restaurants.  Instead, Greenfield and Kasemir, upon information and belief, acting in concert with Defendant Dembo and other professionals of KRWR (or W&R), determined that those persons and entities that performed the RDG Management and Marketing Services formerly provided by RDG and RDG Chicago would be known collectively as "Restaurants-America."

94.     After RDG Chicago ceased to exist, Greenfield and Kasemir, (with, on information and belief the assistance of defendants Dembo and Auerbach) created an association that they labeled "Restaurants-America" that consisted of at least the following:  RACGI, Restaurant Marketing, Inc., Bar Louie America, Inc., Nick & Tony's America, Inc., Red Star America, Inc., Concepts America, Inc., Cash Management, Inc., Restaurant Construction, Inc. RDG Chicago Trademarks, Inc., the Greenfield and Kasemir Restaurants and John Does 1 through 20.  Restaurants-America is a partnership or joint venture that was created for the purposes of performing the RDG Management and Marketing Services while concealing the RDG Revenue Stream from the creditors of RDG.   Each of the entities constituting Restaurants-America contributes something to the management of the whole.  Restaurants-America operates the Greenfield and Kasemir Restaurants as the successor to RDG and RDG Chicago, and advertises the collective enterprise to the public as Restaurants-America.

**A.     Restaurants-America and Other Entities Perform the RDG Management and Marketing Services.**

95.     The Greenfield and Kasemir Restaurants continue to receive the same RDG Management and Marketing Services that were performed first by RDG and then by RDG Chicago.  As part of the RDG Asset Concealment Scheme and further conceal the assets of

31

RDG, Defendants Greenfield and Kasemir assigned substantially the same management and marketing employees to the payrolls of certain of the Greenfield and Kasemir Restaurants and other entities owned and/or controlled by Greenfield and Kasemir even though they provide the RDG Management and Marketing Services on behalf of all of the Greenfield and Kasemir Restaurants.

96.     Employees of various entities that perform the RDG Management and Marketing Services carry or have carried business cards referring to themselves as employees of "Restaurants-America" even though they receive their paychecks from entities other than Restaurants-America.

97.     Employees who currently provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants work from the same offices from which RDG and then RDG Chicago operated located at 1800 Pickwick Avenue, Glenview, Illinois.

98.     Upon information and belief, employees who currently provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants use substantially the same office equipment and computer equipment that first was used by RDG and then RDG Chicago to provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants.

**B.     Restaurants-America Maintains the Same Website and Frequent Dining Program.**

99.      Like RDG and RDG Chicago, Restaurants-America is held out as the conglomeration of all of Greenfield and Kasemir's restaurant entities.  The website that formerly was operated by RDG and RDG Chicago that advertises each restaurant currently owned and operated by Greenfield and Kasemir is now known as  www.restaurants-america.com.

100.     The frequent diner program that was formerly operated by RDG and RDG Chicago is now known as the "Restaurants-America Frequent Diner Club" and operates in the same manner as it did when operated by RDG and RDG Chicago.

32

**C.      Restaurants-America Uses the Same Distinctive Logo as RDG and RDG Chicago.**

101.    The same distinctive logo that was previously used by RDG and then RDG Chicago to advertise themselves and Greenfield and Kasemir Restaurants is now used by Restaurants-America to advertise itself and the Greenfield and Kasemir Restaurants.   A true and correct example of Restaurants-America's logo is provided below:



**D.      Defendants Greenfield and Kasemir Cause Defendant Cash Management, Inc. to Perform the Same Cash Management Function.**

102.    One of RDG's and then RDG Chicago's significant purposes was to provide cash management services and act as a central repository and a central bank for the Greenfield and Kasemir Restaurants.

103.    After Defendants Greenfield and Kasemir caused RDG and RDG Chicago to go out of business, they still desired a centralized repository and a central bank for the revenues generated by the Greenfield and Kasemir Restaurants, but wanted to keep such revenue out of the name of any entity known to RDG's creditors.

104.    Upon information and belief, Defendants Dembo, Auerbach and other attorneys and professionals at Defendant KRWR or its successor Defendant Weinberg Richmond caused Defendant Cash Management, Inc. to be incorporated.  Cash Management, Inc.'s sole purpose was to replace RDG's and later RDG Chicago's function as the central repository and central bank for the revenue of the Greenfield and Kasemir Restaurants.  Like before, the Greenfield and Kasemir Restaurants' revenue was swept into accounts owned by Defendant Cash Management, Inc. and would be commingled with the revenues of all of the Greenfield and Kasemir Restaurants.

33

105.    If an individual Greenfield and Kasemir Restaurant's or a restaurant holding company's operating income was insufficient to pay its debts, then money was taken from another Greenfield and Kasemir Restaurant or holding company and transferred through the Cash Management, Inc. accounts to the individual Greenfield and Kasemir Restaurant or holding company in need of additional funds.

106.    None of the Greenfield and Kasemir Restaurants or the holding companies paid any amounts to Cash Management, Inc. for its services.

107.    The RDG Asset Concealment Scheme continues to this date.  Upon information and belief, Defendants Greenfield, Kasemir and others at their direction continue to take actions to frustrate, hinder and delay Plaintiff's efforts to collect debts on behalf of RDG's creditors.

**COUNT ONE**

**SUCCESSOR LIABILITY AGAINST GREENFIELD, KASEMIR, RESTAURANTS-
AMERICA, RESTAURANT MARKETING, INC. , RACGI,
BAR LOUIE AMERICA, INC., NICK & TONY'S AMERICA, INC.,
RED STAR AMERICA, INC., CONCEPTS AMERICA, INC., CASH MANAGEMENT,
INC., RDG CHICAGO TRADEMARK, INC., RDG CHICAGO, INC.
AND THE GREENFIELD and KASEMIR RESTAURANTS**

108.    Plaintiff restates and realleges paragraphs 1 through 107 of this Complaint as though fully set forth herein.

109.    Prior to the RDG Asset Concealment Scheme, RDG was in the business of providing the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants.

110.    Immediately after the initiation of the RDG Asset Concealment Scheme, Defendant RDG Chicago, Inc. seamlessly continued to provide the RDG Management and Marketing Services to the Greenfield and Kasemir Restaurants, with no interruption of any services.  At the same time, RDG Chicago began receiving the RDG Management and Marketing Fees that previously had been paid to RDG.

111.    RDG Chicago operated from the same offices used by RDG, used substantially

34

the same equipment previously owned by RDG to conduct its business, and assigned substantially the same employees to the same functions previously performed by RDG.

112.    RDG Chicago held itself out to the public as the same entity that was previously known as RDG.

113.    In 2004, Greenfield and Kasemir furthered the RDG Asset Concealment Scheme by causing RDG Chicago to stop charging and collecting the RDG Management and Marketing Fees from the Greenfield and Kasemir Restaurants.  Ultimately, Greenfield and Kasemir, and upon information and belief, acting in concert with Defendants Dembo and Auerbach, caused RDG Chicago to stop doing business altogether.

114.    To further mask and conceal the original fraudulent transfers and obscure the trail for RDG's creditors that were following the trail of RDG's assets, Greenfield and Kasemir, and upon information and belief, acting in concert with Defendants Dembo and Auerbach, caused RDG Chicago to transfer its assets (some of which it had obtained from RDG)  to entities owned and controlled by Greenfield and Kasemir.  In addition, Greenfield and Kasemir (on information and belief acting in concert with Defendants Dembo and Auerbach), formed Restaurants-America (which, together with Greenfield and Kasemir will be referred to as the "RDG Successor Defendants").

115.    The RDG Successor Defendants currently operate under the name "Restaurants-America" and hold themselves out to the world as an association of restaurants with common management and ownership.  All of the RDG Management and Marketing Services (originally performed by RDG and subsequently by RDG Chicago) are now being performed under the banner of "Restaurants-America."

116.    The RDG Successor Defendants perform the RDG Management and Marketing Services for the Greenfield and Kasemir Restaurants first provided by RDG and then RDG Chicago, with no interruption of any services.  At the same time, the RDG Successor Defendants retained the management fees that had previously been paid to RDG Chicago (and before that to

RDG).

117.    The RDG Successor Defendants operate from the same offices used by RDG and then RDG Chicago, use substantially the same equipment first owned by RDG and then RDG Chicago to conduct their business, and assign the same (or substantially the same) employees to the same functions previously performed by RDG and then RDG Chicago.  Further, on information and belief, "Restaurants-America" has held itself out to the public as the same entity that was previously known as RDG and then as RDG Chicago.

118.    The RDG Successor Defendants either have an express or implied agreement to carry on the enterprise of providing the RDG Management and Marketing Services previously provided by RDG (and subsequently provided by RDG Chicago).  Each of the RDG Successor Defendants has manifested its intent to be associated with the joint venture by contributing its financial resources, effort, skill and knowledge.  Each of the RDG Successor Defendants has a measure of control over the operation of the enterprise, as each of them act under the direction of the common ownership of Greenfield and Kasemir.  Finally, each of the RDG Successor Defendants shares some measure of the profit and losses of the enterprise as a whole.

119.    Based on the foregoing, RDG Chicago, and subsequently the association of the Successor Defendants, are the continuation of the business of RDG.  As such, it would work a fraud and inequity on the creditors of RDG unless RDG Chicago and the RDG Successor Defendants are held to be liable for the debts of RDG.

WHEREFORE, Plaintiff respectfully requests that the Court, enter an Order:

A.    Finding that RDG Chicago and the RDG Successor Defendants are a mere continuation of RDG and that the separate corporate identity of these entities be disregarded;

B.    Finding that RDG Chicago and the RDG Successor Defendants are liable for all of the debts of RDG;

C.    Entering judgment in favor of plaintiffs and against RDG Chicago and the  RDG

36

Successor Defendants (jointly and severally) in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is claimed to exceed $22 million; and

D.    Granting such other equitable relief as may be just and appropriate.

## COUNT TWO
## FOR BREACH OF FIDUCIARY DUTY
## AGAINST GREENFIELD, KASEMIR and ZABEN

120.    Plaintiff restates and realleges paragraphs 1 through 119 of this Complaint, as though fully set forth herein.

121.    At all times relevant to this Complaint, Greenfield and Kasemir were controlling shareholders, directors and officers of RDG.  Zaben was an officer of RDG.  Each of Greenfield, Kasemir, and Zaben owed fiduciary duties of loyalty to RDG.

122.    RDG was insolvent at the time of the RDG Asset Concealment Scheme.  In the alternative, the RDG Asset Concealment Scheme rendered RDG insolvent and unable to pay its debts as they came due.

123.    Greenfield, Kasemir, and Zaben owed a fiduciary obligation to act with due care and to deal honestly and fairly with RDG's creditors.

124.    Greenfield, Kasemir, and Zaben breached their fiduciary duties to RDG  and its creditors by failing to collect management fees from the Greenfield and Kasemir Restaurants then existing from June 2003 through December 31, 2003.

125.    Greenfield, Kasemir, and Zaben breached their fiduciary duties to RDG  and its creditors by authorizing and/or participating in the RDG Asset Concealment Scheme.

126.    Greenfield, Kasemir and Zaben breached their fiduciary duties to RDG and its creditors by transferring the RDG Receivables, trademarks and other RDG assets to other entities owned and/or controlled by Greenfield and Kasemir for less than reasonably equivalent value.

37

127.    Greenfield, Kasemir and Zaben breached their fiduciary duties to RDG by causing the business opportunity represented by the RDG Revenue Stream to be usurped by other entities owned and/or controlled by Greenfield and Kasemir, first by RDG Chicago, and then by RDG Successor Defendants..

128.    As a proximate result of the breaches of fiduciary duties described in this Count, RDG is unable to pay its creditors, even though in the absence of such breaches, all or part of RDG's liability could have been satisfied.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Kasemir, Greenfield, and Zaben, jointly and severally, in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is claimed to exceed $22 million, plus punitive damages, and grant such other equitable relief as may be just and appropriate.

## COUNT THREE
## FOR LEGAL MALPRACTICE
## AGAINST DEMBO, AUERBACH, KRWR and W&R

129.    Plaintiff restates and realleges paragraphs 1 through 128 of this Complaint, as though fully set forth herein.

130.    Throughout the RDG Asset Concealment Scheme, RDG was the client of Dembo and Auerbach.

131.    Dembo and Auerbach had a duty to perform the legal services they provided to RDG with an exercise of due care.

132.    Dembo and Auerbach had a duty of loyalty to RDG and a duty not to take any actions that favored another client to the detriment of RDG.

133.    Dembo and Auerbach breached their duties of care and loyalty to RDG by:  (a) assisting RDG's insiders in stripping RDG of its assets and allowing the insiders to usurp RDG's

38

business opportunities at a time when RDG was either insolvent, or was to be rendered insolvent by the transfers; (b) representing both RDG and its officers and directors when it was apparent that there was a conflict of interest between RDG (which owed a fiduciary duty to its creditors) and the insiders who were intent on breaching their fiduciary duties to RDG's creditors.

134.     As a result of the breaches of duty identified in paragraph 133, RDG was stripped of assets that could have been used to pay all or part of the obligations owed by RDG to its creditors.

135.     KRWR is liable for the actions of its partners, Dembo and Auerbach.

136.     W&R is liable for the actions of its members, Dembo and Auerbach.

137.     While they were members of W&R, Defendants Dembo and Auerbach knowingly induced, participated and assisted additional acts that furthered the RDG Asset Concealment Scheme.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants Dembo, Auerbach, KRWR, and W&R on a joint and several basis in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is claimed to exceed $22 million, plus punitive damages, and grant such other equitable relief as may be just and appropriate.

## COUNT FOUR
## AVOIDING FRAUDULENT CONVEYANCE (ACTUAL FRAUD)
### AGAINST RDG CHICAGO, INC. and RDG CHICAGO TRADEMARK CO.

138.     Plaintiff restates and realleges paragraphs 1 through 137 of this Complaint as though fully set forth herein.

139.     The transfers made from RDG to RDG Chicago and RDG Chicago Trademark Co. as a part of the RDG Asset Concealment Scheme were made with the actual intent to delay, hinder and/or defraud RDG's creditors, in that each of the following non-exclusive, badges of

39

fraud existed in connection with the transfers:

  A.  The transfers were made to insiders of RDG;

  B.  The same owners of RDG (*i.e.*, Greenfield and Kasemir) retained constructive possession and control of the transferred assets;

  C.  RDG had been sued prior to the transfers;

  D.  The transfers were substantially all of the RDG's assets;

  E.  RDG received inadequate consideration in respect to the value of the assets transferred;

  F.  RDG was insolvent because of, and became insolvent shortly before or shortly after the transfers.

140.  Pursuant to 740 ILCS 160/8, each of the transfers made as a part of the RDG Asset Concealment Scheme may be avoided to the extent necessary to satisfy the liabilities of RDG.

WHEREFORE, Plaintiff respectfully requests that the Court, enter an Order:

A.  Avoiding the transfers made as a part of the RDG Asset Concealment Scheme pursuant to 740 ILCS 160/8;

B.  Entering judgment pursuant to 740 ILCS 160/9 in favor of Plaintiff and against RDG Chicago and RDG Chicago Trademark Co. in the in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is claimed to exceed $22 million, plus punitive damages;

C.  Entering an injunction prohibiting Defendants from furthering transferring any assets that previously were owned by RDG; and

D.  Granting such other equitable relief as may be just and appropriate.

**COUNT FIVE**
**AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)**
**AGAINST RDG CHICAGO, INC. and RDG CHICAGO TRADEMARK CO.**

141.    Plaintiff restates and realleges paragraphs 1 through 140 of this Complaint as though fully set forth herein.

142.    Each of the transfers made from RDG to RDG Chicago and RDG Chicago Trademark Co. was made for less than reasonably equivalent value.

143.    RDG was insolvent at the time of each of the transfers.  In the alternative, RDG was rendered insolvent by the date of the transfers.

144.    At and after the time of each of the transfers, RDG was engaged in business or about to engage in business for which any property remaining with RDG was an unreasonably small capital.  At the time of the transfers, RDG intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

145.    Pursuant to 740 ILCS 160/5(b) and 6, each of the transfers made from RDG to RDG Chicago and from RDG to RDG Chicago Trademark Co. is fraudulent as to the RDG's creditors.  Pursuant to 740 ILCS 160/8, each of the transfers made as a part of the RDG Asset Concealment Scheme may be avoided to the extent necessary to satisfy RDG's liability.

146.    Pursuant to 740 ILCS 160/9, judgment may be entered against RDG Chicago and RDG Chicago Trademark Co. in the amount of RDG's liability.

WHEREFORE, Plaintiff respectfully requests that the Court, enter an Order:

A.    Avoiding the transfers made as a part of the RDG Asset Concealment Scheme pursuant to 740 ILCS 160/8;

B.    Entering judgment pursuant to 740 ILCS 160/9 in favor of Plaintiff and against RDG Chicago and RDG Chicago Trademark Co. in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is

41

claimed to exceed $22 million, plus punitive damages;

C.    Entering an injunction prohibiting Defendants from furthering transferring any assets that previously were owned by RDG; and

D.    Granting such other equitable relief as may be just and appropriate.

## COUNT SIX

**AVOIDING FRAUDULENT CONVEYANCE (SUBSEQUENT TRANSFEREES) AGAINST GREENFIELD, KASEMIR, RESTAURANTS-AMERICA, RESTAURANT MARKETING, INC. , RACGI, BAR LOUIE AMERICA, INC. NICK & TONY'S AMERICA, INC., RED STAR AMERICA, INC., CONCEPTS AMERICA, INC., CASH MANAGEMENT, INC. and THE GREENFIELD AND KASEMIR RESTAURANTS**

147.    Plaintiff restates and realleges paragraphs 1 through 146 of this Complaint as though fully set forth herein.

148.    As a result of the dissolution of RDG Chicago, the RDG Revenue Stream that was originally paid to RDG and then paid to RDG Chicago is now being retained by the RDG Successor Defendants (for purposes of this Count, the "Subsequent Transferees").

149.    At the time RDG Chicago ceased operation and transferred the RDG Revenue Stream to the Subsequent Transferees, RDG Chicago was either insolvent, or the transfer rendered RDG Chicago insolvent.

150.    The decision to have RDG Chicago cease business operations but provide the RDG Management and Marketing Services through the combined efforts of the Subsequent Transferees was made with the intent to hinder, delay and defraud the creditors of RDG, and to conceal assets that originally belonged to RDG.

151.    The Subsequent Transferees did not pay reasonably equivalent value to be relieved of their obligations to pay management fees to RDG Chicago.

152.    In addition, upon information and belief, the RDG Receivables were transferred to Bar Louie America, Inc., Nick & Tony's America, Inc., Red Star America, Inc., and Concepts

42

America, Inc. (the "Receivables Transferees").

153.    On information and belief, the Receivables Transferees did not pay reasonably equivalent value to RDG Chicago for the RDG Receivables.

154.    Upon information and belief, RDG Chicago transferred the office, computer and restaurant equipment it obtained from RDG to one or more of the Receivable Transferees.

155.    Pursuant to 740 ILCS 160/9, none of the Subsequent Transferees obtained the transferred assets in good faith and are therefore liable for the amount of the fraudulent transfers they received.

WHEREFORE, Plaintiff respectfully requests that the Court, enter an Order:

A.    Avoiding the transfers of all assets that once belonged to RDG that were transferred to the Subsequent Transferees by RDG Chicago pursuant to 740 ILCS 160/9;

B.    Entering judgment pursuant to 740 ILCS 160/9 in favor of Plaintiff and against Greenfield, Kasemir, Restaurants-America, Restaurant Marketing, Inc., RACGI, Bar Louie America, Inc., Nick & Tony's America, Inc., Red Star America, Inc., Concepts America, Inc., Cash Management, Inc., and the Greenfield and Kasemir Restaurants in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and which currently is claimed to exceed $22 million, plus punitive damages;

C.    Entering an injunction prohibiting Defendants from furthering transferring any assets that previously were owned by RDG; and

D.    Granting such other equitable relief as may be just and appropriate.

## COUNT SEVEN
### FOR CIVIL CONSPIRACY TO COMMIT ACTUAL FRAUD AGAINST GREENFIELD, KASEMIR, ZABEN, DEMBO, AUERBACH, KRWR and W&R

156.    Plaintiff restates and realleges paragraphs 1 through 155 of this Complaint, as though fully set forth herein.

157.    Defendants Greenfield, Kasemir, Zaben, Dembo and Auerbach, and KRWR and W&R acting through Dembo and Auerbach ("Conspirators") knew that the purpose and effect of the RDG Asset Concealment Scheme was to deprive RDG of its assets to the detriment of RDG's creditors.  Each of the Conspirators entered into a conspiracy to engage in the series of transactions that constituted the RDG Asset Concealment Scheme, and as a result, RDG was deprived of its assets and rendered insolvent and unable to pay its debts as they came due.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Greenfield, Kasemir, Zaben, Dembo, Auerbach, KRWR and W&R in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is claimed to exceed $22 million, plus punitive damages, and grant such other equitable relief as may be just and appropriate.

## COUNT EIGHT
### AIDING AND ABETTING ACTUAL FRAUDULENT TRANSFERS AGAINST GREENFIELD, KASEMIR and ZABEN

158.    Plaintiff restates and realleges paragraphs 1 through 157 of this Complaint, as though fully set forth herein.

159.    Greenfield, Kasemir and Zaben knowingly induced, participated and assisted RDG in actively and deliberately defrauding its creditors by and through the transfers performed during the RDG Asset Concealment Scheme.

160.    As a result of each of Greenfield and Kasemir aiding and abetting RDG' s

44

improper transfers, RDG has creditors that remain unpaid, even though there were sufficient assets owned by RDG to satisfy all or part of the liability.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Greenfield and Kasemir, jointly and severally, in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is claimed to exceed $22 million, plus punitive damages, and grant such other equitable relief as may be just and appropriate.

## COUNT NINE
## AIDING AND ABETTING ACTUAL FRAUDULENT TRANSFERS AGAINST DEMBO, AUERBACH, KRWR and W&R

161.    Plaintiff restates and realleges paragraphs 1 through 160 of this Complaint, as though fully set forth herein.

162.    Defendants Dembo and Auerbach knowingly induced, participated and assisted RDG in actively and deliberately defrauding its creditors by and through the transfers performed during the RDG Asset Concealment Scheme.

163.    As a result of each of Dembo's and Auerbach's aiding and abetting RDG' s improper transfers, RDG has creditors that remain unpaid, even though there were sufficient assets owned by RDG to satisfy all or part of the liability.

164.    KRWR is a general partnership that is liable for the actions of Dembo and Auerbach, partners in KRWR.

165.    On information and belief, while partners of W&R, Defendants Dembo and Auerbach knowingly induced, participated and assisted additional acts that furthered the RDG Asset Concealment Scheme.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Dembo, Auerbach, KRWR and W&R, jointly and severally, in the amount

45

of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is claimed to exceed $22 million, plus punitive damages, and grant such other equitable relief as may be just and appropriate.

## COUNT TEN
## ALTER EGO/PIERCING CORPORATE VEIL
## AGAINST GREENFIELD and KASEMIR

166.    Plaintiff restates and realleges paragraphs 1 through 165 of this Complaint as though fully set forth herein.

167.    At all times relevant hereto, Greenfield and Kasemir, through their common ownership of the Greenfield and Kasemir Entities and the other entities affiliated with the Greenfield and Kasemir Restaurants, controlled and dominated RDG and interfered and supplanted RDG's corporate governance.

168.    Greenfield and Kasemir's domination and control over RDG resulted in reckless and self dealing transactions whereby Greenfield and Kasemir extracted value from RDG at the cost of RDG's non-insider creditors.

169.    None of the officers of RDG acted independently in the interests of RDG, but were under the direction and control of Greenfield and Kasemir.

170.    At all relevant times, RDG was inadequately capitalized to operate its business without the interference of Greenfield and Kasemir.

171.    On information and belief, Greenfield and Kasemir failed to maintain and respect the separate corporate identity of the entities affiliated with RDG.  Among other things, when convenient to them, Greenfield and Kasemir failed to force the entities owing management fees to RDG to pay those fees when due.  On information and belief, Greenfield and Kasemir also engaged in tax accounting practices that essentially treated all of the Greenfield and Kasemir Restaurants as a collective enterprise.

172.   Greenfield and Kasemir made specific and general representations to RDG's creditors and to the world at large that RDG was, in fact, a holding company of all of the Greenfield and Kasemir Restaurants.

173.   Greenfield and Kasemir's domination and control over RDG resulted in fraud or inequity to RDG's non-insider creditors, and resulted in damage to RDG's non-insider creditors.

174.   Greenfield and Kasemir so dominated and controlled RDG that RDG was the mere instrumentality of Greenfield and Kasemir such that the separate corporate status of RDG should be disregarded and Greenfield and Kasemir should be held legally responsible for RDG's debts.

175.   Respecting the corporate form of RDG and treating it as an entity separate from Greenfield and Kasemir would promote injustice, inequity and fraud with respect to non-insider RDG creditors.

WHEREFORE, Plaintiff respectfully requests that the Court, enter an Order:

A.   Finding that RDG is the alter ego and mere instrumentality of Greenfield and Kasemir and that equity requires the corporate veil to be pierced;

B.   Finding that Greenfield and Kasemir are liable for all of the debts of RDG;

C.   Entering judgment in favor of plaintiffs and against Greenfield and Kasemir (jointly and severally) in the amount of the liabilities of RDG (plus interest, costs and attorneys' fees), which amount will be determined at trial and currently is claimed to exceed $22 million, plus punitive damages; and

D.   Granting such other equitable relief as may be just and appropriate.

///

///

///

47

## COUNT ELEVEN

**FOR QUANTUM MERUIT AGAINST BAR LOUIE TAMPA, INC., BAR LOUIE, INC., CAFÉ LOUIE, INC., BAR LOUIE EVANSTON, INC., BAR LOUIE HYDE PARK, INC., SANTA FE CHICKEN OF CHICAGO, INC., BAR LOUIE WATERFRONT, INC., BAR LOUIE TAYLOR, INC., BAR LOUIE NAPERVILLE, INC., BAR LOUIE DEARBORN, INC., BAR LOUIE EASTON, INC., BAR LOUIE NEWPORT, INC., BAR LOUIE PITTSBURGH, INC.,BAR LOUIE TEMPE, INC., BAR LOUIE WHEELING, LLC., 33 RESTAURANT INC., 737 W. RANDOLPH, INC., ONE NORTH, INC., CHELSEA TAVERN, INC., DEERFIELD RESTAURANT, INC., RED STAR GENEVA, INC., RED STAR GLENVIEW, INC., 1500 RESTAURANT, INC., 1530 STATE STREET RESTAURANT, INC., 1816 NORTH CLARK, INC., MEXICAN CANTINA INC., NICK & LOUIE'S, INC., NICK & TONY'S OF CINCINNATI, INC., NICK & TONY'S OF GENEVA, INC., NICK & TONY'S OF MINNEAPOLIS, INC., NICK & TONY'S NORTHBROOK, INC., NICK & TONY'S OF OMAHA INC., NICK & TONY'S PITTSBURGH, INC., PIER 4 SEAFOOD KITCHEN, INC., BLUEPOINT OF BOCA RATON, INC., RED STAR COLUMBUS, INC., RED STAR CHARLOTTE INC., RED STAR FT. WAYNE, INC. and RED STAR NORTH KANSAS CITY, INC.**

176.   Plaintiff restates and realleges paragraphs 1 through 175 of this Complaint, as though fully set forth herein.

177.   RDG performed the RDG Management and Marketing Services for the Greenfield and Kasemir Restaurants throughout calendar year 2003 with no disruption in service.

178.   Each of the following Greenfield and Kasemir Restaurants enjoyed the benefits of the RDG Management and Marketing Services from the period of July 1, 2003 through December 28, 2003:  Bar Louie Tampa, Inc., Bar Louie, Inc., Café Louie, Inc., Bar Louie Evanston, Inc., Bar Louie Hyde Park, Inc., Santa Fe Chicken of Chicago, Inc., Bar Louie Waterfront, Inc., Bar Louie Taylor, Inc., Bar Louie Naperville, Inc., Bar Louie Dearborn, Inc., Bar Louie Easton, Inc., Bar Louie Newport, Inc.,  Bar Louie Pittsburgh, Inc., Bar Louie Milwaukee, Inc., Bar Louie Tempe, Inc., Bar Louie Wheeling LLC., 33 Restaurant Inc.,  737 W. Randolph Street, Inc., One North, Inc., Chelsea Tavern, Inc., Deerfield Restaurant, Inc., Red Star Geneva, Inc., Red Star Glenview, Inc., 1500 Restaurant, Inc., 1530 State Street Restaurant, Inc., 1816 North Clark, Inc., Mexican Cantina Inc., Nick & Louie's, Inc., Nick & Tony's of Cincinnati, Inc., Nick & Tony's of Geneva, Inc., Nick & Tony's of Minneapolis, Inc., Nick &

Tony's Northbrook, Inc., Nick & Tony's of Omaha Inc., Nick & Tony's Pittsburgh, Inc., Pier 4 Seafood Kitchen, Inc., Blue Point Boca Raton Inc., Red Star Columbus, Inc., Red Star Charlotte Inc., Red Star Ft. Wayne, Inc. and Red Star North Kansas City, Inc. (the "Quantum Meruit Defendants")

179.    Each of the Quantum Meruit Defendants received the benefits of the RDG Marketing and Management Services from the period of July 1, 2003 through December 28, 2003, but none of the Quantum Meruit Defendants were charged the RDG Management and Marketing Fee by RDG because the insiders directed RDG not to charge for the services.

180.    It would be inequitable for the Quantum Meruit Defendants to receive the benefit of the  RDG Marketing and Management Services but not pay for them.

181.    On information and belief, the total amount not charged to the Quantum Meruit Defendants during the period of July 1, 2003 through December 28, 2003 exceeded $4 million.

WHEREFORE, for the foregoing reasons, respectfully requests that the Court enter judgment in favor of Plaintiff and against each of :  Bar Louie Tampa, Inc., Bar Louie, Inc., Café Louie, Inc., Bar Louie Evanston, Inc., Bar Louie Hyde Park, Inc., Santa Fe Chicken of Chicago, Inc., Bar Louie Waterfront, Inc., Bar Louie Taylor, Inc., Bar Louie Naperville, Inc., Bar Louie Dearborn, Inc., Bar Louie Easton, Inc., Bar Louie Newport, Inc.,  Bar Louie Pittsburgh, Inc., Bar Louie Milwaukee, Inc., Bar Louie Tempe, Inc., Bar Louie Wheeling LLC., 33 Restaurant Inc., 737 W. Randolph Street, Inc., One North, Inc., Chelsea Tavern, Inc., Deerfield Restaurant, Inc., Red Star Geneva, Inc., Red Star Glenview, Inc., 1500 Restaurant, Inc., 1530 State Street Restaurant, Inc., 1816 North Clark, Inc., Mexican Cantina Inc., Nick & Louie's, Inc., Nick & Tony's of Cincinnati, Inc., Nick & Tony's of Geneva, Inc., Nick & Tony's of Minneapolis, Inc., Nick & Tony's Northbrook, Inc., Nick & Tony's of Omaha Inc., Nick & Tony's Pittsburgh, Inc., Pier 4 Seafood Kitchen, Inc., Blue Point Boca Raton Inc., Red Star Columbus, Inc., Red Star Charlotte Inc., Red Star Ft. Wayne, Inc., and Red Star North Kansas City, Inc. in the full amount

of the RDG Management and Marketing Fees that were not charged or paid for the period of

July 1, 2003 through December 28, 2003 in an amount to be proved at trial (plus interest, costs

and attorney's fees), and grant such other relief as may be just.

Dated:  October 1, 2007                    Respectfully submitted,


                                           THE CHAPTER 7 BANKRUPTCY ESTATE OF
                                           RESTAURANTS DEVELOPMENT GROUP, INC.



                                           By:_____/s/ Jonathan M. Cyrluk_____
                                                   One of its attorneys



Jonathan M. Cyrluk (ARDC#6210250)
STETLER & DUFFY, LTD.
11 South LaSalle Street
Suite 1200
Chicago, Illinois 60603
Tel.:    312-338-0200
Fax:    312-338-0070

Daniel Lynch (ARDC#6202499)
Henry Baskerville (ARDC#6285712)
LAW OFFICES OF DANIEL LYNCH
150 S. Wacker Drive
Suite 2600
Chicago, IL 60606
Tel.:    312-346-8700
Fax.:    312-346-5180