UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| RESTAURANT DEVELOPMENT GROUP, INC., | ) | Chapter 7 |
| Debtor. | ) | Bankruptcy No. 07 B 00592 |
| | ) | |
| GUS A. PALOIAN, not individually or personally, | ) | |
| but solely in his capacity as Chapter 7 Trustee of | ) | |
| the Debtor's Estate, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07 A 00937 |
| | ) | |
| ROGER D. GREENFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION DENYING ATTORNEY
DEFENDANTS' MOTION TO DISMISS TRUSTEE'S ADVERSARY
COMPLAINT PURSUANT TO FRCP 12(b)(6) (Bankruptcy Rule 7012)**

Debtor Restaurant Development Group, Inc. ("RDG" or "Debtor"), an Illinois corporation, filed its Chapter 7 bankruptcy case on January 12, 2007. Plaintiff Gus A. Paloian, as Chapter 7 Trustee of the Debtor's Estate ("Trustee"), filed this related Adversary Complaint against Roger D. Greenfield ("Greenfield"), Theodore Kasemir ("Kasemir"), Lee Zaben, and certain corporate entities, including individual restaurant entities owned and controlled by Greenfield and Kasemir, and RDG's former attorneys (collectively, the "Defendants"). The First Amended Complaint alleges that the Defendants engaged in a scheme to defraud RDG's creditors. Harold Dembo, Gary Auerbach, Katz, Randall, Weinberg & Richmond, and Weinberg & Richmond, LLP (collectively, the "Attorney Defendants") moved to dismiss the complaint

pursuant to Rule 12(b)(6) Fed. R. Civ. P. made applicable by Rule 7012 Fed. R. Bankr. P. For reasons set forth below, the Motion to Dismiss was earlier denied by separate order.

## MATTERS ALLEGED IN COMPLAINT

Debtor, Restaurant Development Group, Inc., is owned by Greenfield and Kasemir. Greenfield and Kasemir also owned, and continue to own, restaurants across the United States under a number of restaurant trade names, including "Bar Louie," "Red Star," "Nick & Tony's" and "Bluepoint." RDG provided management and marketing services to restaurants owned by Greenfield and Kasemir in exchange for a fee equal to a percentage of the gross receipts of each restaurant entity (hereinafter, the "RDG Revenue Stream"). RDG also guaranteed obligations, including leases, of certain of those restaurants.

The Trustee alleges that, in a series of transactions beginning in 2003, Greenfield and Kasemir, with the assistance of the Attorney Defendants, other RDG officers and outside accountants, devised a scheme to defraud RDG's creditors. The Defendants allegedly caused RDG to divest itself of its assets, leaving RDG as a shell without assets or income with which it could pay its liabilities, including the guaranteed obligations of individual restaurants that subsequently failed. RDG has not actively conducted business since approximately December 2003.

The Trustee alleges that, as part of the scheme to defraud, the Defendants caused RDG to transfer its assets, including management agreements between RDG and the individual restaurants owned by Greenfield and Kasemir, to other defendants, including, RDG Chicago, Inc., for less than reasonably equivalent value. Defendant RDG Chicago, Inc. ("RDG Chicago")

is an Illinois corporation. During 2004, RDG Chicago allegedly provided management and marketing services, previously provided by RDG, to restaurants owned by Greenfield and Kasemir. The Trustee alleges that RDG Chicago was the successor to RDG.

The Trustee alleges that, in a further series of transactions that continue to the present, the Defendants caused RDG Chicago to divest itself of its assets, as it had with RDG, to further hinder and delay RDG's creditors. The Defendants allegedly caused RDG Chicago to transfer its assets to individual restaurants and entities owned by Greenfield and Kasemir for less than reasonably equivalent value. RDG Chicago allegedly ceased operating as a formal entity by no later than January 1, 2005.

The Trustee also alleges that after RDG Chicago ceased to exist, the Defendants created an association labeled "Restaurants-America" that performed substantially the same functions as RDG Chicago, including providing management and marketing services to restaurants owned by Greenfield and Kasemir, while concealing the RDG Revenue Stream from the creditors of RDG. Restaurants-America allegedly operates as the successor to RDG and RDG Chicago.

The Trustee alleges eleven Counts in the First Amended Complaint, including: successor liability (Count I); breach of fiduciary duty (Count II); legal malpractice (Count III); avoiding fraudulent conveyance (actual fraud) (Count IV); avoiding fraudulent conveyance (constructive fraud) (Count V); avoiding fraudulent conveyance (subsequent transferees) (Count VI); civil conspiracy to commit actual fraud (Count VII); aiding and abetting actual fraudulent transfers (Counts VIII and IX); alter ego/piercing the corporate veil (Count X); and, quantum meruit (Count XI).

The Attorney Defendants have moved to dismiss Counts VII and IX.

3

Other background facts alleged are referred to in the discussion below.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This issue constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and 157(b)(2)(H).

## SUFFICIENCY OF THE PLEADINGS

The Attorney Defendants' Motion to Dismiss tests whether the Trustee's First Amended Complaint meets the pleading requirements to state a claim under Fed. R. Civ. P. 12(b)(6) made applicable by Rule 7012 Fed. R. Bankr. P. in order to give the Defendants adequate notice of the claims asserted therein.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint rather than the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). All well-pleaded allegations of the complaint are assumed true and read in the light most favorable to the plaintiff. *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1264 (7th Cir. 1985). If the complaint contains allegations from which a trier of fact may reasonably infer evidence as to necessary elements of proof available for trial, dismissal is improper. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

Rule 8(a)(2) Fed. R. Civ. P. [Rule 7008 Fed. R. Bankr. P.] generally requires that the pleader provide "a short and plain statement of the claim showing that the plaintiff is entitled to

relief," giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). A complaint need not contain detailed factual allegations, but "the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (internal quotations omitted). Factual allegations must show that the right to relief is more than speculative and "state a claim to relief that is plausible on its face." *Id.* at 1965, 1974.

While most pleadings are bound by the foregoing standards, allegations of fraud must properly be pleaded in conformance to Fed. R. Civ. P. 9(b) [Rule 7009 Fed. R. Bankr. P.]. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (quoting Fed. R. Civ. P. 9(b)). The "circumstances constituting fraud" include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). "This means the who, what, when, where, and how . . . ." *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990). This requirement insures that defendants have fair notice of plaintiffs' claims and grounds, providing defendants an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990). This heightened pleading standard applies to all "averments of fraud," regardless of whether those averments pertain to a "cause of action" for fraud. *Borsellino*, 477 F.3d at 507. Allegations based on "information and belief" do not comply with the specificity requirement unless

accompanied by a statement of fact providing the basis of the belief. *Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1040 (N.D. Ill. 2003).

### Count VII: Civil Conspiracy to Commit Actual Fraud

In Count VII of the First Amended Complaint, the Trustee alleges that Greenfield, Kasemir and the Attorney Defendants entered into an agreement to effectuate the scheme to defraud with the purpose of accomplishing an unlawful act – the fraudulent transfer by RDG of its assets to the detriment of RDG's creditors.

Illinois has adopted the Uniform Fraudulent Transfer Act ("UFTA") (*see* 740 Ill. Comp. Stat. 160, *et seq.*). The Attorney Defendants seek to dismiss Count VII, claiming that, as a matter of law, the Illinois Uniform Fraudulent Transfer Act does not provide a cause of action for civil conspiracy against a defendant that did not receive any property or personal benefit from the alleged transfers. However, the UFTA does not specifically govern a conspiracy cause of action. Rather, the UFTA supplements applicable state law. *See* 740 Ill. Comp. Stat. 160/11 ("Unless displaced by the provisions of this Act, the principles of law and equity . . . supplement its provisions.").

First, Illinois allows for a cause of action for conspiracy to commit fraud. *Martinez v. Freedom Mortgage Team, Inc.*, 527 F. Supp. 2d 827, 839 (N.D. Ill. 2007). The elements of a civil conspiracy include: I) an agreement between of two or more persons, ii) for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, iii) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Id.* (citing *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004)).

6

Moreover, Illinois courts recognize that claims for conspiracy may be maintained against attorneys where there is evidence that the attorneys participated in a conspiracy with their clients. *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 768 (Ill. App. Ct. 2003).

Finally, Illinois courts permit civil conspiracy claims against non-transferee defendants when the transfers were made as part of a scheme to defraud, hinder or delay creditors. *Fortney v. Kuipers*, No. 98 C 5387, 2001 WL 1539143 (N.D. Ill. Dec. 3, 2001) (conspiracy claims against non-transferee attorneys who engineered fraudulent transfers sustained); *Firstar Bank, N.A. v. Faul*, No. 00 C 4061, 2001 WL 1636430, *6-7 (N.D. Ill. Dec. 20, 2001) ("Illinois law permits a cause of action for fraud against any party who participates in a fraud . . . and we see no reason not to extend the rule to fraudulent conveyances" (citation omitted)).

The Trustee clearly alleges a civil conspiracy to commit fraud, which is a permitted cause of action in Illinois. The Attorney Defendants' arguments to the contrary are without merit. The Trustee supplies the necessary "who," "what," "when," "how" and "why" of the alleged fraud. The Trustee alleges that beginning in 2003, the Attorney Defendants conspired with Greenfield, Kasemir and Lee Zaben to effectuate transfers of RDG's assets from RDG and RDG Chicago, particularly the RDG Revenue Stream in order to hinder, delay and defraud creditors of RDG, and knowingly created back-dated documents in furtherance of the fraudulent transfer of assets from RDG to RDG Chicago from RDG. Taken as true for purposes of this motion, the Trustee met his burden of pleading that Attorney Defendants engaged in a civil conspiracy to commit fraud. The Motion to Dismiss Count VII was therefore denied.

### *Count IX: Aiding and Abetting Actual Fraudulent Transfers*

In Count IX of the First Amended Complaint, the Trustee alleges that the Attorney Defendants knowingly induced, participated and assisted RDG in actively defrauding its creditors through the actual fraudulent transfers of RDG's assets.

To state a claim for aiding and abetting, one must allege that: i) the party whom the defendant aids performed a wrongful act causing an injury, ii) the defendant was aware of his role when he provided the assistance, and iii) the defendant knowingly and substantially assisted the violation. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

The Illinois UFTA provides that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 Ill. Comp. Stat. 160/5(a)(1). The Attorney Defendants argue that, as a matter of law, the Illinois UFTA does not provide a cause of action for aiding and abetting fraudulent transfers, and that such a claim should not be allowed without express authorization from the legislature. These arguments are without merit. As with the Trustee's allegations of civil conspiracy to commit actual fraud, the UFTA supplements applicable aider-abettor state law. *See* 740 Ill. Comp. Stat. 160/11. Recent Illinois decisions recognize aiding and abetting liability for fraudulent transfers. *Hefferman*, 467 F.3d at 601.

The Trustee does not allege that the Attorney Defendants are transferees of either RDG or RDG Chicago. The Trustee also does not allege that the Attorney Defendants are part of the association called Restaurants-America. The Attorney Defendants therefore argue that no legal

cause of action exists against non-recipients of the fraudulently transferred assets and, as such, seek to dismiss Count IX. State courts in states other than Illinois that have considered the issue have found that aider-abettor liability was not intended against non-transferees under other states' version of the UFTA. *See, e.g. Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004) ("There simply is no language in [the Florida UFTA] that suggests the creation of a distinct cause of action for aiding-abetting claims against non-transferees").

Illinois courts, however, have recognized aiding and abetting liability for fraudulent conveyances. First, the opinion in *Firstar Bank, N.A. v. Faul* noted that one who participates in effecting a fraudulent conveyance may be held liable for it. No. 00 C 4061, 2001 WL 1636430, at *6-7 (N.D. Ill. Dec. 20, 2001) ("Illinois law permits a cause of action for fraud against any party who participates in a fraud, and we see no reason not to extend this rule to fraudulent conveyances.") (internal citation omitted). Second, in *Colman v. Greenfield*, which involved claims made by a creditor of RDG against many of the same defendants in this case, District Judge Manning denied the non-transferee defendants' motion to dismiss the aiding and abetting fraudulent transfer claims. No. 05-C-3894, 2005 WL 2592538, at *1-3 (N.D. Ill. Oct. 11, 2005). While not distinguishing between transferees and non-transferees in the opinion, the *Colman* opinion, relying on *Thornwood* and *Hefferman*, stated that "[b]ecause the court concludes that a cause of action exists under Illinois law for aiding and abetting, the court denies defendants' motion to dismiss . . . ." *Id.* at *3.

Recent Illinois case law tends to support a cause of action for aider-abettor liability against non-transferees. The argument of the Attorney Defendants that a cause of action against them in such a circumstance is not recognized under Illinois law is therefore without merit.

9

The Trustee alleges that beginning in 2003 and continuing to the present, the Attorney Defendants knowingly induced, participated and assisted RDG in actively and deliberately defrauding its creditors by knowingly creating back-dated documents in furtherance of the fraudulent transfer of assets from RDG to RDG Chicago in order to hinder, delay and defraud the creditors of RDG. These factual allegations provide the necessary who, what, when, how and why to satisfy the particularity requirements of Fed. R. Civ. P. 9(b). Taken as true for purposes of this motion, the Trustee has met his initial burden of pleading that the Attorney Defendants aided and abetted fraudulent transfers. The Motion to Dismiss Count IX was therefore denied.

## CONCLUSION

For the foregoing reasons, the Attorney Defendants' Motion to Dismiss Counts VII and IX of the First Amended Complaint was earlier denied by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 23rd day of July 2008

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on July 31, 2008, I caused to be mailed by United States first class mail copies of the foregoing Memorandum Opinion to the persons named.

*Dorothy Clay*
Secretary/Deputy Clerk

## SERVICE LIST

Daniel F Lynch
Henry Baskerville
Lynch & Stern LLP
150 S Wacker Dr Suite 2600
Chicago, IL 60606
Counsel for Plaintiff/Trustee

Amy E Bullock
Carrie A. Dolan
Cohon Raizes & Regal LLP
208 S LaSalle Street, Suite 1860
Chicago, IL 60604

Frances Gecker
Micah R. Krohn
Zane L. Zielinski
325 North LaSalle Street
Suite 625
Chicago, IL 60610

Bruce R. Meckler
Christopher E. Kentra
Clark M. Stalker
Eric E. Newman
Meckler Bulger & Tilson
123 N Wacker Drive Ste 1800
Chicago, IL 60606

Jonathan M. Cyrluk
Stetler & Duffy Ltd.
11 S. LaSalle Street
Suite 1200
Chicago, IL 60603
Counsel for Plaintiff/Trustee

David K. Welch
Jeffrey C. Dan
Norman B. Newman
Crane Heyman Simon Welch & Clar
135 S Lasalle St, Suite 3705
Chicago, IL 60603

Colleen E McManus
Much Shelist
191 N. Wacker Drive
Suite 1800
Chicago, IL 60606