UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| RESTAURANT DEVELOPMENT GROUP, INC., ) | Chapter 7 |
| Debtor. ) | Bankruptcy No. 07 B 00592 |
| ) | |
| GUS A. PALOIAN, not individually or personally, ) | |
| but solely in his capacity as Chapter 7 Trustee of ) | |
| the Debtor's Estate, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 07 A 00937 |
| ) | |
| ROGER D. GREENFIELD, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION DENYING DEFENDANTS
GREENFIELD, KASEMIR AND RESTAURANT MARKETING, INC.'s
<u>MOTION TO DISMISS TRUSTEE'S ADVERSARY COMPLAINT</u>**

Debtor Restaurant Development Group, Inc. ("RDG" or "Debtor"), an Illinois corporation, filed its Chapter 7 bankruptcy case on January 12, 2007. Plaintiff Gus A. Paloian, as Chapter 7 Trustee of the Debtor's Estate ("Trustee"), filed this related Adversary Complaint against Roger D. Greenfield ("Greenfield"), Theodore Kasemir ("Kasemir"), Lee Zaben, Restaurant Marketing, Inc. ("RMI"), and certain other corporate entities, including individual restaurant entities owned and controlled by Greenfield and Kasemir, and RDG's former attorneys (collectively, the "Defendants"). The First Amended Complaint alleges, among other things, that the Defendants engaged in a scheme to defraud RDG's creditors. Greenfield, Kasemir and RMI moved to dismiss the complaint pursuant to Rule 12(b)(6) Fed. R. Civ. P. made applicable by

Rule 7012 Fed. R. Bankr. P. For reasons set forth below, the Motion to Dismiss was earlier denied by separate order.

## MATTERS ALLEGED IN COMPLAINT

Debtor, Restaurant Development Group, Inc., is owned by Greenfield and Kasemir. Greenfield and Kasemir also owned, and continue to own, restaurants across the United States under a number of restaurant trade names, including "Bar Louie," "Red Star," "Nick & Tony's" and "Bluepoint." RDG provided management and marketing services to restaurants owned by Greenfield and Kasemir in exchange for a fee equal to a percentage of the gross receipts of each restaurant entity (hereinafter, the "RDG Revenue Stream"). The RDG Revenue Stream was significant. According to the First Amended Complaint, in 2002, the RDG Revenue Stream was $4 million, and was more than $6 million in the first half of 2003. RDG also guaranteed obligations, including leases, of certain of those restaurants.

In a series of transactions beginning in 2003, Greenfield and Kasemir, with the assistance of other RDG officers and outside attorneys and accountants, allegedly devised a scheme to defraud RDG's creditors. The Defendants are said to have caused RDG to divest itself of its assets, leaving RDG as a shell without assets or income with which it could pay its liabilities, including the guaranteed obligations of individual restaurants that subsequently failed. RDG has not actively conducted business since approximately December of 2003.

The Trustee alleges that, as part of the scheme to defraud, the Defendants caused RDG to transfer its assets, including management agreements between RDG and the individual restaurants owned by Greenfield and Kasemir, to other defendants including RDG Chicago, Inc., for less than reasonably equivalent value. Defendant RDG Chicago, Inc. ("RDG Chicago") is an

Illinois corporation. During 2004, RDG Chicago allegedly provided management and marketing services, previously provided by RDG, to restaurants owned by Greenfield and Kasemir. The Trustee alleges that RDG Chicago was the successor to RDG.

The Trustee further alleges that, in a series of transactions that continue to the present, the Defendants caused RDG Chicago to divest itself of its assets, as it had with RDG, to further hinder and delay RDG's creditors. The Defendants allegedly caused RDG Chicago to transfer its assets to individual restaurants and entities owned by Greenfield and Kasemir for less than reasonably equivalent value. RDG Chicago allegedly ceased operating as a formal entity by no later than January 1, 2005.

The Trustee also alleges that after RDG Chicago ceased to exist, the Defendants created an association labeled "Restaurants-America" that performed substantially the same functions as RDG Chicago, including providing management and marketing services to restaurants owned by Greenfield and Kasemir, while concealing the RDG Revenue Stream from the creditors of RDG. Restaurants-America allegedly operates as the successor to RDG and RDG Chicago.

The Trustee alleges eleven Counts in the First Amended Complaint, including: successor liability (Count I); breach of fiduciary duty (Count II); legal malpractice (Count III); avoiding of fraudulent conveyance (actual fraud) (Count IV); avoiding of fraudulent conveyance (constructive fraud) (Count V); avoiding fraudulent conveyance (subsequent transferees) (Count VI); civil conspiracy to commit actual fraud (Count VII); aiding and abetting actual fraudulent transfers (Counts VIII and IX); alter ego/piercing the corporate veil (Count X); and, quantum meruit (Count XI).

Greenfield, Kasemir and RMI have moved to dismiss Counts I, II, VI, VII, VIII and X.

Other background facts alleged are referred to in the discussion below.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This issue constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and 157(b)(2)(H).

## DISCUSSION

### *Pleading Standards and Standard for Motions to Dismiss*

The Greenfield, Kasemir and RMI Motion to Dismiss tests whether the Trustee's First Amended Complaint meets the meets the pleading requirements to state a claim under Fed. R. Civ. P. 12(b)(6) made applicable by Rule 7012 Fed. R. Bankr. P. in order to give the Defendants adequate notice of the claims asserted therein.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint rather than the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). All well-pleaded allegations of the complaint are assumed true and read in the light most favorable to the plaintiff. *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1264 (7th Cir. 1985). If the complaint contains allegations from which a trier of fact may reasonably infer evidence as to necessary elements of proof available for trial, dismissal is improper. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

4

Rule 8(a)(2) Fed. R. Civ. P. [Rule 7008 Fed. R. Bankr. P.] generally requires that the pleader provide "a short and plain statement of the claim showing that the plaintiff is entitled to relief," giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). A complaint need not contain detailed factual allegations, but "the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (internal quotations omitted). Factual allegations must show that the right to relief is more than speculative and "state a claim to relief that is plausible on its face." *Id.* at 1965, 1974.

While most pleadings are bound by the foregoing standards, allegations of fraud must be pleaded with particularity in conformance with Fed. R. Civ. P. 9(b) [Rule 7009 Fed. R. Bankr. P.]. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The "circumstances constituting fraud" include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). "This means the who, what, when, where, and how . . . ." *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990). This requirement insures that defendants have fair notice of plaintiffs' claims and grounds, providing defendants an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990). This heightened pleading standard applies to all "averments of fraud," regardless of whether those averments pertain to a "cause of

action" for fraud. *Borsellino*, 477 F.3d at 507. Allegations based on "information and belief" do not comply with the specificity requirement unless accompanied by a statement of fact providing the basis of the belief. *Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1040 (N.D. Ill. 2003).

### *Count I: Successor Liability*

In Count I of the First Amended Complaint, the Trustee seeks to impose successor liability on Greenfield, Kasemir, RMI and certain other defendants because they are allegedly a mere continuation of RDG and RDG Chicago.

As a general rule, a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation. *Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997). "To offset the potentially harsh impact of the rule, however, the law has also developed methods to protect the rights of corporate creditors after dissolution." *Id.* (quoting *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 623 (8th Cir. 1981)). There are four exceptions to the general rule of successor corporate nonliability:

> (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligation.

*Id.*

Greenfield, Kasemir and RMI seek to dismiss Count I, claiming that the Trustee fails to allege sufficiently the existence of a successor entity. Specifically, they argue that the Trustee fails to allege: i) that Greenfield, Kasemir or RMI purchased any assets of RDG or RDG Chicago; ii) that RDG Chicago sold any assets to Restaurants-America; iii) that

6

Restaurants-America, as a whole, purchased the entity RDG Chicago; iv) the elements of a partnership necessary to support the contention that Restaurants-America is in fact a partnership; and, v) that Greenfield, Kasemir and RMI are members of the partnership. Greenfield, Kasemir and RMI contend that the mere fact that certain defendants now provide services to the restaurants owned by Greenfield and Kasemir that were once provided by RDG Chicago is not sufficient to state a claim for successor liability.

The Trustee's allegations fit squarely within both the third and fourth exceptions to the general rule of successor corporate nonliability articulated in *Vernon*. The Trustee alleges that Greenfield and Kasemir first caused RDG Chicago to stop charging and collecting marketing and management fees from restaurants owned by Greenfield and Kasemir, and caused RDG to transfer its assets to entities controlled by Greenfield and Kasemir including RDG Chicago. Second, the Trustee alleges that Greenfield and Kasemir caused RDG Chicago to transfer its assets to Restaurants-America; an amorphous association of the individual restaurants owned and controlled by Greenfield and Kasemir, of which RMI is a part. Restaurants-America allegedly performs the same management functions as RDG and RDG Chicago, from the same location, using substantially the same assets, including the website, computers, desks and goodwill of RDG and RDG Chicago. Third, like RDG and RDG Chicago, each of the entities that comprise Restaurants-America are either owned or controlled by Greenfield and Kasemir. (While RMI is owned by Kasemir's wife, the Trustee alleged that it is controlled by Greenfield and Kasemir.) Finally, the Trustee alleges that Greenfield, Kasemir and RMI, with certain other defendants, acted in such a manner for the fraudulent purpose of escaping RDG and RDG Chicago's liability to their creditors.

According to the Illinois Supreme Court in *Vernon*:

> To allow the predecessor to escape liability by merely changing hats would amount to fraud. Thus, the underlying theory of the exception is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.

688 N.E.2d at 1176. The successor entities here may be liable because they "maintain[] the same or similar management and ownership" as RDG and RDG Chicago, "but merely wear[] different clothes." *Id.* at 1176 (internal quotations omitted). Taken as true for purposes of this motion, the Trustee has met his initial burden of pleading that Greenfield, Kasemir and RMI, together with certain other defendants, are the successors in liability to RDG and RDG Chicago. The Defendants have proper notice of the claims raised in the Trustee's First Amended Complaint. The Motion to Dismiss Count I was therefore denied.

### *Count II: Breach of Fiduciary Duty*

In Count II of the First Amended Complaint, the Trustee asserts a claim against Greenfield and Kasemir for breach of fiduciary duties to RDG and RDG's creditors. To establish a claim for breach of fiduciary duty, it must be shown that: i) a fiduciary duty exists; ii) the fiduciary duty was breached; and, iii) such breach proximately caused the injury of which the plaintiff complains. *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000); *See, e.g.*, In re *Edgewater Med. Ctr.*, 373 B.R. 845, 858 (Bankr. N.D. Ill. 2007) (additional citations omitted).

Greenfield and Kasemir seek to dismiss Count II, asserting that throughout the alleged period they were acting in their capacities as directors and officers of individual restaurants entities to which they owed fiduciary obligations. Greenfield and Kasemir contend that the relationship between RDG and the individual restaurant entities was purely contractual and, as

such, each restaurant could choose to not continue to contract for management and marketing services with RDG, an insolvent corporation. Greenfield and Kasemir state that without more specific allegations as to the capacity in which they were acting at all relevant times, Greenfield and Kasemir lack sufficient notice as to what conduct the Trustee alleges was a breach of fiduciary duty.

The Trustee does specifically allege, however, that: i) Greenfield and Kasemir, as shareholders, officers and directors of RDG, owed a fiduciary duty to RDG; ii) Greenfield and Kasemir owed a fiduciary duty to RDG's creditors because RDG was insolvent at the time of, or became insolvent as a result of, the alleged scheme to defraud RDG's creditors; iii) Greenfield and Kasemir breached their fiduciary duties to RDG and its creditors by a) failing to collect management fees from restaurants owned by Greenfield and Kasemir from June 2003 through December 31, 2003, b) authorizing and participating in the alleged scheme to defraud RDG's creditors, c) transferring RDG's receivables to other entities owned and controlled by Greenfield and Kasemir for less than reasonably equivalent value, and d) usurping a corporate opportunity of RDG; and, iv) RDG and its creditors were damaged by Greenfield and Kasemir's breach of their fiduciary duties.

Taken as true for purposes of this motion, the Trustee met his initial burden of pleading that the defendants are breached their fiduciary duties to RDG and RDG's creditors. Contrary to the arguments of Greenfield and Kasemir, the Trustee's allegations provide specificity sufficient to give them notice of the claims raised therein. The Motion to Dismiss Count II was therefore denied.

### *Count VI: Avoiding Fraudulent Conveyances*
### *(Subsequent Transferees)*

In Count VI of the First Amended Complaint, the Trustee alleges that Greenfield, Kasemir, RMI and certain other defendants received subsequent transfers of RDG's assets from RDG Chicago. If a fraudulent transfer is established, a creditor may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" under the Illinois Uniform Fraudulent Transfer Act ("UFTA"). 740 Ill. Comp. Stat. 160/8(a)(1). In such cases, the creditor may seek judgment against, *inter alia*, "the first transferee of the asset or *the person for whose benefit the transfer was made.*" *Id.* at 160/9(b)(1) (emphasis added).

Greenfield, Kasemir and RMI seek to dismiss Count VI, claiming that the Trustee has failed to allege what property was fraudulently conveyed to Greenfield, Kasemir and RMI, when the transfer occurred and by whom it was transferred. Greenfield, Kasemir and RMI also contend that the Trustee, in stating a claim against eighty-six individual restaurant entities in addition to Greenfield and Kasemir, fails to provide Greenfield, Kasemir and RMI notice as to the nature and extent of the assets the Trustee claims they received with the specificity required by Rule 9(b).

The allegations are sufficient for purposes of Rule 9(b). The Trustee supplies the "who," "what," "when," "how" and "why" of the alleged fraud. He alleges that beginning in 2003 and continuing to the present, Greenfield, Kasemir and RMI, and others through transfers made at Greenfield and Kasemir's direction by RDG and RDG Chicago received the RDG Revenue Stream that was originally paid to RDG and then paid to RDG Chicago. It is also alleged that they used RDG's assets to provide services to the restaurants owned by Greenfield and Kasemir

10

in order to hinder, delay and defraud the creditors of RDG. The Trustee further alleged that Greenfield and Kasemir, as owners of the individual restaurant entities, are the ultimate beneficiaries of the fraudulent transfers for purposes of the Illinois UFTA. The Trustee also alleges that the subsequent transferees did not receive the transferred assets in good faith and, therefore, are liable for the amount of the fraudulent transfers they received.

In the Seventh Circuit, a plaintiff who provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud satisfies Rule 9(b). *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). In a case involving multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom v. Harbridge Merch. Servs.*, 20 F.3d 771, 778 (7th Cir. 1994) (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). However, individualized information about the role of each defendant in the fraud is not necessary "when such information is uniquely within defendants' knowledge." *Id.* at 778 n.5. Furthermore, when details of the acts asserted to constitute fraud itself "are within the defendant's exclusive knowledge," specificity requirements may be relaxed. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). Under those circumstances, the complaint must plead the grounds for the plaintiff's suspicions of fraud. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992).

Taken as true for purposes of this motion, the Trustee met his initial burden of pleading that none of the subsequent transferees obtained the transferred assets in good faith. Here, part of the alleged scheme to defraud depended on the convoluted corporate relationship between RDG, RDG Chicago and the individual restaurants owned and controlled by Greenfield and Kasemir.

11

In addition, it should be noted that the Defendants do not move to dismiss Counts III and IV for avoidance of actual and constructive fraudulent conveyance, which make up the substance of the cause of action for fraud, but only those counts seeking to determine from whom the Trustee may recover. The Trustee has provided Greenfield, Kasemir and RMI with adequate notice of their purported roles in the scheme and that they were the ultimate beneficiaries of said scheme with sufficient particularity to survive the Motion to Dismiss. The Defendants here have fair notice and an opportunity to frame their answers and defenses. The Motion to Dismiss Count VI was therefore denied.

### *Count VII: Civil Conspiracy to Commit Actual Fraud*

In Count VII of the First Amended Complaint, the Trustee alleges that Greenfield, Kasemir and their attorneys entered into an agreement to effectuate the scheme to defraud with the purpose of accomplishing an unlawful act, namely, fraud and the fraudulent transfer by RDG of its assets to the detriment of RDG's creditors.

Illinois has adopted the Uniform Fraudulent Transfer Act ("UFTA") (*see* 740 Ill. Comp. Stat. 160, *et seq.*). Greenfield and Kasemir argue that, as a matter of law, the Illinois UFTA does not provide a cause of action for civil conspiracy. However, the defendants focus on the validity of a claim of conspiracy to commit a *fraudulent transfer* rather than the claim of conspiracy to commit *fraud*. Greenfield and Kasemir's briefs discuss the legal standards governing Count VII (civil conspiracy to commit actual fraud ) and Count VIII (aiding and abetting actual fraudulent transfers) interchangeably. These arguments are without merit. The UFTA does not specifically govern a conspiracy cause of action. Rather, the UFTA supplements applicable state law. *See*

740 Ill. Comp. Stat. 160/11 ("Unless displaced by the provisions of this Act, the principles of law and equity . . . supplement its provisions.").

Illinois allows for a cause of action for conspiracy to commit fraud. *Martinez v. Freedom Mortgage Team, Inc.*, 527 F. Supp. 2d 827, 839 (N.D. Ill. 2007). The elements of a civil conspiracy are: i) an agreement between two or more persons, ii) for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, iii) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Id.* (citing *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004)).

The Trustee clearly alleges a civil conspiracy to commit fraud, which is a permitted cause of action in Illinois. The Trustee alleges that beginning in 2003 and continuing to the present, Greenfield, Kasemir and RMI conspired with Zaben and the Attorney Defendants to transfer assets from RDG to RDG Chicago and directed their attorneys to back-date documents to conceal their failure to collect management fees in order to divert RDG's assets from RDG and RDG Chicago, particularly the RDG Revenue Stream, which left RDG insolvent and unable to meet its financial obligations. These allegations supply the necessary who, what, when, how and why required by Fed. R. Civ. P. 9(b).

Alternatively, Greenfield and Kasemir claim that a conspiracy cause of action is limited to defendants who are recipients of the fraudulently transferred property, and that Greenfield and Kasemir did not personally receive any fraudulently transferred assets. Greenfield and Kasemir's arguments are without merit because the Trustee does allege that, as owners, Greenfield and Kasemir are, in fact, subsequent transferees.

Taken as true for purposes of this motion, the Trustee met his initial burden of pleading that the defendants engaged in a civil conspiracy to commit fraud. The Motion to Dismiss Count VII was therefore denied.

### *Count VIII: Aiding and Abetting Actual Fraudulent Transfers*

In Count VIII of the First Amended Complaint, the Trustee alleges that Greenfield and Kasemir knowingly induced, participated in and assisted RDG in actively defrauding its creditors through the actual fraudulent transfers of RDG's assets.

To establish a claim for aiding and abetting, one must prove that: i) the party whom the defendant aids performed a wrongful act causing an injury, ii) the defendant was aware of his role when he provided the assistance, and iii) the defendant knowingly and substantially assisted the violation. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

The Illinois UFTA provides that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 Ill. Comp. Stat. 160/5(a)(1). Greenfield and Kasemir argue that, as a matter of law, the Illinois UFTA does not provide a cause of action for aiding and abetting fraudulent transfers, and that such a claim should not be allowed without express authorization from the legislature. Such arguments are without merit. As with the Trustee's allegations of civil conspiracy to commit actual fraud, the UFTA supplements applicable aider-abettor state law. *See* 740 Ill. Comp. Stat. 160/11. Recent Illinois decisions recognize aiding and abetting liability. *Hefferman*, 467 F.3d at 601.

Alternatively, even if the Illinois statute provides a cause of action, Greenfield and Kasemir claim that no legal cause of action exists against non-recipients of the fraudulently transferred assets. Greenfield and Kasemir's arguments are rejected because the Trustee does allege that Greenfield and Kasemir are, in fact, transferees.

For reasons similar to discussed in Counts VI and VII, the Trustee has supplied the necessary who, what, when, how and why to meet his pleading burden under Fed. R. Civ. P. 9(b). The Trustee alleges that beginning in 2003 and continuing to the present, Greenfield and Kasemir knowingly induced, participated and assisted RDG in actively and deliberately defrauding its creditors by directing their attorneys to back-date documents to conceal their failure to collect management fees and transferring assets from RDG to RDG Chicago in order to hinder, delay and defraud the creditors of RDG.

Taken as true for purposes of this motion, the Trustee has met his initial burden of pleading that Greenfield and Kasemir aided and abetted fraudulent transfers. The Motion to Dismiss Count VIII was therefore denied.

### *Count X: Alter Ego/Piercing Corporate Veil*

In Count X of the First Amended Complaint, the Trustee alleges that RDG is the alter ego and mere instrumentality of Greenfield and Kasemir. The Trustee alleges that respecting the corporate form of RDG and treating it as an entity separate from Greenfield and Kasemir would result in injustice, inequity and fraud with respect to RDG's creditors. As such, the Trustee seeks to pierce the corporate veil and find Greenfield and Kasemir personally liable for all of RDG's debts.

A corporation is a legal entity that exists separately and distinctly from its shareholders, officers, and directors, who generally are not liable for the corporation's debts. *Peetoom v. Swanson*, 778 N.E.2d 291, 294 (Ill. App. Ct. 2002). A primary purpose of doing business as a corporation is to insulate stockholders from unlimited liability for corporate activity. *Id.* However, a court may disregard a corporate entity and pierce the veil of limited liability where the corporation is merely the alter ego or business conduit of another person or entity. *Id.* at 527.

To pierce the corporate veil under Illinois law: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 776 (Ill. App. Ct. 2005); *see Van Dorn Co. v. Future Chem. and Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985).

Greenfield and Kasemir argue that the Trustee failed to set forth sufficient allegations to show that the "unity of interest and ownership" element was met. In determining whether that prong of the test is met, a court generally will not rest its decision on a single factor, but will look at the totality of the circumstances, including: i) inadequate capitalization; ii) failure to issue stock; iii) failure to observe corporate formalities; iv) nonpayment of dividends; v) insolvency of the debtor corporation; vi) non-functioning of the other officers or directors; vii) absence of corporate records; viii) commingling of funds; ix) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; x) failure to maintain arm's-length relationships among related entities; and, xi) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders. *Jacobson v. Buffalo Rock Shooters*

*Supply, Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996); *In re Estate of Wallen*, 633 N.E.2d 1350, 1357-1358 (Ill. App. Ct. 1994). Of these factors, capitalization of a corporation is a major factor in assessing whether a legitimate separate corporate entity existed. *Fiumetto v. Garrett Enter., Inc.*, 749 N.E.2d 992, 1005 (Ill. App. Ct. 2001).

The plaintiff is not required to plead facts or legal theories, cases or statutes, but merely to describe his claim briefly and simply. *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). Nevertheless, the Trustee alleges four such factors, including: i) that RDG was undercapitalized; ii) that RDG was insolvent; iii) that Greenfield and Kasemir caused the transfer of the assets to other entities they controlled to the detriment of creditors; and, iv) that RDG was a mere facade for Greenfield and Kasemir's operation. In addition, the Trustee alleges facts supporting that adherence to the corporate form would promote injustice, the second required element for piercing the corporate veil. Taken as true for purposes of this motion, the Trustee has met his burden of pleading that RDG is the alter ego of Greenfield and Kasemir and that equity requires the corporate veil to be pierced. The Motion to Dismiss Count X was therefore denied.

## CONCLUSION

For the foregoing reasons, Greenfield, Kasemir and RMI's Motion to Dismiss Counts I, II, VI, VII, VIII and X of the First Amended Complaint was earlier denied by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 23rd day of July 2008

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on July 31, 2008, I caused to be mailed by United States first class mail copies of the foregoing Memorandum Opinion to the persons named.

_____
Secretary/Deputy Clerk

## SERVICE LIST

Daniel F Lynch
Henry Baskerville
Lynch & Stern LLP
150 S Wacker Dr Suite 2600
Chicago, IL 60606
Counsel for Plaintiff/Trustee

Amy E Bullock
Carrie A. Dolan
Cohon Raizes & Regal LLP
208 S LaSalle Street, Suite 1860
Chicago, IL 60604

Frances Gecker
Micah R. Krohn
Zane L. Zielinski
325 North LaSalle Street
Suite 625
Chicago, IL 60610

Bruce R. Meckler
Christopher E. Kentra
Clark M. Stalker
Eric E. Newman
Meckler Bulger & Tilson
123 N Wacker Drive Ste 1800
Chicago, IL 60606

Jonathan M. Cyrluk
Stetler & Duffy Ltd.
11 S. LaSalle Street
Suite 1200
Chicago, IL 60603
Counsel for Plaintiff/Trustee

David K. Welch
Jeffrey C. Dan
Norman B. Newman
Crane Heyman Simon Welch & Clar
135 S Lasalle St, Suite 3705
Chicago, IL 60603

Colleen E McManus
Much Shelist
191 N. Wacker Drive
Suite 1800
Chicago, IL 60606