UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| RESTAURANT DEVELOPMENT GROUP, INC., | ) | Chapter 7 |
| Debtor. | ) | Bankruptcy No. 07 B 00592 |
| | ) | |
| GUS A. PALOIAN, not individually or personally, | ) | |
| but solely in his capacity as Chapter 7 Trustee of | ) | |
| the Debtor's Estate, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07 A 00937 |
| | ) | |
| ROGER D. GREENFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT ON COUNT 11, AND ON
COUNT 11 DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Restaurant Development Group, Inc. ("RDG" or "Debtor") filed its related voluntary

petition for relief under chapter 7 of the Bankruptcy Code (the "Code") on January 12, 2007.

Plaintiff, Gus A. Paloian ("Trustee" or "Plaintiff"), is the duly appointed and authorized chapter

7 trustee.

On October 1, 2007, the Plaintiff-Trustee filed this eleven count Adversary proceeding.

Plaintiff added two additional counts by his Second Amended Complaint filed on July 22, 2008.

In Count Eleven ("Count 11"), Plaintiff seeks damages on a *quantum meruit* basis for services

allegedly provided by Debtor to individual restaurant entities controlled by Debtor's principals,

Roger Greenfield ("Greenfield") and Theodore Kasemir ("Kasemir"), for which Debtor never

received compensation. Plaintiff seeks to recover the value of those services from the individual restaurant defendants (the "Count 11 Defendants").

Plaintiff moved for summary judgment and filed materials in support thereof as to Count 11. In response, the Count 11 Defendants opposed that Motion and filed their Cross-Motion for Summary Judgment. The parties' Motions have been fully briefed. For reasons stated below, both the Plaintiff-Trustee's Motion for Summary Judgment on Count 11 and the Count 11 Defendants' Cross-Motion for Summary Judgment will, by separate Orders, each be denied.

## UNDISPUTED FACTS

The following undisputed facts not genuinely at issue were established by the filings of the parties under Rule 7056 Fed. R. Bankr. P. and Rule 56-1 of the Local Bankruptcy Rules. Pursuant to Rule 56(d)(1) Fed. R. Civ. P. [Rule 7056 Fed. R. Bankr. P.], these facts are deemed established for trial:

1. Debtor was formed in 1993. (Plaintiff's ("Pl.'s") Ex. 1.)

2. Debtor is owned by defendants Roger Greenfield and Theodore Kasemir. (Pl.'s Ex. 2, Kasemir Dep. at 143). Greenfield is an officer and director of RDG. (Defendants' ("Defs.'") Ex. A, Greenfield Aff. ¶ 2.)

3. Greenfield is an officer and director of the Count 11 Defendants. (Id. ¶ 3.)

4. Debtor was in the business of restaurant management. (Pl.'s Ex. 3, Zaben Decl. ¶ 3.) Specifically, RDG provided management services to all restaurants in which Greenfield and Kasemir had an ownership interest as of December 28, 2003, including the Count 11 Defendants. (Id.)

5. Each of the Count 11 Defendants entered into oral agreements with RDG (the "Oral Management Contracts") pursuant to which RDG was to render management services to

the Count 11 Defendants in exchange for a management fee. (Defs.' Ex. A, Greenfield

Aff. ¶ 5.)

6.      Kasemir testified that RDG performed all of the management services for all of the

restaurants owned and controlled by Greenfield and Kasemir as of December 28, 2003:

Q.      If you're looking at Trustee's Exhibit 11 [Pl.'s Ex. 4], to the extent a
        restaurant was open for business that is listed on Trustee's Exhibit 11 as of
        December 28th, 2003, RDG performed all the management services for
        the restaurant?

A.      The ones that were opened and had the contracts, right.

Q.      I'm talking about RDG?

A.      RDG.

Q.      Was there any restaurant that you guys had the you and Roger owned that
        did not have a management    either oral or written management agreement
        with RDG?

A.      No.

Q.      So every restaurant that is depicted on Trustee's Exhibits 10 [Pl.'s Ex. 5]
        and 11 that was open prior to December 29, 2003, RDG performed the
        management services, is that correct?

A.      Right.

(Pl.'s Ex. 2, Kasemir Dep. at 69-70; Pl.'s Exs. 4-5.)

7.      During 2003, the services provided by RDG to the Count 11 Defendants included, among

other things, hiring, supervising and directing the work of restaurant personnel, obtaining

and maintaining all liquor and other licenses, making all service, supply, security and

other contracts required for restaurant operation, marketing the restaurants to the public,

and engaging lawyers and other professionals (the "RDG Management and Marketing

Services"). (Pl.'s Ex. 3, Zaben Decl. ¶ 3.)

8.      Each of the restaurants managed by RDG was owned by a separate corporation. Set forth

below is a table of restaurants managed by RDG during 2003, and the name of the

corporation that owned each restaurant (collectively the "Count 11 Defendants"). (Id. ¶

4; Pl.'s Ex. 2, Kasemir Dep. at 69-70; Pl.'s Exs. 4 and 5.)[1]

|   | Restaurant | Count 11 Defendant |
|---|---|---|
| 1 | Bar Louie Chicago | Bar Louie, Inc. |
| 2 | Bar Louie Bucktown | Café Louie, Inc. |
| 3 | Bar Louie on the Park | 1816 North Clark, Inc. |
| 4 | Bar Louie Wrigley | Santa Fe Chicken of Chicago, Inc. |
| 5 | Bar Louie Dearborn | Bar Louie Dearborn, Inc. |

---

[1] In his Motion for Summary Judgment, the Trustee's table of Count 11 Defendants
included individual restaurant corporations that were not named and have never been served with
summons in this Adversary proceeding, including Nick & Tony's, Inc. d/b/a Nick & Tony's
Chicago; Nick & Tony's of Cleveland, Inc. d/b/a Nick & Tony's Cleveland; Nick & Red Star of
Capital Center d/b/a Red Stonefish Grill; Blue Point Tucson, Inc. d/b/a Bluepoint Tucson; and
Pacific Kitchen & Bar, Inc. d/b/a Pacific Bar & Grill. It is a basic proposition of due process,
that a court does not have jurisdiction over a person who has not been properly served and,
therefore, any judgment entered against such person is void. Cent. Laborers' Pension, Welfare &
Annuity Funds v. Griffee, 198 F.3d 642, 643 (7th Cir. 1999). Therefore, summary judgment
against the individual restaurant corporations that were never served as defendants in this
Adversary proceeding is summarily denied for lack of jurisdiction. Moreover, should these
parties be summoned and participate in the litigation, they will not be bound under Rule 56(d)(1)
Fed. R. Civ. P. by the Undisputed Facts found herein.

In addition, some individual restaurant corporations named as defendants and served with
the Second Amended Adversary Complaint, including Bar Louie Wheeling, LLC; 737 W.
Randolph, Inc.; 1500 Restaurant, Inc.; Nick & Tony's Northbrook, Inc.; and Red Star Boca
Raton, Inc. are not included as Count 11 Defendants in the Trustee's Motion for Summary
Judgment. By his Response, the Trustee abandoned any request for relief against named
defendants who were not listed as Count 11 Defendants in his Motion for Summary Judgment.

|    | Restaurant | Count 11 Defendant |
|----|------------|---------------------|
| 6  | Grillroom | 33 Restaurant Inc. |
| 7  | Red Star Aurora | Red Star Aurora, Inc.[2] |
| 8  | Bar Louie Evanston | Bar Louie Evanston, Inc. |
| 9  | Bar Louie Taylor | Bar Louie Taylor, Inc. |
| 10 | One North | One North, Inc. |
| 11 | Bar Louie Naperville | Bar Louie Naperville, Inc. |
| 12 | Bar Louie Waterfront | Bar Louie Waterfront, Inc. |
| 13 | Red Star Deerfield (Deerfield Restaurant) | Deerfield Restaurant, Inc. |
| 14 | Nick & Tony's Omaha | Nick & Tony's of Omaha, Inc. |
| 15 | Pier 4 Seafood Kitchen | Pier 4 Seafood Kitchen, Inc. |
| 16 | Bar Louie Pittsburgh | Bar Louie Pittsburgh, Inc |
| 17 | Red Star Geneva | Red Star Geneva, Inc. |
| 18 | Bar Louie Easton | Bar Louie Easton, Inc. |
| 19 | Bar Louie Newport | Bar Louie Newport, Inc. |
| 20 | South City Grill | 1530 State Street Restaurant Inc. |
| 21 | Bar Louie Tampa | Bar Louie Tampa, Inc. |
| 22 | Bar Louie Hyde Park | Bar Louie Hyde Park, Inc. |
| 23 | Nick & Tony's Cincinnati | Nick & Tony's of Cincinnati, Inc. |

---

[2]In his Motion for Summary Judgment, the Trustee refers to Red Star Aurora, Inc. by its prior corporate title, Chelsea Tavern, Inc. Other immaterial typographical or labeling errors have been corrected in the embedded table.

|    | Restaurant | Count 11 Defendant |
|----|------------|--------------------|
| 24 | Nick & Tony's Geneva | Nick & Tony's of Geneva, Inc. |
| 25 | Nick & Tony's Minneapolis | Nick & Tony's of Minnesota, Inc. |
| 26 | Nick & Tony's Pittsburgh | Nick & Tony's of Pittsburgh, Inc. |
| 27 | Red Star Charlotte | Red Star Charlotte, Inc. |
| 28 | Red Star Columbus | Red Star Columbus, Inc. |
| 29 | Red Star Ft. Wayne | Red Star Fort Wayne, Inc. |
| 30 | Red Star Glenview | Red Star Glenview, Inc. |
| 31 | Red Star Kansas City | Red Star North Kansas City, Inc. |
| 32 | Cabo and Cabo Mexican Grill | Mexican Cantina, Inc. |
| 33 | Nick & Louie's | Nick & Louie's, Inc. |
| 34 | Bar Louie Tempe | Bar Louie Tempe, Inc. |

9.     Debtor charged a fee to the Count 11 Defendants for the RDG Management and

Marketing Services. During 2003, the fees consisted of a management fee of 8% of the

gross revenue of each of the Count 11 Defendants and a separate marketing fee of 2.5%

of the gross revenue of each of the Count 11 Defendants (collectively the "RDG

Management and Marketing Fee"), totaling 10.5% of the gross revenue of each of the

Count 11 Defendants. (Pl.'s Ex. 3, Zaben Declaration ¶ 5.)

10.    RDG's Marketing and Management fees were industry standard and fair. Greenfield

testified as follows:

Q.    I'm talking about restaurants that you and Mr. Kasemir had an ownership interest
in, were all those managed by RDG prior to December 28th, 2003?

A.    Correct.

Q.    And the management fees that you charged at whatever percentage of the gross
revenues, you believe that that was a fair charge, correct?

A.     It's industry standard.

Q.     Whatever it was charging at the time, you believed it was industry standard and fair?

A.     Right.

Q.     And the same thing for the marketing fee, whatever you charged, you believed that was industry standard and fair?

A.     Yes.

(Pl.'s Ex. 6, Greenfield Dep. at 99-100.)

11.    The Oral Management Contracts were terminated in writing by a document dated June 30, 2003, as part of a financial restructuring involving RDG, the Count 11 Defendants and others (the "2003 Restructuring). (See generally Defs.' Ex. C, Termination Agreement. Defs.' Ex. A, Greenfield Aff. ¶ 10; Defs.' Ex. D, Zaben Dep. at 119.)

12.    Effective June 30, 2003, RDG ceased charging the RDG Management and Marketing Fee to the Count 11 Defendants. (Pl.'s Ex. 3, Zaben Decl. ¶ 6.) Kasemir testified that RDG did not charge the RDG Management and Marketing Fee after June 30, 2003:

Q.     The revenue number for corporate management RDG of $3,151,000 [Pl.'s Ex. 7 at GAL000047], do you see that? Focus with me. That number is not greater, is not a higher number because RDG did not collect management fees from the restaurant units for a period July 1, 2003 through the end of 2003, is that a true statement?

A.     Yes.

(Pl.'s Ex. 2, Kasemir Dep. at 311; Pl.'s Ex. 7 at GAL000047.)

13.    Although RDG did not charge the Count 11 Defendants for the RDG Management and Marketing Fee from July 1, 2003 through December 28, 2003, RDG continued to provide the RDG Management and Marketing Services to each of the Count 11 Defendants

through and including December 28, 2003. (Pl.'s Ex. 3, Zaben Decl. ¶ 7.) Kasemir

admitted in his deposition testimony that RDG continued to perform the RDG

Management and Marketing Services through December 28, 2003:

Q.    And, prior to December 29, 2003, those services were performed by    those
      management services that you testified to, those were performed by whom?

A.    Restaurant Development Group.

Q.    And they performed those services December 28th, 27th, 26, '03 all the way
      back until sometime in the 1990s, is that correct?

A.    Correct.

Q.    So every single day from whenever it began providing services up until
      December 28th, 2003, it performed – RDG performed management
      services for all the various restaurants?

A.    Right.

Q.    It determined what payables to pay, right?

A.    Right.

Q.    It helped in managing the restaurants, hiring and firing of employees?

A.    Of management employees.

Q.    Of management employees, right?

A.    Right.

Q.    Restaurant Development Group did all those things up until the very last
      day before December 29, 2003, is that correct?

A.    Correct.

(Pl.'s Ex. 2, Kasemir Dep. at 68-69.)

14.   Beginning on December 29, 2003, RDG Chicago, Inc. ("RDG Chicago") began

performing the RDG Management and Marketing Services, and began charging the Count

11 Defendants for the RDG Management and Marketing Fee.  (Pl.'s Ex. 3, Zaben Decl. ¶

8.)  Kasemir confirmed this during his deposition testimony:

Q.   It says, "Effective December 29th, 2003." [Pl.'s Ex. 8.]  All those services that
you just talked about that RDG Chicago did, it, in fact, performed those services
after December 29, 2003?

A.   Right.

(Pl.'s Ex. 2, Kasemir Dep. at 67-68; Pl.'s Ex. 8.)

15.   Debtor's Profit & Loss ("P & L") Statement dated December 29, 2003, does not reflect

any revenue generated from the accrual of RDG Management and Marketing Fees

charged to the Count 11 Defendants between July and December 2003.  (Pl.'s Ex. 3,

Zaben Decl., Ex. A at RSMM00058.)

16.   However, the same P & L Statement reflects that RDG continued to accrue expenses

associated with the provision of the RDG Management and Marketing Services through

December 28, 2003.  (Id. ¶ 9, and Ex. A at RSMM00058-60.)

17.   As part of the 2003 Restructuring, any and all accrued and unpaid management fees that

were due from the Count 11 Defendants were transferred to RDG Chicago on or about

December 28, 2003.  (Defs.' Stmt. of Material Facts ¶ 11; Pl.'s Resp. to Defs.' Stmt. of

Material Facts ¶ 11.)

<u>JURISDICTION</u>

Subject matter jurisdiction lies under 28 U.S.C. § 1334.  This matter is before the Court

pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the

United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C.

§ 1409. The Adversary counts constitute both core and non-core "related to" proceedings under

28 U.S.C. §§ 157(b)(2)(H) and (c)(1). The parties have filed a written consent that all non-core

matters pleaded herein shall be litigated to final Judgment by the undersigned pursuant to 28

U.S.C. § 157(c)(2).

## DISCUSSION

### *Summary Judgment Standard*

The pending Cross-Motions for Summary Judgment have been brought pursuant to Rule

56 Fed. R. Civ. P. made applicable in bankruptcy by Rule 7056 Fed. R. Bankr. P. According to

Rule 56(c), "The judgment sought shall be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."[3] See also Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247 (1986); Tyler v. Runyon, 70 F.3d 458, 464 (7th Cir.1995)).

Furthermore:

Supporting and opposing affidavits shall be made on personal knowledge, shall
set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to testify to the matters stated therein.
Sworn or certified copies of all papers or parts thereof referred to in an affidavit
shall be attached thereto or served therewith. The court may permit affidavits to
be supplemented or opposed by depositions, answers to interrogatories, or further
affidavits. When a motion for summary judgment is made and supported as
provided in this rule, an adverse party may not rest upon the mere allegations or
denials of the adverse party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set forth specific facts
showing that there is a genuine issue for trial.

---

[3]Rule 56(c) was amended effective December 1, 2007, to say "should" instead of "shall."
This Adversary was filed on October 1, 2007, and therefore, the prior version of the Rule applies.

Fed. R. Civ. P. 56(e). Therefore, "a bare contention that an issue of fact exists is insufficient to raise a factual issue." Powers v. Dole, 782 F.2d 689, 694 (7th Cir. 1986) (quoting Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983)). Similarly, conclusory and self-serving affidavits are insufficient to support or defeat a summary judgment motion. See Buie v. Quad/Graphics, Inc., 366 F.3d 496, 504 (7th Cir. 2004) (citing Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir.2001)); Powers, 782 F.2d at 694.

Finally, the disputed issue of fact must be material. "[T]he existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law." Schreiber v. United States (In re Schreiber), 163 B.R. 327, 331 (Bankr. N.D. Ill. 1994) (citing Liberty Lobby, 477 U.S. at 248; Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir. 1987)).

### Both Parties Have Contradicted Their Own Legal Arguments

*Quantum meruit* is a quasi-contract theory that compensates a plaintiff where a defendant receives services from the plaintiff without providing compensation for those services. Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp., 907 F.2d 732, 737 (7th Cir. 1990). The elements of a claim for *quantum meruit* are: (1) performance of services by the plaintiff; (2) the receipt of the benefit of those services by the defendant; and (3) and defendant's unjust retention of that benefit without compensating plaintiff. Id. (citations omitted). Recovery on a *quantum meruit* theory necessarily requires the absence of a contractual relationship between the parties and, therefore, the equitable imposition of a quasi-contract implied at law. Id. at 736 (citations omitted).

However, the services must have been knowingly accepted by the defendant. Gibbs-Brower Int'l v. Kirchheimer Bros. Co., 611 F. Supp. 122, 126 (N.D. Ill.1985). If "the plaintiff did not contemplate a fee at the time the services were rendered, or the defendant could

-11-

not have reasonably believed that plaintiff expected a fee" then *quantum meruit* is not available.

Gibbs-Brower, 611 F. Supp. at 126 (quoting Plastics & Equip. Sales Co. v. DeSoto, Inc., 415

N.E.2d 492, 498 (Ill. App. Ct. 1980)).  For example, a plaintiff who renders services to another

with an end in mind other than payment, including the altruistic or gratuitous rendering of such

services, is precluded from recovery under *quantum meruit*.  Midcoast Aviation, 907 F.2d at 740.

The facts alleged in the pending Cross-Motions for Summary Judgment, including when

the Oral Management Agreements were terminated, are related to the other counts in this

Adversary proceeding that remain to be tried.[4]  The numerous and complex issues presented by

this Adversary proceeding do not in and of themselves render the summary judgment procedure

unavailable.  Sanders v. Rowe, 460 F. Supp. 1128, 1131 n.2 (N.D. Ill. 1978) ("The existence of

an important, difficult, or complicated question of law, where there is no genuine issue of

material fact, is not a bar to a summary judgment.").  According to the Advisory Committee

Notes accompanying Rule 56, "[t]his rule is applicable to *all* actions...."  See also Kennedy v.

Silas Mason Co., 334 U.S. 249, 256 (1948).  Nevertheless, according to reasoning in Kennedy,

"But summary procedures, however salutary where issues are clear-cut and simple, present a

---

[4] In addition to the count for *quantum meruit* liability and counts to avoid fraudulent conveyances under both an actual and also a constructive fraud theory against initial and subsequent transferees, those counts include causes of action (1) for successor liability against Greenfield, Kasemir and the Corporate Defendants; (3) for breach of fiduciary duty against Greenfield and Kasemir; (4) aiding and abetting breach of fiduciary duty against RDG's former attorneys; (5) for legal malpractice against RDG's former attorneys; (6) for civil conspiracy to commit fraud against Greenfield, Kasemir and RDG's former attorneys; (7) for aiding and abetting actual fraudulent transfers against Greenfield, Kasemir and RDG's former attorneys; (8) for alter ego liability/piercing the corporate veil against Greenfield and Kasemir; and (9) for declaratory relief that certain funds frozen by the state court are property of the bankruptcy estate.

treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice." Id.

In this case, the parties do not dispute that the Oral Management Contracts were terminated at some point as part of the 2003 Restructuring of Debtor's business. The parties also do not dispute that Debtor performed the RDG Management and Marketing Services between June 30, 2003, and December 28, 2003, and that Debtor did not charge nor have the Count 11 Defendants paid for services rendered during this time. In addition, they do not dispute that certain assets, including the right to accrued but unpaid RDG Management and Marketing Fees, were transferred to RDG Chicago on December 29, 2003. However, the parties disagree as to when the Oral Management Contracts were actually terminated, and whether Debtor had a reasonable expectation of compensation when it rendered the services between July and December 2003. Finally, the Trustee argues that the right to the RDG Management and Marketing Fees for June through December 2003, were not among the assets transferred to RDG Chicago because they were not accrued on RDG's financial records after June 30, 2003.

In response to the Count 11 Defendants' argument that there was no intent that Debtor be paid for the RDG Management and Marketing Services after June 2003, the Trustee argues that the Oral Management Contracts were not actually terminated until December 2003, suggesting that the Termination Agreements were backdated. Whether or not the defendants backdated certain documents related to the alleged fraudulent transfer of assets (if that happened) may be persuasive evidence of actual fraudulent intent which is a necessary element of a number of the other Adversary counts. On the other hand, the allegation of backdating undermines the Trustee's cause of action for *quantum meruit*, because it suggests that the relationship between

-13-

Debtor and the Count 11 Defendants was, in fact, governed by contract from June to December 2003.

The Count 11 Defendants also try to have it both ways. While they point out the contradiction in the Trustee's legal reasoning, they continue to argue that the Oral Management Contracts were terminated on June 30, 2003. The Count 11 Defendants argue that *quantum meruit* is unavailable here, because Debtor provided the RDG Management and Marketing Services without compensation in order to accrue a business advantage. The asserted business advantage is said to have been the inducement of individual Count 11 Defendants to enter into new management and marketing contracts with RDG Chicago as part of the 2003 Restructuring.

Greenfield and Kasemir also controlled RDG Chicago, so it is difficult to understand how a business advantage accrued to Debtor by its clients entering into management and marketing contracts with another company. Furthermore, Greenfield and Kasemir controlled the individual Count 11 Defendants, and therefore it seems strange to argue that they needed any inducement in order to do business with another Greenfield and Kasemir controlled entity. Therefore, the Trustee argues that any business advantage that accrued as a result of the apparent self-dealing between the entities controlled by Greenfield and Kasemir accrued to benefit of Greenfield and Kasemir, not to Debtor.

Here, both parties have presented facts that might support their arguments or defenses to other counts, but those same facts contradict to some degree their respective theories of the issue presented by the summary judgment motions. The Trustee cannot recover on a theory of *quantum meruit* while arguing that the parties' intent to make and receive payment for those services is proven by the existence of a contract. Similarly, the Count 11 Defendants cannot

-14-

wholeheartedly adopt the Trustee's contradictory position that the Oral Management Contracts were not terminated until December 2003, without raising the inference that the Termination Agreements were backdated through a course of self-dealing to perpetrate a fraud against Debtor's creditors. Ironically, through their own inconsistent and contradictory rendition of facts, both parties have raised triable issues of fact and, therefore, summary judgment is inappropriate on this Record.

### *The Trustee Has Not Established That He Is Entitled to Judgment as a Matter of Law*

In Response to the Trustee's Motion for Summary Judgment and in support of their own Cross-Motion for Summary Judgment, the Count 11 Defendants argue that Debtor did not have a reasonable expectation of compensation. They argue that Debtor's expectation of payment ended when the Oral Management Contracts were voluntarily terminated, and that the RDG Management and Marketing Services were provided thereafter in order to gain a business advantage. In other words, the Count 11 Defendants assert that Debtor continued to perform the RDG Management and Marketing Services for the Count 11 Defendants after the Oral Management Contracts were terminated in order to induce the Count 11 Defendants to enter into new contracts for the provision of the same management and marketing services by RDG Chicago, which was also controlled by Greenfield and Kasemir.

In his Reply, the Trustee argues that the Count 11 Defendants knowingly accepted the RDG Management and Marketing Services between July and December 2003, and Debtor had a reasonable expectation of compensation for such, because the Termination Agreements were not executed in June 2003, but rather were executed in December 2003, and backdated to June 30, 2003. The inference to be drawn (he argues) is that Debtor had an expectation of payment for the

RDG Management and Marketing Services between July and December 2003, because the Oral
Management Contracts were only terminated later as part of the larger scheme to defraud alleged
by the Trustee.

However, "inferences drawn from the facts must be viewed in the light most favorable to
the non-moving party...." Mills v. Health Care Service Corp., 171 F.3d 450, 459 (7th Cir. 1999).
The Trustee does not provide any evidence to support the contention that the Termination
Agreements were backdated to June 30, 2003, other than an affidavit by Lee Zaben, Debtor's
former Chief Financial Officer, in which he asserts that "to the best of my knowledge, the
termination agreements (e.g., Exhibit C to Defendant's 56.1 Statement) were executed as part of
the closing of the overall transaction which took place in December 2003." (Pl.'s Ex. 16, Suppl.
Zaben Decl. ¶ 2.) In light of the requirement that affidavits be specific and made on personal
knowledge, and that inferences must be viewed in the light most favorable to the non-moving
party (referring in this discussion of the Trustee's Motion to the Count 11 Defendants), Zaben's
equivocal assertion is insufficient to support the Trustee's Motion.

Furthermore, the most logical inference to be drawn from the Trustee's contention that
the Termination Agreements were not actually executed until December 2003, is that the
relationship between Debtor and the Count 11 Defendants was governed by a contract during the
period for which he is attempting to recover for *quantum meruit*. However, *quantum meruit* is an
equitable remedy that imposes an implied, quasi-contract where the parties' relationship is not
governed by a contractual agreement. Midcoast Aviation, 907 F.2d at 736. On the one hand, the
Trustee argues that he is entitled to summary judgment because the Oral Management
Agreements were terminated on June 30, 2003, but Debtor continued to perform the RDG

-16-

Management and Marketing Services for the Count 11 Defendants through December 2003 without compensation. On the other hand, he argues that the Count 11 Defendants knowingly accepted the services and Debtor intended to be paid for them, because the Termination Agreements were actually executed in December 2003. The Trustee is permitted to plead in different counts breach of contract and *quantum meruit* in the alternative, but those theories are mutually exclusive because "[o]nce a valid contract is found to exist, quasi-contractual relief is no longer available." Cromeens, Holloman, Sibert, Inc v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003). For purposes of his pending Motion, the Trustee cannot have it both ways. Having argued that the Oral Management Contracts were not terminated until December 28, 2003, the Trustee is not entitled to summary judgment as a matter of law.

### *The Count 11 Defendants' Self-Serving Affidavits Are Insufficient to Support Their Cross-Motion for Summary Judgment*

Similarly, the Count 11 Defendants have also confused their argument. In Reply, they point out the inconsistency in the Trustee's legal reasoning. They correctly argue that if the Oral Management Contracts were not terminated until December 2003 as the Trustee alleges, then he should be suing for breach of contract, not *quantum meruit*. For reasons stated above, this inconsistency itself is enough to defeat the Trustee's Motion as a matter of law. Nevertheless, the Count 11 Defendants continue to argue both that the Oral Management Contracts were terminated on June 30, 2003, and also that the Termination Agreements memorializing the termination were actually executed in December 2003. The Count 11 Defendants offer the Affidavit of Roger Greenfield in support of this assertion. (Defs.' Ex. A, Greenfield Aff. ¶ 9.) According to Greenfield, "The Oral Management Contracts were terminated in writing effective

June 30, 2003. A copy of such written Termination Agreement as executed by me on behalf of the Debtor and Bar Louie Dearborn, Inc. is attached to this Affidavit...." (Id.)[5] It is unclear why the Count 11 Defendants would argue that the Oral Management Contracts were terminated in June 2003, thereby reviving the Trustee's *quantum meruit* theory, after having just argued that *quantum meruit* is unavailable if the Termination Agreements had yet to be executed as the Trustee suggests. Perhaps, the Count 11 Defendants, or their principals, are concerned that if they admit to backdating the Termination Agreements so that the Trustee cannot recover on *quantum meruit* (if that is what actually happened), such admission will raise the inference that the Termination Agreements were backdated to cover-up the alleged fraudulent transfer.

The Trustee argues that Greenfield's affidavit should be disregarded because it contains conclusory statements and contradicts his previous deposition testimony. Adumisilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998). The Count 11 Defendants respond that the excerpts from the Greenfield Deposition relied upon by the Trustee have been taken out of context. At his deposition, Greenfield testified as follows:

> Q: And to the extent that one of the restaurants didn't pay you for the services that you performed, RDG performed, they would owe you that fair charge; is that correct?

> A: Correct.

(Pl.'s Ex. 6, Greenfield Dep. at 100.) It is impossible to determine upon this record whether this colloquy stands for the proposition suggested by the Trustee. The Count 11 Defendants' defense to the Trustee's Motion for Summary Judgment is that at one time they owed Debtor

---

[5] According to the Count 11 Defendants, an identical Termination Agreement for each of the individual Count 11 restaurant defendants is available but were too voluminous to attach as exhibits to their Cross-Motion for Summary Judgment.

-18-

compensation for services rendered, but that obligation ended at some point. In other words, Greenfield's answer may have been true during one period of time, but inapplicable to another period. Because the Trustee failed to establish a foundational time frame to put Greenfield's answer in context, it is impossible to find that Greenfield Deposition and Affidavit contradict one another.

However, Greenfield's Affidavit is insufficient to support the conclusion that the Oral Management Contracts were in fact terminated on June 30, 2003. Conclusory and self-serving affidavits are insufficient to support a motion for summary judgment. Buie, 366 F.3d at 504 (additional citations omitted). A self-serving affidavit must be supported by facts in the record. Albiero, 246 F.3d at 933 (quoting Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir.1993)). The only other evidence offered of when the Termination Agreements were signed is the Termination Agreements themselves. However, Greenfield states in his Affidavit, and an examination of the Termination Agreements supports, that he executed the agreements on behalf of both the Debtor and also each of the Count 11 Defendants. (Defs.' Ex. A, Greenfield Aff. ¶ 9; Defs.' Ex. C, Termination Agreement at 3.) The Termination Agreements were apparently not obtained through arms-length negotiations between two disinterested parties, and do not provide independent factual support for Greenfield's assertion that the Oral Management Contracts were terminated on June 30, 2003.[6] Based on the current undeveloped record, any conclusion

_____

[6]In his Response to the Count 11 Defendants' Cross-Motion for Summary Judgment, the Trustee argues that the Termination Agreements were procured by fraud by the self-dealing of Debtor's principals, Greenfield and Kasemir and, therefore, voidable at the Trustee's option. Obermaier v. Obermaier, 470 N.E.2d 1047, 1053 (Ill. App. Ct. 1984). (Pl.'s Am. Resp. at 4.) The Trustee's assertion that he intends to challenge the validity of Termination Agreements as a product of fraud, further undermines his argument that the relationship between Debtor and the Count 11 Defendants was not governed by contract.

concerning the legal affect of the alleged self-dealing is more appropriately addressed in the context of a trial presenting the whole story with evidence as to all counts.

That the Oral Management Contracts were voluntarily terminated in June 2003, is central to the argument of the Count 11 Defendants that there was no expectation of payment during the second-half of 2003. While continuation of the Oral Management Contracts would suggest that a more appropriate remedy for the Trustee to pursue is a cause of action for breach of contract, the Count 11 Defendants have not unequivocally adopted this argument. Rather, they continue to argue that the Oral Management Contract were terminated effective June 30, 2003. However, the conclusory and self-serving affidavits cited in support thereof are insufficient to support their Cross-Motion for Summary Judgment.

### *Triable Issues of Fact*

Finally, the Count 11 Defendants argue that insofar as the RDG Management and Marketing Fees were accrued to Debtor's financial records they were transferred for reasonably equivalent value in the form of account receivables to RDG Chicago as part of the 2003 Restructuring. For the same reasons stated above, the conclusory and self-serving statements in the Greenfield Affidavit are insufficient to support the assertion that Debtor received reasonably equivalent value from RDG Chicago for the value of the accrued RDG Management and Marketing Fees.

In addition, there is a material issue of fact as to whether or not the RDG Management and Marketing Fees were accrued to the Debtor's financial records after June 30, 2003, and therefore, whether they were among the assets transferred to RDG Chicago. In fact, the Count 11 Defendants admit that Debtor ceased charging them for the RDG Management and Marketing

Services as of June 30, 2003, (Undisputed Facts, supra, ¶ 12), and Debtor's Profit & Loss

Statement dated December 29, 2003, does not reflect any revenue generated from the accrual of

RDG Management and Marketing Fees between July and December 2003. (Id. at ¶ 15.) On this

record, it is unclear how an account receivable that was never recorded on Debtor's financial

records could be transferred to RDG Chicago during the 2003 Restructuring.

    Furthermore, whether or not Debtor received reasonably equivalent value for the transfer

of assets to RDG Chicago is related to the remaining Adversary counts. It would be

inappropriate to make a factual finding, based on this record, that could bind the determination of

those remaining issues. When the Oral Management Contracts were terminated, whether

Greenfield and Kasemir breached their fiduciary duty to Debtor through a course of self-dealing

with related corporations, and whether the RDG Management and Marketing Fees were

transferred as an account receivable for reasonably equivalent value, will be decided in the

context of trial through the evidence and development of a complete record.

## CONCLUSION

    For the foregoing reasons, separate Orders will be entered Denying the Trustee's Motion

for Summary Judgment, and Denying the Count 11 Defendants' Cross Motion for Summary

Judgment.

## UNDISPUTED FACTS

    According to Rule 56(d) Fed. R. Civ. P., made applicable here by Rule 7056 Fed. R.

Bankr. P., if a motion for summary judgment is denied, the court may ascertain the undisputed

material facts. "It shall thereupon make an order specifying that facts that appear without

substantial controversy ... and directing such further proceedings in the action as are just. Upon

-21-

trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

Pursuant to that authority, the undisputed facts found hereinabove in paragraphs 1 through and including 17 will be deemed established for trial.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 7th day of November 2008

07 A 00937

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on November 7, 2008, I caused to be mailed by United States

first class mail copies of the foregoing Memorandum Opinion to the persons named.

_Dorothy Clay_
Secretary/Deputy Clerk

## SERVICE LIST

Daniel F Lynch
Henry Baskerville
Lynch & Stern LLP
150 S Wacker Dr Suite 2600
Chicago, IL 60606
Counsel for Plaintiff/Trustee

Amy E Bullock
Carrie A. Dolan
Cohon Raizes & Regal LLP
208 S LaSalle Street, Suite 1860
Chicago, IL 60604

Frances Gecker
Micah R. Krohn
Zane L. Zielinski
325 North LaSalle Street
Suite 625
Chicago, IL 60610

Bruce R. Meckler
Christopher E. Kentra
Clark M. Stalker
Eric E. Newman
Meckler Bulger & Tilson
123 N Wacker Drive Ste 1800
Chicago, IL 60606

Jonathan M. Cyrluk
Stetler & Duffy Ltd.
11 S. LaSalle Street
Suite 1200
Chicago, IL 60603
Counsel for Plaintiff/Trustee

David K. Welch
Jeffrey C. Dan
Norman B. Newman
Crane Heyman Simon Welch & Clar
135 S Lasalle St, Suite 3705
Chicago, IL 60603

Colleen E McManus
Much Shelist
191 N. Wacker Drive
Suite 1800
Chicago, IL 60606