**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 07 B 592 |
| RESTAURANT DEVELOPMENT GROUP, | ) | |
| INC., | ) | Hon. Jack B. Schmetterer |
| | ) | |
| Debtor, | ) | Chapter 7 Proceeding |
| _____ | ) | |
| | ) | |
| GUS A. PALOIAN, not individually or | ) | |
| personally, but solely in his capacity as Chapter 7 | ) | |
| Trustee of the Debtor's Estate, | ) | Adv. No.  07 A 937 |
| | ) | |
| Plaintiff, | ) | Hon. Jack B. Schmetterer |
| v. | ) | |
| | ) | |
| ROGER D. GREENFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**TRUSTEE'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR**
**SUMMARY JUDGMENT AGAINST ALL DEFENDANTS ON COUNT I**

Jonathan M. Cyrluk (ARDC#6210250)
Henry Baskerville (ARDC#6285712)
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
Tel.:    312-338-0200
Fax:    312-338-0070
cyrlukj@stetlerandduffy.com
hbasker@stetlerandduffy.com

Daniel Lynch (ARDC#6202499)
LYNCH & STERN, LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Tel.:    312-346-8700
Fax:    312-896-5883
dan@lynchandstern.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      THE DEBTOR PROVIDED MANAGEMENT SERVICES TO THE GREENFIELD
        AND KASEMIR RESTAURANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     GREENFIELD AND KASEMIR SCHEME TO DEFRAUD RDG AND ITS
        CREDITORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    RDG CHICAGO SUCCEEDS RDG . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     TWO CREDITORS SUED RDG CHICAGO FOR SUCCESSOR LIABILITY . . . . . . . 3

        A.      The Rookery Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      The City Center Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.      GREENFIELD AND KASEMIR DISBAND RDG CHICAGO TO FURTHER
        DEFRAUD RDG AND RDG'S CREDITORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.     THE COUNT I DEFENDANTS BAND TOGETHER AS RESTAURANTS-
        AMERICA TO SUCCEED RDG AND RDG CHICAGO . . . . . . . . . . . . . . . . . . . . . . . 6

LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     THE LAW CONCERNING SUCCESSOR LIABILITY . . . . . . . . . . . . . . . . . . . . . . . 8

III.    THE COUNT I DEFENDANTS SHOULD BE HELD LIABLE AS SUCCESSORS
        TO RDG . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      RDG Chicago Was the Initial Successor to RDG . . . . . . . . . . . . . . . . . . . . 10

                1.      The Reorganization Was A *De facto* Merger Or Consolidation . . . . . . 10

                2.      RDG Chicago Was A Mere Continuation Of RDG. . . . . . . . . . . . . . . . 11

                3.      RDG Chicago Is Collaterally Estopped from Denying Successor
                        Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      The Remaining Count I Defendants Operate as Restaurants-America
                are a "Mere Continuation" of RDG and RDG Chicago . . . . . . . . . . . . . . . . . . 11

IV.     IT IS IRRELEVANT THAT RESTAURANTS-AMERICA IS NOT
        INCORPORATED OR DOES NOT HAVE A WRITTEN PARTNERSHIP
        AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      Restaurants-America is a Partnership  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                1.      Restaurants-America Consists of Two or More Entities  . . . . . . . . . . . . . 13

                2.      The Purpose of Restaurants-America is to Make Money  . . . . . . . . . . . . 13

        B.      At Minimum, Restaurants-America is an Unincorporated Association or
                Enterprise that Can Be Sued  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

EXHIBITS

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES**

*North Shore Gas Co. v. Salomon, Inc.*, 152 F.3d 642, 651 (7th Cir. 1998) . . . . . . . . . . . . . 8, 9, 10

*Liu v. T&H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*E.E.O.C. v. G-K-G, Inc.,*  39 F.3d 740, 747 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*E.E.O.C. v. Vucitech*, 842 F.2d 936, 945 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lincoln Nat. Life Ins. Co. v. Nicklau, Inc.*, No. 98 C 2453, 2000 WL 656683
(N.D. Ill. May 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vernon v. Schuster*, 179 Ill.2d 338, 346, 668 N.E.2d 1172, 1178 (1997) . . . . . . . . . . . . . . . . . 9

*Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985) . . . . . . . . . . . . . 9

*Brandon v. Anesthesia & Pain Management Associates, Ltd.*, 419 F.3d 594
599 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 11

*Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Klingman v. Levinson*, 831 F.2d 1292, 1294 (7th Cir. 1987)                                   11

*In re Bruetman*,  259 B.R. 649, 661 (Bankr. N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lathrop v. Juneau & Associates, Inc.,* No. 03-CV-0194, 2005 WL 3797706 . . . . . . . . . . . . . . 13

**FEDERAL RULES**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**ILLINOIS STATUTES**

805 ILCS 206/202(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

805 ILCS 206/307(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

735 ILCS 5/2-209.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## OTHER AUTHORITIES

Illinois Partnership Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**INTRODUCTION**

For more than five years, Defendants Roger Greenfield ("Greenfield") and Ted Kasemir ("Kasemir") have attempted to stay one step ahead of the creditors of the Debtor Restaurant Development Group, Inc. ("RDG").  In 2003, Greenfield and Kasemir (with the assistance of their agents and attorneys) began their scheme to defraud RDG and RDG's creditors by stripping RDG of assets, transferring those assets to other corporations owned and controlled by Greenfield and Kasemir and forming a new entity, Defendant RDG Chicago, Inc. ("RDG Chicago"), to perform the same functions as did RDG.  Two of RDG's creditors, however, were not fooled by Greenfield and Kasemir's initial attempt at a shell game and sued RDG Chicago for successor liability.  In the face of these two lawsuits, in Fall 2004, Greenfield and Kasemir caused RDG Chicago to go out of business and transfer its assets to other entities owned and controlled by Greenfield and Kasemir.  In place of RDG Chicago, Greenfield and Kasemir substituted a new enterprise, Restaurants-America, which they continue to operate to the present and which consists of all of the entities they own and control and are named as defendants in Count I of the Trustee's complaint (the "Count I Defendants").  Rather than formally incorporating Restaurants-America, Greenfield and Kasemir (with the assistance of others) made the strategic decision that they might increase their chances of avoiding successor liability if they did not incorporate Restaurants-America or enter into any written agreement "formally" creating Restaurants-America. However, failing to incorporate Restaurants-America is not a shield to successor liability.

In Count I, the Trustee alleges that the Count I Defendants have banded together to form a successor enterprise to RDG (and RDG Chicago) known as Restaurants-America and, therefore, are liable for RDG's debts and their assets are the assets of the Debtor's estate.  It is uncontested that the Count I Defendants operate collectively as Restaurants-America, that the employees who perform management functions for all of Greenfield and Kasemir's restaurants (the "G&K Restaurants") carry business cards stating that they are employees and officers of Restaurants-

America and that those employees perform the same functions as did the employees of RDG and

RDG Chicago.  Further, like RDG and RDG Chicago, Restaurants-America maintains a website,

a frequent diner program, a gift card program and an email club that supports the G&K

Restaurants.  In sum, there is no functional difference between RDG and Restaurants-America

and, therefore, summary judgment should be entered against the Count I Defendants.

### FACTUAL BACKGROUND

**I.    THE DEBTOR PROVIDED MANAGEMENT SERVICES TO THE GREENFIELD AND KASEMIR RESTAURANTS.**

RDG was formed in 1993.  (SOF, ¶ 2.)[1]  Greenfield and Kasemir are the sole shareholders

of RDG, each owning 50% of the shares of RDG.  (SOF, ¶ 3.)  From its inception until December

2003, among other things, RDG provided a variety of management and marketing services to the

restaurants owned and controlled by Greenfield and Kasemir (the "G&K Restaurants"), including

but not limited to, payroll services, financial and accounting services, hiring services, design and

concept services, website services, marketing and advertising services, cash management services

and providing loans to the G&K Restaurants (the "Management and Marketing Services").  (SOF,

¶ 6.)  The employees who provided the Management and Marketing Services were paid solely by

RDG.  (SOF, ¶ 8.)  RDG's accountants prepared consolidated financial statements showing the

performance of each restaurant and the performance of all of the restaurants in the Combined

Financial Statement of "RDG."  (SOF, ¶ 8.).  In addition, RDG also guaranteed many of the

leases entered into by the G&K Restaurants.  (SOF, ¶ 12.)  In exchange for the Management and

Marketing Services, RDG collected millions of dollars in management and marketing fees (the

"RDG Management and Marketing Fees").  (SOF, ¶ 9.)

---

[1]Contemporaneous herewith, the Trustee has filed the Trustee's Rule 56.1 Statement of Material Facts in Support of His Motion for Summary Judgment (the "Statement of Facts").  All citations to the Statement of Facts are cited to as "SOF ¶ __."

## II. GREENFIELD AND KASEMIR SCHEME TO DEFRAUD RDG AND ITS CREDITORS.

By June 2003, several of the G&K Restaurants had defaulted on their leases and the landlords sought payment from RDG based on RDG's guarantees of the lease payments. Rather than allow RDG to pay its guarantee liabilities, Greenfield and Kasemir caused RDG to transfer its assets – including the right to the RDG Management and Marketing Fees – to a corporation known as RDG Chicago. (SOF ¶¶ 13-27.) As a result, RDG was left without any assets, but more than $22 million in liabilities. (SOF, ¶ 19.)

## III. RDG CHICAGO SUCCEEDS RDG.

By the end of 2003, RDG had ceased to conduct its restaurant management operations. (SOF, ¶ 48.) By January 1, 2004, RDG Chicago began to perform all of the same marketing and management functions for the G&K Restaurants that previously were performed by RDG and began to collect the RDG Marketing and Management Fees previously paid to RDG. (SOF, ¶ 28.) Substantially the same management personnel that previously were employed by RDG were now employed by RDG Chicago. (SOF, ¶ 31.) RDG Chicago used substantially the same physical assets transferred from RDG to RDG Chicago to provide the RDG Management and Marketing Services to the G&K Restaurants, including operating the same website, the same frequent diner program, preparing similar financial statements, maintaining the same healthcare plan and using the same distinctive logo. (SOF, ¶¶ 32-35.) The website demonstrates how Greenfield and Kasemir merely changed the name of RDG to RDG Chicago. On the website, Greenfield and Kasemir represented that RDG Chicago, like RDG, had been in business since 1990, advertised the same frequent diner program and touted the same press releases that had been used on the RDG website. (SOF, ¶ 35.)

## IV. TWO CREDITORS SUED RDG CHICAGO FOR SUCCESSOR LIABILITY.

After obtaining judgments against RDG, certain creditors began post-judgment collection proceedings against RDG. In connection with those proceedings, those creditors discovered that

3

RDG Chicago had succeeded RDG and brought suit against RDG Chicago to collect the amounts

owed by RDG.

### A.    The Rookery Litigation.

On August 19, 2004, LaSalle Bank National Association, as Trustee under Trust No.

113979 (the "Rookery"), sued RDG Chicago in the Circuit Court of Cook County in Case No. 04

L 9388 (the "Rookery Litigation").  The Rookery alleged that RDG Chicago should be held liable

as a successor to RDG:

> The "restructuring" pursuant to which RDG Chicago, Inc. succeeded to all of the
> assets of Restaurant Development Group, Inc. resulted in RDG Chicago, Inc. being
> a mere continuation of Restaurant Development Group, Inc.  In addition, the
> "restructuring" was designed for the fraudulent purpose of allowing Restaurant
> Development Group, Inc. to escape liability for its debts, including the debt
> Restaurant Development Group owes [the Rookery] on the Guaranty.
> Accordingly, RDG Chicago, Inc. has succeeded to Restaurant Development
> Group, Inc.'s liability to the Rookery on the Guaranty.

(SOF, ¶ 41.)

In connection with the Rookery Litigation, RDG Chicago admitted that "[b]y January 1,

2004, RDG Chicago, Inc. began to perform all of the same business functions previously

performed by Restaurant Development Group, Inc. and began to collect the management fees

previously paid to Restaurant Development Group, Inc."   (SOF, ¶ 29.)

### B.    The City Center Litigation

On or about September 3, 2004, another landlord, the City Center Retail Limited ("City

Center") filed a Second Amended Complaint in the case captioned:  *City Center Limited v. Bar

Louie Schaumburg, Inc. et al.*, Case No. 02 L 13536 (the "City Center Litigation").  (SOF, ¶ 42.)

Like the plaintiff in the Rookery Litigation, City Center alleged that RDG fraudulently transferred

its assets to RDG Chicago and that RDG Chicago should be held liable as a successor to RDG

because RDG Chicago carried on the same business as did RDG using RDG's fraudulently

transferred assets.  (SOF, ¶ 42.)

4

**V.      GREENFIELD AND KASEMIR DISBAND RDG CHICAGO TO FURTHER
         DEFRAUD RDG AND RDG'S CREDITORS.**

As a result of the successor liability claims against RDG Chicago, Greenfield and Kasemir

had to figure out another way to avoid paying RDG's liabilities.  In or about October 2004,

Greenfield and Kasemir determined that they would stop doing business as RDG Chicago and

cease collecting management fees for RDG Chicago.  (SOF, ¶ 43-48.)

Around this same time (*i.e.* late 2004 and early 2005), Greenfield was discussing "a

possible bankruptcy strategy" with the lawyers handling the Rookery and City Center lawsuits.

(SOF, ¶ 43.)  On March 14, 2005, Greenfield confirmed  his earlier instruction to leave RDG and

RDG Chicago bereft of any assets:

> JUST WANT TO CONFIRM THAT THERE WILL BE NO ASSETS IN RDG
> CHICAGO OR REST DEV GROUP — WE ARE GETTING CLOSE TO FILING
> AND WANT EVERYTHING TO GO SMOOTHLY – THAT MEANS NOTHING
> OWED (LIABILITIES) FROM CORPS THAT ARE IN BUSINESS TO RDG
> ETC.

(SOF, ¶ 44.)  Pursuant to Greenfield's instructions, RDG Chicago's assets were transferred to

certain of the Count I Defendants and RDG Chicago, like RDG, was left without of any assets and

only liabilities.  (SOF, ¶¶ 44-45.)

After RDG Chicago ceased operating and its assets transferred to other entities, Greenfield

and Kasemir, satisfied that they once again had stymied RDG's creditors, allowed judgments to

be entered against RDG Chicago.  On July 7, 2005, the court in the Rookery Litigation entered a

stipulated judgment against RDG Chicago, pursuant to which RDG Chicago stipulated that it was

liable as a successor of RDG.  (SOF, ¶ 46.)  Likewise, on September 12, 2006, the court in the

City Center Litigation entered summary judgment against  RDG Chicago for the debts of RDG

under the principles of successor liability.  (SOF, ¶ 46.)

5

## VI.   THE COUNT I DEFENDANTS BAND TOGETHER AS RESTAURANTS-AMERICA TO SUCCEED RDG AND RDG CHICAGO.

In place of RDG Chicago, Greenfield and Kasemir substituted a new enterprise, Restaurants-America, which they continue to operate to the present.  Rather than forming a corporation or limited liability company to house Restaurants-America, Greenfield and Kasemir (with the assistance of others) made the strategic decision not to incorporate Restaurants-America or enter into any written agreement "formally" creating Restaurants-America.

As described in detail above, the primary function of RDG and RDG Chicago was to provide the Management and Marketing Services to the G&K Restaurants.  Indeed, the largest expense "by far" of RDG was the payroll for those persons who provided the marketing and management services (the "Management Personnel").  (SOF, ¶ 49.)  As of July 2007, the payroll for the Management Personnel exceeded $3.2 million.  (SOF, ¶ 54.)

After Greenfield and Kasemir ceased using RDG Chicago as the management company, the same or similar[2] Management Personnel continued to provide the Management and Marketing Services to the G&K Restaurants.  (SOF, ¶¶ 58-73.)   Instead of having the Management Personnel be employed by one entity, Greenfield and Kasemir initially transferred the Management Personnel to the payrolls of several of the Count I Defendants.  (SOF, ¶¶ 50-53.)  Even though the Management Personnel provided services to all of the G&K Restaurants, they initially were paid either by one restaurant or one holding company, and then later many of the Management Personnel became "employees" of an entity, Restaurant Marketing, Inc. ("RMI").  Again, the Management Personnel provided little or no services to RMI.  (SOF, ¶¶ 51-53.)  Even though the Management Personnel draw paychecks from the individual entities (including RMI) that comprise Restaurants-America, significantly, they carry business cards that identify themselves as employees of Restaurants-America.  (SOF, ¶¶ 57.)  The Management Personnel

_____

[2]Because of employee turnover, some RDG Chicago employees no longer work for Restaurants-America, but the same essential job functions remain the same.  (SOF, ¶ 58.)

6

know and understand that the term Restaurants-America is a shorthand way of referring to: (1) all of the Management Personnel; and (2) all of the G&K Restaurants. This is the same meaning that was given to the term RDG. (SOF, ¶ 59.) As did RDG and RDG Chicago, the Management Personnel have been denominated with officer titles, including "Chief Financial Officer," "Controller," and "General Counsel" of Restaurants-America. (SOF, ¶ 57.)

In addition to employing the same Management Personnel as did RDG, the following facts show that Restaurants-America both exists as an enterprise and is a successor to RDG and RDG Chicago:

- The website that previously was operated by RDG and RDG Chicago is now run by Restaurants-America at restaurants-america.com. (SOF, ¶ 60.) Until 2008, the URL rdgchicago.com took patrons to the restaurants-america.com website. Respondents even admit that the restaurants-america.com website is operated for the collective benefit of Respondents. (SOF, ¶¶ 60-61.)

- The frequent diner program (formerly known as the RDG and RDG Chicago Frequent Diner Program) – through which patrons of all G&K Restaurants earned points that could be redeemed at <u>any</u> of the G&K Restaurants – is now the "Restaurants-America Frequent Diner Program." (SOF, ¶ 62.)

- Like RDG and RDG Chicago, the profit and loss of all of the G&K Restaurants are tracked and accounted a combined financial statement under the name of Restaurants-America. (SOF, ¶ 63.)

- Like RDG, the group healthcare plan the covers the employees who provide services to all of the G&K Restaurants are held in the name of Restaurants-America. (SOF, ¶ 68.)

- The Management Personnel who provide services that benefit the G&K Restaurants as a whole send correspondence indicating that they are employees and officers of Restaurants-America. (SOF, ¶ 70.)

- The employees who provide services that benefit the Greenfield and Kasemir Restaurants as a whole received offer letters indicating that they were employees of Restaurants-America and that Greenfield and Kasemir are the partners of Restaurants-America. (SOF, ¶ 71.)

- Defendants Greenfield and Kasemir refer to themselves as "Restauranteurs Roger Greenfield and Ted Kasemir of Restaurants-America, Inc." (SOF, ¶ 78.)

7

- Restaurants-America uses the same logo as did RDG and RDG Chicago in its advertisement and promotion.  (SOF, ¶¶ 36, 64-67, 76-81.)

## LAW AND ARGUMENT

## I.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 54(c); *see also North Shore Gas Co. v. Salomon, Inc*., 152 F.3d 642, 651 (7th Cir. 1998) (affirming summary judgment on successor liability claims).  Upon the filing of a motion for summary judgment, the burden lies upon the defendant to present a triable issue of fact.  *Liu v. T&H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) ("The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. A party must present more than mere speculation or conjecture to defeat a summary judgment motion.").

## II.   THE LAW CONCERNING SUCCESSOR LIABILITY.

An entity or entities can be held liable as a successor in any one of four situations:

(1) the purchaser expressly or impliedly agrees to assume the liabilities; (2) the transaction is a de facto merger or consolidation; (3) the purchaser is a "mere continuation" of the seller; or (4) the transaction is an effort to fraudulently escape liability.

*North Shore Gas Co. v. Salomon Inc.,*  152 F.3d 642, 651 (7th Cir. 1998) (affirming summary judgment on successor liability claim).  "The successor liability doctrine serves the purpose of identifying transactions where the essential and relevant characteristics of the selling corporation survive the asset sale, and it is therefore equitable to charge the purchaser with the seller's liabilities." *Id.*

Successor liability is particularly appropriate where "the sale is merely a step in a corporate reorganization designed to shift the liabilities to an empty shell. . . ." *E.E.O.C. v. G-K-G, Inc.,* 39 F.3d 740, 747 (7th Cir. 1994) (affirming summary judgment on successor liability claims); *E.E.O.C. v. Vucitech*, 842 F.2d 936, 945 (7th Cir. 1988) (reversing denial of

8

successor liability).  To be considered a successor there does not have to be an actual sale from one entity to another.  *Lincoln Nat. Life Ins. Co. v. Nicklau, Inc*., No. 98 C 2453, 2000 WL 656683 at *3-4 (N.D. Ill. May 17, 2000) (restaurant was deemed successor of previous restaurant when "new" restaurant was owned by spouse of previous entity's owner).  The successor entity still will be liable where the successor entity  "'maintains the same or similar management or ownership, but merely "wears different clothes."'"  *Id., quoting Vernon v. Schuster*, 179 Ill.2d 338, 346, 668 N.E.2d 1172, 1178 (1997), *quoting Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451, 1458 (11th Cir. 1985).   Successor liability does not require a formal succession from one entity to another, "there can be continuation without formal successorship.  Continuation is just a less colorful name for the changed name, different clothes, or new hat rule." *Brandon v. Anesthesia & Pain Mgmt. Assocs*., 419 F.3d 594, 599 (7th Cir. 2005); *North Shore Gas Co.*, 152 F.3d at 654 (7th Cir. 1998) (internal citation omitted).  The exception therefore applies when the purchasing corporation maintains the same or similar management and ownership but wears a "new hat."  *E.E.O.C. v. G-K-G, Inc.,* 39 F.3d at 748 (substantial continuity is "satisfied if no major changes are made in [the] operation"); *Lincoln Savings*, 2000 WL 656683 at * 3-4.  "If a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability."  *Id.*

Finally, where a corporation is found to be the successor, "[plaintiff] is entitled to ignore the formation of [the successor] and treat its assets as if they were [the principal's assets]." *Brandon ,* 419 F.3d 594, 599 (7th Cir. 2005) (reversing judgment for defendants on successor liability and alter ego claims with directions to enter judgment for plaintiff).

### III.   THE COUNT I DEFENDANTS SHOULD BE HELD LIABLE AS SUCCESSORS TO RDG.[3]

#### A.    RDG Chicago Was the Initial Successor to RDG.

There are no facts in dispute that RDG Chicago was the initial successor to RDG.  Indeed, at least two of the four situations are present for ruling that the RDG Chicago was the initial successor to RDG.  <u>First</u>, the transaction that created and capitalized RDG Chicago was a *de facto* merger of RDG and RDG Chicago.  <u>Second</u>, RDG Chicago was nothing but a mere continuation of RDG.[4]

#### 1.    The Reorganization Was A *De facto* Merger Or Consolidation.

The December 2003 transaction whereby RDG transferred virtually all of its assets to RDG Chicago was a *de facto* merger between RDG and RDG Chicago.  "[T]wo of the requirements for a *de facto* merger are that there is a continuation of the enterprise of the seller in terms of . . . management, personnel, physical location, assets and operations and that the purchasing corporation assumes the obligations of the seller necessary for uninterrupted continuation of business operations."  *North Shore Gas Co.,* 152 F.3d at 652 (7th Cir. 1998) (internal quotation marks omitted).  Here, RDG Chicago had the same shareholders, the same directors, the same management, the same personnel, the same physical location, the same assets, and the same operations as did RDG.  (SOF, ¶¶ 28-39.)  Indeed, all obligations necessary for uninterrupted

---

[3]In Case No. 08 A 021, the Trustee moved for summary judgment to declare that the so-called "Frozen Funds" are property of the Estate because they are held in an account owned by Defendant Cash Management, Inc.  Cash Management, Inc. succeeded RDG Chicago as the entity that provided cash management services to Greenfield and Kasemir's collective enterprise.  Cash Management is one of the Count I Defendants and is one of the entities that comprises Restaurants-America.

[4]As set forth in the Second Amended Complaint, the Trustee believes that the Count I Defendants should also be held liable for the debts of RDG as a successor because the transaction was an effort to fraudulently escape liability.  The Trustee also believes that the Count I Defendants either expressly or implicitly agreed to assume RDG's liabilities.  However, neither of these arguments are the subject of this Motion for Summary Judgment, and therefore, are not addressed herein.  Their absence here, should not be construed as the Trustee's belief that these arguments lack merit, but rather solely that the issue of motive inherently creates an issue of fact.

continuation of business operations either continued in RDG's name or were all assumed by RDG Chicago. (SOF, ¶¶ 28-37.) Accordingly, the transaction whereby RDG ceased operating and RDG Chicago began was a mere *de facto* merger and RDG Chicago should be found liable for the debts of RDG under the principles of successor liability.

### 2. RDG Chicago Was A Mere Continuation of RDG.

RDG Chicago also was a mere continuation of RDG. RDG Chicago was but a change of clothes for RDG. RDG Chicago had the same ownership structure as RDG (SOF, ¶¶ 3, 21), collected the same fees as RDG (SOF, ¶¶ 28-29), operated out of the same office as RDG (SOF, ¶ 32), employed the same persons as RDG (SOF, ¶ 34) and performed the same functions as RDG. (SOF, ¶¶ 28-39.) In sum, RDG Chicago was a mere continuation of RDG and, therefore, is liable for the debts of RDG under the principles of successor liability.

### 3. RDG Chicago Is Collaterally Estopped from Denying Successor Liability.

Two courts already have adjudicated that RDG Chicago was a successor to RDG and, therefore, Greenfield and Kasemir (who own RDG Chicago and all Plaintiffs, herein) are barred from claiming that RDG Chicago was not a successor to RDG. *See Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005) (affirming summary judgment based on judicial estoppel)*; Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.1994) (consent judgment forms the basis for collateral estoppel); *Klingman v. Levinson*, 831 F.2d 1292, 1294 (7th Cir. 1987) (consent judgment formed the basis for collateral estoppel)*; In re Bruetman*, 259 B.R. 649, 661 (Bankr. N.D. Ill. 2001) (default judgment would form the basis for collateral estoppel).

### B. The Remaining Count I Defendants Operate as Restaurants-America are a "Mere Continuation" of RDG and RDG Chicago.

It is not disputed that the Management Personnel carry on the same business, from the same facility and perform the same functions as did the employees of RDG and RDG Chicago.

Like RDG, all of the Count I Defendants (except RMI) are owned by Greenfield and Kasemir.[5]

Greenfield and Kasemir are even held out to the public as the owners and partners of Restaurants-

America.  Moreover, the Count I Defendants, operating as Restaurants-America, perform the same

functions and services as did RDG and RDG Chicago for the collective benefit of the G&K

Restaurants.  They operate the restaurants-america.com website (which merely is a change of

name from the rdgchicago.com website), the frequent diner program, the email club program, and

the healthcare program for employees.  In sum, the <u>only</u> substantive difference between RDG and

Restaurants-America is the name.  Simply stated, Restaurants-America is RDG with a "changed

name" and wearing "different clothes."

## IV.    IT IS IRRELEVANT THAT RESTAURANTS-AMERICA IS NOT INCORPORATED AND DOES NOT HAVE A WRITTEN PARTNERSHIP AGREEMENT.

The Count I Defendants previously have argued that they cannot be held liable because

Restaurants-America is not a formal corporation or partnership, but instead is just a "moniker" or

"name" by which they operate their businesses.[6]   Putting aside the obvious fact that names have

meanings and connotations, including signifying a partnership or association, there are no facts in

dispute that Restaurants-America is a partnership or association that can be sued.

---

[5]RMI is nominally owned by Greenfield and Kasemir's spouses.  This fact cannot defeat a claim for successor liability. *Lincoln Savings*, 2000 WL 656683 at * 3-4 (restaurant was deemed successor of previous restaurant when "new" restaurant was owned by spouse of previous entity's owner).

[6]The Count I Defendants have denied that Restaurants-America exists as an entity, and indeed, while named as a defendant, Restaurants-America has not entered an appearance in this case.  In the first hearing before Your Honor, the Court admonished counsel for the Count I Defendants, and counsel acknowledged, that if the Trustee proved that Restaurants-America is a partnership or an entity, then the Court would enter judgment and Restaurants-America would not be allowed to defend on the merits, rather "Restaurants-America loses. . . ."  (*See* June 24, 2008, Transcript of Proceedings, attached hereto as Exhibit A, pp. 71-73.)  As set forth herein, the Trustee has more than proved that Restaurants-America is an entity and, therefore, the Court must enter judgment against Restaurants-America.

### A.     Restaurants-America is a Partnership.

Under the Illinois Partnership Act (which mirrors the Federal Uniform Partnership Act), a partnership can be created absent an implied or express intention to form a partnership where two or more entities carry on a business for "pay or profit":

> Except as otherwise provided by subsection (b), the association of 2 or more persons to carry on as co-owners of a business for profit forms a partnership, *whether or not the persons intend to form a partnership.*

805 ILCS 206/202(a) (2003) (emphasis added – italicized text added by new statute); *Lathrop v. Juneau & Associates, Inc.,* No. 03-CV-0194, 2005 WL 3797706, *10 (S.D. Ill. Apr. 25, 2005) (citing the new partnership act and denying defendants' motion for summary judgment on partnership claims).  Moreover, "[a] partnership may sue and be sued in the name of the partnership."  805 ILCS 206/307(a).

### 1.     Restaurants-America Consists of Two or More Entities.

The first prong of the partnership requirements – two or more entities – is easily met. Restaurants-America's current and former employees unequivocally testified that Restaurants-America consists of all of the G&K Restaurants.  Moreover, the salaries of the employees of Restaurants-America are paid by multiple entities; the restaurants-america.com website advertises all of the G&K Restaurants under the Restaurants-America banner; Restaurants-America holds itself out as the owners of the G&K Restaurants; the G&K Restaurants steer customers to each other's restaurants by participating in joint advertising and the Restaurants-America Frequent Diner Program; and Greenfield and Kasemir have represented to the world that they formed Restaurants-America in 1990.

### 2.     The Purpose of Restaurants-America is to Make Money.

The second prong of the partnership requirement –  "to carry on as a business for pay or profit" – also easily is satisfied.  Restaurants-America operates in every manner as a business enterprises organized for pay or profit.  Restaurants-America has employees that perform services

13

that benefit all of the G&K Restaurants, it has a centralized office at which its employees work, it advertises its restaurants in print media and the internet, it has a healthcare plan, an advertising program, a Frequent Diner Program, an accounts payable department, a controller, a General Counsel, a Chief Financial Officer and regional managers.  Indeed, in virtually every significant way Restaurants-America carries on the same business as did RDG and RDG Chicago.  (SOF, ¶¶ 48-81.)  Indeed,  the profits of the G&K Restaurants are tracked as whole as Restaurants-America. (SOF, ¶ 79.)  As Restaurants-America's one-time CFO Marcus Easter testified: "all of the companies that had anything to do with Restaurants-America were companies that were in the business to make a profit . . . ."  (SOF, ¶ 80.)[7]

> **B.      At Minimum, Restaurants-America is an Unincorporated Association or Enterprise that Can Be Sued.**

Even if somehow the Court concluded that the Restaurants-America is not an entity created for the purpose of pay or profit, it still is a proper defendant.  Under Illinois law, an unincorporated association is the same as a partnership, except its purpose is not to operate a business for pay or profit.   Pursuant to 735 ILCS 5/2-209.1, a "'voluntary unincorporated association' means any organization of 2 or more individuals formed for a common purpose, excluding a partnership or corporation."  Moreover, "[a] voluntary unincorporated association may sue and be sued in its own name, and may complain and defend in all actions." *Id.*

---

[7]In particular, the Frequent Diner program shows how Restaurants-America is used by the G&K Restaurants to benefit themselves as a collective enterprise. The Restaurants-America Frequent Diner Program is designed whereby patrons can earn and redeem points at each of the G&K Restaurants.  Thus, a patron can earn a free meal at one restaurant by eating at another.  Clearly, this is designed to increase the profitability of not just the individual restaurants, but of the all of the collection of restaurants as a whole.  (*See* SOF, ¶ 81.)

14

## CONCLUSION

Based on the foregoing, and the Trustee's Statement of Facts, the Court should enter

summary judgment against: (1) RDG Chicago; and (2) the remaining Count I Defendants on Count

I of the Trustee's complaint in this action.  The Court should impose a constructive trust over the

assets of the Count I Defendants.

Dated: February 27, 2009                              Respectfully submitted,

                                                      GUS A. PALOIAN, not individually or
Jonathan M. Cyrluk (ARDC#6210250)                     personally, but solely in his capacity as the
Henry Baskerville (ARDC#6285712)                      Chapter 7 Trustee of the Debtor's Estate
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois 60603
Tel.:    312-338-0200                                 By:   /s/ Jonathan M. Cyrluk
Fax:     312-338-0070                                        One of His attorneys
cyrlukj@stetlerandduffy.com
hbasker@stetlerandduffy.com

Daniel Lynch (ARDC#6202499)
LYNCH & STERN, LLP
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Tel.:    312-346-8700
Fax:     312-896-5883
dan@lynchandstern.com

15

## CERTIFICATE OF SERVICE

I, Jonathan M. Cyrluk, an attorney, certify that I caused copies of the foregoing **Trustee's Memorandum in Support of His Motion for Summary Judgment Against All Defendants on Count I** to be filed via the Court's CM/ECF system and served on the persons on the attached service via the Court's electronic system, unless otherwise indicated, on this 27th day of February, 2009.

_/s/ Jonathan M. Cyrluk_

## SERVICE LIST

| | |
|---|---|
| David K. Welch<br>Jeffrey C. Dan<br>CRANE, HEYMAN, SIMON,<br>WELCH & CLAR<br>135 S. LaSalle St.<br>Suite 3705<br>Chicago, IL 60603<br>dwelch@craneheyman.com<br>jdan@craneheyman.com | **Via US Mail**<br>United States Trustee<br>Attn: Gretchen Silver<br>219 South Dearborn Street<br>Room 754<br>Chicago, IL 60604 |
| Cornelius Brown<br>Carrie A. Dolan<br>Cohon, Raizes & Regal LLP<br>208 S. LaSalle Street<br>Suite 1860<br>Chicago, IL 60604<br>cdolan@cohonraizes.com<br>nbrown@cohonraizes.com | Daniel Lynch<br>Lynch & Stern, LLP<br>150 S. Wacker Drive<br>Suite 2600<br>Chicago, IL 60606<br>dan@lynchandstern.com |
| Christopher Kentra<br>Clark Stalker<br>Meckler Bulger & Tilson<br>123 N Wacker Drive Ste 1800<br>Chicago, IL 60606<br>chris.kentra@mbtlaw.com<br>clark.stalker@mbtlaw.com | |
| **Via Federal Express (Next Morning Delivery)**<br>Restaurants-America<br>c/o Theodore Kasemir<br>1920 Keats Lane<br>Highland Park, IL   60035 | |