# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE ) ) RESTAURANT DEVELOPMENT GROUP, INC., ) Debtor. ) ) ──────────────────────────────── ) GUS A. PALOIAN, not individually or personally, ) but solely in his capacity as Chapter 7 Trustee of ) the Debtor's Estate, ) ) Plaintiff, ) ) v. ) ) ROGER D. GREENFIELD, et al., ) ) Defendants. ) | Chapter 7 Bankruptcy No. 07 B 00592 Adversary No. 07 A 00937 |

## MEMORANDUM OPINION ON ISSUE OF
## DISQUALIFICATION ON COURT'S MOTION *SUA SPONTE*

### RELEVANT FACTUAL BACKGROUND

On January 12, 2007, Restaurant Development Group, Inc. ("RDG" or "Debtor") filed its voluntary petition for relief under chapter 7 of the Bankruptcy Code. David Welch and Jeffrey Dan of the law firm of Crane, Heyman, Simon, Welch & Clar (collectively the "Crane Firm") represented Debtor in the filing of that bankruptcy petition, and have not withdrawn from such representation. Debtor was in the business of restaurant development and management. It ceased business operations at the end of the 2003 calendar year.

Plaintiff, Gus Paloian, is the duly appointed and qualified chapter 7 trustee (the "Trustee"). Plaintiff-Trustee filed this multi-count Adversary complaint against Debtor's principals and officers, Roger Greenfield ("Greenfield") and Theodore Kasemir ("Kasemir"), as well as individual restaurant entities owned and controlled by Greenfield and Kasemir, among

other defendants.[1] The Trustee alleges that Greenfield and Kasemir effectuated a scheme to transfer Debtor's assets in order to defraud its creditors, and that the Corporate Defendants (defined below) have succeeded to Debtor's business. Part of the relief that the Trustee seeks is a declaration imposing alter ego and successor liability on Greenfield, Kasemir and the Corporate Defendants.

Mr. Welch, Mr. Dan and Arthur Simon of the Crane Firm originally filed appearances in the Adversary proceeding on behalf of RDG Chicago, Inc., Restaurants-America Consulting Group, Inc., Restaurant Construction, Inc., Bar Louie America, Inc., Red Star America, Inc., Concepts America, Inc., Nick and Tony's America, Inc., RDG Chicago Trademark Co., Restaurant-America Trademark, Inc., Cash Management, Inc., as well as individual restaurants under the Bar Louie, Red Star, Nick & Tony, and Concepts America brands named as defendants in the Adversary proceeding (collectively the "Corporate Defendants"). On July 14, 2008, Mr. Welch, Mr. Dan and Mr. Simon filed additional appearances on behalf of Greenfield and Kasemir, in their individual capacity.[2]

At present, therefore, the Crane Firm represents Debtor in the bankruptcy, as well as Greenfield, Kasemir and the Corporate Defendants (collectively the "Adversary Defendants") in

---

[1] Not only are Greenfield and Kasemir defendants in this Adversary proceeding, but they are also listed on Debtor's bankruptcy schedules as creditors of the Bankruptcy Estate. (See Voluntary Bankr. Pet., Schedule F.)

[2] The remaining Defendants to the Adversary Complaint are Restaurant Marketing Inc., a corporation owned equally by Greenfield and Kasemir's wives, Jennifer Greenfield and Lisa Kasemir née. Wolfe, but allegedly controlled by Greenfield and Kasemir; and former attorneys for RDG (collectively the "Attorney Defendants"). Restaurant Marketing is represented by Cohon, Raizes & Regal LLP. The Attorney Defendants are represented by Meckler, Bulger, Tilson, Marick & Pearson, LLP.

the pending Adversary in which the Trustee is seeking to recover from those defendants for the benefit of Debtor's Bankruptcy Estate.

This Adversary proceeding and underlying bankruptcy case were transferred to the undersigned on May 23, 2008, as part of an effort to balance caseload.

In December 2008, the Court *sua sponte* raised the question whether the Crane Firm's concurrent representation of Debtor and the Adversary Defendants created a conflict of interest. On October 8, 2008, a Pretrial Order was entered scheduling a six-week trial starting June 1, 2009. The question as to possible conflict of interest was raised by the Court so that any possible conflict issue could be resolved well in advance of trial. The Trustee's counsel has disclaimed on the record in open court any intent to pursue a Motion to Disqualify, but the Court ordered the parties to research the issue and report their results. The parties reported back with citations to relevant legal precedent on December 15th, but none have shown any intent to pursue the matter further.

## JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This Adversary proceeding is before the Court pursuant to 28 U.S.C. § 157 and referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. The Adversary counts constitute both core and non-core "related to" proceedings under 28 U.S.C. §§ 157(b)(2)(H) and (c)(1). The parties have filed a written consent that counts as to which a jury demand has been filed as well as all non-core matters pleaded herein shall be litigated to final judgment before the undersigned pursuant to 28 U.S.C. § 157(c)(2) and (e), and Rule 9015 Fed. R. Bankr. P.

## DISCUSSION

A.    Duties imposed under 11 U.S.C. § 521.

The many duties of a Chapter 7 debtor are set forth in 11 U.S.C. § 521. The Trustee has not contended that the Debtor here has failed to carry out any of the particularized duties. No one has contended that the Debtor owes any further or unperformed duties to the Trustee. However, § 521(a)(3) also sets forth a general open-ended duty of the Debtor and, therefore, its officers to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." This includes cooperating with the trustee in fulfilling the trustee's duty under § 704(a)(1) to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest. . . ." See Toffel v. Silmon (In re Silmon), 06-00176-BGC, 2007 WL 2712083, at *6 (Bankr. N.D. Ala. Sept. 14, 2007). According to *Colliers*, "[s]uch cooperation may include actions necessary to locating and disposing of property of the estate and examining claims, as well as providing information necessary to the operation of the debtor's business if that business continues to operate." 4 Collier on Bankruptcy § 521.01 (Alan N. Resnick & Henry J. Sommer et al. eds., 15th ed. Rev. 2008). "The Debtor is therefore under a duty to disclose information that would assist the Trustee in his efforts to recover assets of the estate in the preference and fraudulent conveyance actions." Pereira v. Allboro Bldg. Maint., Inc. (In re Allboro Waterproofing Corp.), 224 B.R. 286, 292 (Bankr. E.D.N.Y. 1998).

Furthermore, "[a]n attorney for the debtor has a fiduciary duty not only to the debtor, but has a fiduciary obligation to act in the best interest of the entire estate, including creditors." Agresti v. Rosenkranz (In re United Utensils Corp.), 141 B.R. 306, 309 (Bankr. W.D. Pa. 1992)

(citing Wolf v. Weinstein, 372 U.S. 633, 645-46 (1963) (additional internal citations omitted)). See also In re Cochener, 360 B.R. 542, 580 (Bankr. S.D. Tex. 2007) ("Not only does a debtor have a duty to cooperate with the Trustee, see 11 U.S.C. § 521(a)(3); counsel for the debtor, as an agent of the debtor, shares this duty to cooperate with the Trustee.") (citing United Utensils, 141 B.R. at 309). A debtor's counsel's duties under § 521 might include "the duty[] to inform the trustee if . . . the debtor's agent refuses to follow the debtor's counsel's advice." Parker v. Frazier (In re Freedom Solar Center, Inc.), 776 F.2d 14, 17 (1st Cir. 1985). See also United Utensils, 141 B.R. at 309 ("If the debtor is not fulfilling *its* obligation to the estate, it is the responsibility and duty of Debtor's counsel to bring such matters to the attention of the court.").

Do the duties imposed by § 521(a)(3) require Greenfield and Kasemir, as individuals, to withdraw their defenses to the Adversary Complaint so as to "fall on their swords" and confess liability to the Trustee in this Adversary proceeding? No one has contended that they have such an obligation and no authorities under § 521(a)(3) have been found that require such a duty. However, there remains an issue whether the Crane Firm and its lawyers' duty of loyalty to Debtor will materially limit or be materially limited by their representation of Adversary Defendants. See Local Rule for the Northern District of Illinois 83.51.7(b), comm. cmt. (hereinafter "LR"). Some opinions warn of possible conflict.

B.    Some precedent cited by the parties found a conflict of interest under analogous circumstances.

There is authority holding that an attorney's concurrent representation of a corporate chapter 7 debtor and debtor's shareholders, in their individual capacity, creates a conflict of interest under ABA Model Rule of Professional Conduct 1.7(b) which was adopted by the

District Court for the Northern District of Illinois in LR 83.51.7(b). The Rules of Professional Conduct for the Northern District of Illinois are made applicable in bankruptcy by Local Bankruptcy Rule 9029-4. While the parties here have conceded that there is no precedent in the Seventh Circuit addressing the issue, they both cited Allboro, 224 B.R. at 286 as being on point. Allboro involved an involuntary corporate chapter 7 bankruptcy. Id. at 289. The petitioning creditor moved pursuant to Fed. R. Bankr. P. 2004 for an examination of the debtor's principals, members of the Vlachos family, and Allboro Building Maintenance ("ABM"), a corporation newly formed by the Vlachos. Id. The Vlachos and ABM retained Pryor & Mandelup, LLP ("P & M") to resist the discovery efforts. Id. The Vlachos eventually relented, and retained P & M to represent the debtor. Id. at 290. Similar to the Trustee in the present case, the chapter 7 trustee in Allboro filed a multi-count adversary against the Vlachos, ABM and others, alleging amongst other things that the Vlachos fraudulently transferred assets from debtor to ABM. Id. Pryor & Mandelup entered appearances on behalf of all Adversary defendants. Id.

Relying on § 521, the opinion in Allboro held that P & M's duty to represent the debtor in cooperating with the trustee to reconstruct the debtor's financial condition would be materially limited by the firm's duty to zealously defend the Vlachos. Id. at 292. Such defense would include preventing disclosure of financial information and arguing that debtor had received reasonably equivalent value for the transferred assets. Of particular relevance here, the opinion further held that even in the absence of allegations that the debtor had failed to comply with its duties under § 521, "P & M's undivided allegiance owed to the Defendants *per force* compels an adversarial posture at odds with those statutory duties, hence the conflict of interest." Id. See also Freedom Solar, 776 F.2d at 15 ("debtor's counsel may not also represent the debtor's sole

shareholder when that shareholder is attempting to purchase some of debtor's assets and may be liable for preferential transfers."); Butler v. Bantz (Matter of Howe Grain, Inc.), 176 B.R. 515, 518 (Bankr. D. Neb. 1994); Badami v. K.E. Joy, P.C. (Matter of Joy), 175 B.R. 303, 304 (Bankr. D. Neb. 1994).

Motions to disqualify "require a two-step analysis. They must consider (1) whether an ethical violation has actually occurred, and (2) if disqualification is the appropriate remedy." Guillen v. City of Chicago, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). Although there is authority supporting the view that the Crane Firm's concurrent representation of Debtor and the Adversary Defendants might under some conditions create a conflict of interest under LR 83.51.7(b), those cases disagree about the appropriate remedy.

None of the precedent cited above found that the conflict was waivable. According to Allboro:

> [W]hen adverse interests arise . . . a trustee's consent to representation of a conflict of interest by a debtor's counsel is incompatible with the trustee's fiduciary status and obligations to maximize and expeditiously administer the estate, as mandated by 11 U.S.C. § 704. . . . Consent in such circumstances may well constitute an invalid waiver of the trustee's statutory obligations.

224 B.R. at 293 (citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 n.7 (1985)). See also Howe Grain, 176 B.R. at 518 (finding that the conflict is not waivable). Nevertheless, Allboro left open the possibility that a chapter 7 trustee could seek court approval to consent to the conflict. 224 B.R. at 293.

However, those precedents split concerning the appropriateness of disqualification. Id. Allboro at 294-97 (allowing the conflicted attorneys to continue representing the Adversary defendants subject to their withdrawal as counsel for the debtor). Contra Freedom Solar, 776

F.2d at 19 (reversing the district court with instructions to disqualify the attorney); Howe Grain, 176 B.R. at 518; Joy, 175 B.R. at 306 (both requiring disqualification).

C.    Even if conflict is found, disqualification is unnecessary and inappropriate here.

Motions to disqualify implicate two competing interests. First, the rules governing conflicts of interest protect the interests of present and former clients in the undivided loyalty of their attorney. Guillen, 956 F. Supp. at 1421. On the other hand, disqualification is a drastic remedy that deprives a litigant of counsel of their choosing. Id. While motions to disqualify can serve a legitimate purpose, they are viewed with caution because they can also be used as a litigation tactic to harass one's opponent. Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 722 (7th Cir. 1982). Because there is some precedent that the purported conflict of interest in not waivable, it was deemed appropriate to put the question to the parties well in advance of trial in order to prevent any party from raising it at the eleventh hour.

Disqualification as a response to an ethical violation of the Rules of Professional Conduct can serve two separate and distinct functions. When there is a concern that the conflicted attorney would breach their duty of loyalty by disclosing confidential information in violation of LR 83.51.6, disqualification can serve a remedial function. See Joy, 175 B.R. at 306; Bruce A. Green, *Conflicts of Interest in Litigation: The Judicial Role*, 65 Fordham L. Rev. 71, 72 (1996). It also can serve as a sanction in order to discourage future ethical violations by the attorney. Green, supra, at 72-73. In this case, disqualifying the Crane Firm from representing the Corporate Defendants, and Greenfield and Kasemir, in their individual capacity, would not be appropriate either as a remedy or a sanction.

A corporation is an artificial person that can sue and be sued. 1 Fletcher Cyc. Corp. § 7 (2008). However, because its personhood is a legal creation, a corporation requires a natural person to speak and conduct business on its behalf. Marshall v. Baltimore & O. R. Co., 57 U.S. 314, 327 (1853). Here, Greenfield and Kasemir are the corporate representatives who speak on behalf of Debtor, as well as the Corporate Defendants. They are also Adversary defendants accused by the Trustee of wrongdoing in connection with the handling of Debtor's business. The Crane Firm's duty of loyalty to aid Debtor in cooperating with the Trustee would not be protected if the Court were to disqualify the Firm from representing Greenfield and Kasemir because, as individuals and Debtor's corporate representatives, Greenfield and Kasemir would take any confidential information to their new legal representation. In other words, any possible conflict lies in Greenfield and Kasemir, if they committed the acts alleged against them, not to the Crane Firm. See Freedom Solar, 49 B.R. 996, 1001 (D. Me. 1985) *rev'd*, 776 F.2d at 16. Therefore, disqualification of the Crane Firm from representing Greenfield and Kasemir in their individual capacity would not serve any remedial purpose.

In Freedom Solar, a panel of the First Circuit Court of Appeals reversed the district court. The opinion reasoned that while the conflict of interest rules are designed to ensure loyalty to one's clients, the professional rules of conduct are also "designed to maintain public confidence in the propriety of the legal profession." 776 F.2d at 16 (citing IBM Corp. v. Levin, 579 F.2d 271, 283 (3d Cir. 1978)). However, it is far from clear that disqualification is a necessary *per se* sanction for every potential conflict. Guillen makes clear that weighing the appropriateness of disqualification is always the second prong of any analysis of a motion to disqualify. 956 F. Supp. at 1421. According to the Preamble and Scope to the ABA Model Rules of Professional

Conduct, upon which the District Court Local Rules are based, "violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." *Available at* http://www.abanet.org/cpr/mrpc/preamble.html (last visited Feb. 27, 2009). The Preamble to the Local Rules of Professional Conduct provides that:

> The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they exist at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuation [sic] factors and whether there have been previous violations.

LR 83.50.1. See also Allboro, 224 B.R. at 294 ("Because the Code of Professional Responsibility merely provides guidance for professional conduct, 'it is particularly important that the Code of Professional Responsibility not be mechanically applied when disqualification is raised in litigation.'" (Internal citations omitted)). Contrary to the Circuit Court opinion in Freedom Solar, therefore, nothing in the Local Rules or applicable case law requires disqualification as a sanction for a violation of the Rules of Professional Conduct.

Furthermore, disqualification is particularly inappropriate as a sanction in this case, because the burden of disqualification would fall primarily on the clients who would have to retain new counsel. See id. at 295; Green, supra, at 90. The court in Allboro, therefore, allowed counsel to remain as attorneys for the Adversary defendants subject to their withdrawal as counsel for the debtor. 224 B.R. at 294-97. While the opinion recognized that "the first client's rights to loyalty takes precedence over the second client's individual preference for a particular counsel," id. at 294 (quoting Chinatown Apartments, Inc. v. N.Y. City Transit Auth., 421

N.Y.S.2d 958, 960 (Sup. Ct. 1978)), it reasoned that the burden and expense on the debtor of retaining new counsel to assist it in complying with its duties under § 521 was minimal compared to that of the defendants to bring new counsel up to speed in the Adversary. Id. at 295. In addition, any delay in the trial of the Adversary proceeding created by the retention of new defense counsel would cause the bankruptcy estate to accrue additional expenses to the detriment of all creditors and delay the scheduled trial.

Simply withdrawing as counsel for the debtor does not always solve the purported conflict of interest because LR 83.51.9(a) prohibits "[a] lawyer who has formerly represented a client in a matter [from representing] another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client. . . ." Nevertheless, a client (here the Trustee) can give informed consent to a possible conflict arising under LR 83.51.7(b) or LR 83.51.9(a). See LR 83.51.7(b)(2).

D.  The Plaintiff-Trustee has, through his counsel, effectively consented to and waived any objection to the Crane Firm's representation of Greenfield and Kasemir.

The case law is clear concerning who controls the ability to consent on behalf of the debtor in a corporate chapter 7 bankruptcy. "[O]nly the trustee *could* consent for the debtor to the multiple representation." Freedom Solar, 776 F.2d at 17 (citing Weintraub, 471 U.S. at 352-56) (emphasis added). While the opinion in Allboro suggested that a corporate chapter 7 trustee cannot consent to the purported conflict of interest, 224 B.R. at 293, in none of the cited precedent was consentability directly before the court, because in those cases it was the chapter 7 trustee who was making the motion to disqualify. Freedom Solar, 776 F.2d at 15-16; Allboro, 224 B.R. at 293; Howe Grain, 176 B.R. at 518; Joy, 175 B.R. at 305.

The Trustee's counsel here has plainly disclaimed on the record any interest or intent of the Trustee to pursue a Motion to Disqualify. The *dicta* in Allboro that a corporate chapter 7 trustee may not be able to consent to a purported conflict of interest without violating his fiduciary duty to creditors places an overly restrictive burden on the trustee in administering a debtor's bankruptcy estate. In the case at bar, there are no liquid assets held by the Trustee in the Bankruptcy Estate of Debtor. The Adversary proceeding has been pending for over a year, and is scheduled for trial to start on June 1, 2009. In addition, in deciding whether or not to make a Motion to Disqualify, the Trustee would have to consider his probability of success in light of the caution with which such motions are treated. According to 11 U.S.C. § 704(a)(1), "The trustee shall collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." It would cost the Trustee time and money to make a Motion to Disqualify, time and money that the Trustee does not have. The business judgment rule protects bankruptcy trustees from mistakes in judgment where discretion is allowed. Hall v. Perry (In re Cochise College Park, Inc.), 703 F.2d 1339, 1357 (9th Cir. 1983).

Just as the Crane Firm has a duty to zealously defend the Adversary Defendants, the Trustee has a fiduciary duty to represent zealously the interest of creditors of Debtor's Bankruptcy Estate. However, "'[z]ealously' does not mean mindlessly or unfairly or oppressively. Rather, it is the duty of all lawyers to seek resolution of disputes at the least cost in time, expense and trauma to all parties and to the courts." LR 83.50.1, Preamble to the Local Rules of Prof'l Conduct. In other words, zealous advocacy does not require making every conceivable procedural motion. Based on considerations outlined above, it is quite possible that

making a Motion to Disqualify would have been a waste of the Trustee's efforts and the Bankruptcy Estate's resources. It would be reasonable for the Trustee to conclude that such a Motion would not have been in the best interest of creditors.

Accordingly, it is found and held that the Trustee has fulfilled his fiduciary duty by undertaking an investigation of the issue at the behest of the undersigned and by exercising his discretion not to make such a Motion.

Generally, "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." Kafka v. Truck Ins. Exch., 19 F.3d 383, 386 (7th Cir. 1994) (quoting Central Milk Producers Coop. v. Sentry Food Stores, 573 F.2d 988, 992 (8th Cir.1978)). While a motion by a corporate chapter 7 trustee to disqualify an attorney who previously represented the debtor is not subject to a laches defense and, therefore, can be raised at any time, any purported conflict of interest can be consented to and expressly waived. Thus, based on statements on behalf of the Trustee on the record in open court that he has no interest or intent in pursuing a Motion to Disqualify the Crane Firm as counsel for the Adversary Defendants, it is found and held that he has clearly consented to and waived any objection to the continued representation.

Therefore, the Crane Firm will be allowed to remain in Adversary proceeding 07A00937 subject to its withdrawal as counsel for Debtor. According to LR 83.51.16, "A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned." In the Debtor's bankruptcy petition, the Crane Firm disclosed that it had agreed to accept and received $5,299.00 from Greenfield for representing Debtor in "all aspects of the bankruptcy case . . ." apparently consisting of a $5,000 fee plus the filing costs. However, the

-13-

Trustee has not pursued this issue and it does not appear appropriate for the Court to address it *sua sponte*. The order to be entered will reserve discretion to pass on this issue if the Trustee raises it by motion on notice.

E.    The matter will not be referred for disciplinary proceedings.

Compliance with the Rules of Professional Conduct does not depend on purported conflicts of interest being raised by an adversary in litigation. Responsibility for resolving conflicts of interest lies primarily with the attorney undertaking the representation. LR 83.51.7, comm. cmt. According to the Preamble to the Local Rules of Professional Conduct, "[c]ompliance with the rules . . . depends upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinions and finally, when necessary, upon enforcement through disciplinary proceedings." LR 83.50.1. Therefore, when an impermissible conflict of interest exists before representation is undertaken, the representation should be declined. LR 83.51.7, comm. cmt. Although this Opinion finds that disqualification of the Crane Firm from representing the Adversary Defendants is not appropriate under the present circumstances, it should not be read to say that the Firm, in agreeing to accept the representation in the first place, did so free from doubt as to the propriety of that act. See Green, supra, at 96.

A disciplinary assessment of an attorney's conduct will be based on the facts as they existed at the time of the purported violation and in recognition of the fact that the attorney often has to act upon uncertain or incomplete evidence. LR 83.50.1, Preamble to the Local Rules of Prof'l Conduct. Whether or not discipline should be imposed depends on the totality of the circumstances, including willfulness and seriousness of the violation, and extenuating factors. Id.

When the Crane Firm initially accepted the representation of the Adversary Defendants there was no binding precedent in the Seventh Circuit addressing the issue raised herein. The representation progressed for over a year without the Trustee or any other party in interest raising it as a potential problem. Moreover, based on the facts and precedent at the time that it accepted the representation, the possible conflict of interest was not so obvious as to find that the Crane Firm acted improperly. In addition, the Trustee's reluctance to prosecute a Motion to Disqualify indicates that he does not consider the purported conflict of interest to be a violation of the Rules of Professional Conduct.

Based on the lack of binding precedent guiding the Crane Firm's decision to accept the representation, the goal in fashioning a remedy to the possible conflict of interest is not to punish the Firm or its members. Rather, the purpose here is to protect the interests of the creditors of the Debtor's Bankruptcy Estate in this case, and to protect the integrity of the bankruptcy process by providing future guidance to attorneys and clients. See LR 83.50.1, Preamble to Local Rules of Prof'l Conduct.

Therefore and for reasons earlier stated, no violation of the Rules is found, and no referral is appropriate.

## CONCLUSION

Based on the foregoing, it is found and held that the Trustee has effectively consented to and expressly waived any objection to the Crane Firm's continued representation of Roger Greenfield, Theodore Kasemir, and the Corporate Defendants. A separate Order will be entered allowing the Crane Firm to remain in Adversary proceeding 07A00937 subject to a requirement that Firm withdraws from representing Debtor in the related bankruptcy case. It is intended to be

a final and appealable order requiring anyone with a late blooming objection to file an appeal now.

Jurisdiction will be reserved to consider the question of payment by the Debtor of a fee to the Crane firm if that issue is raised by the Trustee on motion and notice.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 24th day of March 2009.

07 A 00937

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on March 24, 2009, I caused to be mailed by United States first class mail copies of the foregoing MEMORANDUM OPINION to the persons named.

*Dorothy Clay*
Secretary/Deputy Clerk

## SERVICE LIST

Daniel F Lynch
Lynch & Stern LLP
150 S Wacker Dr Suite 2600
Chicago, IL 60606
Counsel for Plaintiff/Trustee

Jonathan M. Cyrluk
Henry Baskerville
Stetler & Duffy Ltd.
11 S. LaSalle Street
Suite 1200
Chicago, IL 60603
Counsel for Plaintiff/Trustee

Cornelious Brown
Amy E Bullock
Carrie A. Dolan
Cohon Raizes & Regal LLP
208 S LaSalle Street, Suite 1860
Chicago, IL 60604

David K. Welch
Jeffrey C. Dan
Crane Heyman Simon Welch & Clar
135 S Lasalle St, Suite 3705
Chicago, IL 60603

Bruce R. Meckler
Christopher E. Kentra
Clark M. Stalker
Meckler Bulger & Tilson
123 N Wacker Drive Ste 1800
Chicago, IL 60606

Frances Gecker
Zane L. Zielinski
Micah R. Krohn
Frank/Gecker LLP
325 North LaSalle Street
Suite 625
Chicago, IL 60610

Stephen Novack
Joshua E. Liebman
Novack and Macey LLP
100 North Riverside Plaza
Chicago, IL 60606